**Connell Foley LLP**
One Newark Center
1085 Raymond Boulevard, Nineteenth Floor
Newark, New Jersey 07102
(973) 436-5800
Attorneys for Plaintiff, Ramada Worldwide Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation, | : <br> : <br> : |
| Plaintiff, | :    Civil Action No. 23- |
| v. | : |
| | :    **COMPLAINT** |
| MANAGEMENT SOLUTION HOLDINGS, LLC, a Michigan Limited Liability Company; SHANNON STEEL, an individual; and AARON MORRIS, an individual, | : <br> : <br> : |
| Defendants. | : |

Plaintiff Ramada Worldwide Inc., by its attorneys, Connell Foley LLP, complaining of defendants, Management Solution Holdings, LLC, Shannon Steel, and Aaron Morris, says:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Ramada Worldwide Inc. ("RWI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.     Defendant Management Solution Holdings, LLC ("MSH"), on information and belief, is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 28100 Franklin Road, Southfield, Michigan 48034.

7222080-1

3. Defendant Shannon Steel ("Steel"), on information and belief, is a member of MSH and a citizen of the State of Michigan, having an address at 31084 Applewood Lane, Farmington Hills, Michigan 48331.

4. Defendant Aaron Morris ("Morris"), on information and belief, is a member of MSH and a citizen of the State of Michigan, having an address at 2510 Telegraph Road, Bloomfield Hills, Michigan 48302.

5. Upon information and belief, Steel and Morris are the only constituent members of MSH.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7. This Court has personal jurisdiction over MSH by virtue of, among other things, section 17.6.3 of the June 26, 2019 franchise agreement by and between MSH and RWI (the "Franchise Agreement"), described in more detail below, pursuant to which MSH has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

8. This Court has personal jurisdiction over Steel and Morris by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which Steel and Morris acknowledged that they were personally bound by section 17 of the Franchise Agreement.

7222080-1

9.      Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by MSH of any objection to venue in this District.

**ALLEGATIONS COMMON TO ALL COUNTS**

**<u>The Agreements Between The Parties</u>**

10.     On or about June 26, 2019, RWI entered into the Franchise Agreement with MSH for the operation of a 238-room Ramada® guest lodging facility located at 28100 Franklin Road, Southfield, Michigan 48034, designated as Site No. 54721-15418-01 (the "Facility").  A true copy of the Franchise Agreement is attached hereto as <u>Exhibit A</u>.

11.     Pursuant to section 5 of the Franchise Agreement, MSH is obligated to operate a Ramada® guest lodging facility for a fifteen-year term.

12.     Pursuant to section 7, section 18.2, and Schedule C of the Franchise Agreement, MSH is required to make certain periodic payments to RWI for royalties, system assessments, taxes, interest, and other fees (collectively, "Recurring Fees").

13.     Pursuant to section 7.3 of the Franchise Agreement, MSH agreed that interest is payable "on any past due amount payable to [RWI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

14.     Pursuant to section 3.6.4 of the Franchise Agreement, MSH is required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by MSH at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

15.     Pursuant to section 3.6 of the Franchise Agreement, MSH agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, MSH agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

16.     Pursuant to section 3.2 of the Franchise Agreement, MSH agreed that it would "operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility… to the public in compliance with all federal, state and local laws, regulations and ordinances as well as the System Standards."

17.     Pursuant to section 17.4 of the Franchise Agreement, MSH agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

18.     Effective as of the date of the Franchise Agreement, Steel and Morris provided RWI with a Guaranty of MSH's obligations under the Franchise Agreement.  A true copy of the Guaranty is attached hereto as Exhibit B.

19.     Pursuant to the terms of the Guaranty, Steel and Morris agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [MSH] to perform, each unpaid or unperformed obligation of [MSH] under the [Franchise] Agreement."

4

7222080-1

20. Pursuant to the terms of the Guaranty, Steel and Morris agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

**Defendants' Defaults Under the Franchise Agreement**

21. MSH has failed to meet its financial and operational obligations under the Franchise Agreement.

22. Starting on or about May 19, 2020 and continuing through June 30, 2022, MSH was authorized by RWI to temporarily close the Facility due to issues related to obtaining a Certificate of Occupancy.

23. By letter dated July 8, 2022, a true copy of which is attached hereto as Exhibit C, RWI advised MSH that (a) it was in breach of the Franchise Agreement because it owed RWI outstanding Recurring Fees and it failed to operate the Facility on a continuous, year-round basis and re-open following the temporary closure, (b) it had thirty (30) days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

24. By letter dated September 19, 2022, a true copy of which is attached hereto as Exhibit D, RWI advised MSH that (a) it remained in breach of the Franchise Agreement because it owed RWI outstanding Recurring Fees and it failed to operate the Facility on a continuous, year-round basis and re-open following the temporary closure, (b) it had thirty (30) days within which to cure this operational default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

25. By letter dated December 21, 2022, a true copy of which is attached hereto as Exhibit E, RWI advised MSH that (a) it remained in breach of the Franchise Agreement because

7222080-1

it owed RWI outstanding Recurring Fees and it failed to operate the Facility on a continuous, year-round basis and re-open following the temporary closure, (b) it had thirty (30) days within which to cure this operational default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination

26.   To date, the unauthorized closure of the Facility has continued and defendants have not paid their outstanding Recurring Fees.

27.   As of March 15, 2023, the total amount of outstanding Recurring Fees due and owing to RWI from MSH is $101,644.47.

28.   RWI has satisfied all of its obligations under the Franchise Agreement, including without limitation providing MSH the right to use the Ramada® trade name, trademarks, and service marks.

## FIRST COUNT

29.   RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 28 of the Complaint.

30.   Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, MSH agreed to allow RWI to examine, audit, and make copies of MSH's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

31.   The calculation of the monetary amounts sought by RWI in this action is based on the gross room revenue information supplied to RWI by MSH and, to the extent there has been non-reporting, RWI's estimate as to the gross room revenue earned by MSH.

32.   The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, statements and books, and other financial materials from MSH.

6

7222080-1

**WHEREFORE**, RWI demands judgment ordering that MSH account to RWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception of the Franchise Agreement through the date of judgment herein.

## SECOND COUNT

33. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 32 of the Complaint.

34. Pursuant to section 7, section 18.2, and Schedule C of the Franchise Agreement, MSH is obligated to remit Recurring Fees to RWI.

35. Despite its obligation to do so, MSH failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $101,644.47.

36. MSH's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged RWI.

**WHEREFORE**, RWI demands judgment against MSH for the outstanding Recurring Fees due and owing under the Franchise Agreement, in the current amount of $101,644.47, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT

37. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 36 of the Complaint.

38. Despite its obligation to do so, MSH failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $101,644.47.

39. MSH's failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

7

7222080-1

**WHEREFORE**, RWI demands judgment against MSH for the outstanding Recurring Fees due and owing under the Franchise Agreement, in the current amount of $101,644.47, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

40.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 39 of the Complaint.

41.     Pursuant to the terms of the Guaranty, Steel and Morris agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of MSH under the Franchise Agreement.

42.     Despite their obligation to do so, Steel and Morris have failed to make any payments or perform or cause MSH to perform each obligation required under the Franchise Agreement.

43.     Pursuant to the Guaranty, Steel and Morris are liable to RWI for MSH's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $101,644.47.

**WHEREFORE**, RWI demands judgment against Steel and Morris for damages in the amount of all outstanding Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

**Connell Foley LLP**
Attorneys for Plaintiff,
Ramada Worldwide Inc.

By: _____
Bryan P. Couch

Dated: April 19, 2023

8

7222080-1

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**Connell Foley LLP**
Attorneys for Plaintiff,
Ramada Worldwide Inc.

By: _____
Bryan P. Couch

Dated:  April 19, 2023

9

7222080-1

DocuSign Envelope ID 71AB64A8-7582 4FC6-A

Location  Southfield, MI
Entity No  15418-01
Unit No  54721

## RAMADA WORLDWIDE INC.
## FRANCHISE AGREEMENT

THIS  FRANCHISE  AGREEMENT  ("Agreement"), dated June 26 _____, 2019,  is between RAMADA  WORLDWIDE  INC , a Delaware corporation ("we", "our" or "us"), and Management  Solution  Holdings, LLC, a Michigan limited liability company ("you")   The definitions  of capitalized  terms  are  found  in Appendix  A  In consideration  of  the  following mutual promises, the parties agree as follows

**1   Franchise.**  We have the exclusive right to franchise to you the distinctive "Ramada" System for providing transient guest lodging services   We grant to you and you accept the Franchise, effective and beginning on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination   The Franchise is effective only at the Location and may not be transferred or relocated   You will call the Facility a "Ramada Plaza" or a "Ramada Plaza by Wyndham "  You may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion   You shall not affiliate or identify the Facility with another franchise system, reservation system, brand, cooperative or registered mark during the Term

**2.  Protected Territory.**  We will not own, operate, lease, manage, franchise or license any party but you to operate a Chain Facility in the "Protected Territory", as defined below, while this Agreement is in effect   We may own, operate, lease, manage, franchise or license anyone to operate  any  Chain  Facility  located  anywhere  outside  the  Protected  Territory  without  any restriction or obligation to you   We may grant Protected Territories for other Chain Facilities that overlap your Protected Territory   While this Agreement is in effect, neither you nor your officers, directors, general partners or owners of 25% or more of your Equity Interests, may own, operate, lease, manage or franchise  any time share resort, vacation club, residence club, fractional ownership residence, condominium/apartment leasing or rental business, or the like, for any facility or business that shares directly or indirectly, common areas, amenities, recreation facilities, services, supplies or support activities with the Facility   You will use any information obtained through the Reservation System to refer guests, directly or indirectly, only to Chain Facilities   This Section does not apply to any Chain Facility located in the Protected Territory on the  Effective  Date,  which  we  may  renew,  relicense,  allow  to  expand,  or  replace  with  a replacement Facility located within the same trading area having not more than 120% of the guest rooms of the replaced Chain Facility if its franchise with us terminates or is not renewed You acknowledge that the Protected Territory fairly represents the Facility's trading area and that there are no express or implied territorial rights or agreements between the parties except as stated in this Section   You irrevocably waive any right to seek or obtain the benefits of any policy we now follow or may in the future follow to notify you about proposed Chain Facilities in the general area of the Facility, solicit information about the effect of the proposed Chain

1

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6 A     EE672A0BD5E

Facility on the revenue or occupancy of the Facility or decide whether to add the proposed Chain Facility to the Chain based on the potential effect of the proposed Chain Facility on the Facility or its performance  You further acknowledge and agree that notwithstanding the foregoing, we may operate, lease, manage. or license any other party to operate a Chain Facility in the Protected Territory beginning (a) six months prior to the expiration of this Agreement, or (b) as of the date that a date for the premature termination of this Agreement has been confirmed in writing by us The covenants in this Section are mutually dependent, if you breach this Section, your Protected Territory will be the Location only  The Protected Territory means an area to include a five (5) mile radius, using the hotel as the centerpoint

## 3   Your Improvement and Operating Obligations.

3 1 **Pre-Opening Improvements.**   You must select. acquire, construct and/or renovate the Facility as provided in Schedule D

3 2 **Operation.**  You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with all federal, state and local laws, regulations and ordinances as well as the System Standards  You will keep the Facility in a clean, neat, and sanitary condition  You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards  The Facility will be managed by either a management company or an individual manager with significant training and experience in general management of similar lodging facilities  The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual  The Facility will follow standard industry practices for safeguarding cardholder information, applicable laws and regulations, and such other requirements as we may include in the System Standards Manual or as we may otherwise communicate from time to time for such purpose  You may add to or discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility, only with our prior written consent which we will not unreasonably withhold or delay  Your front desk operation, telephone system, parking lot, swimming pool and other guest service facilities may not be shared with or used by guests of another lodging or housing facility  You acknowledge that any breach of System Standards for the Facility, its guest amenities, and your guest service performance is a material breach of this Agreement  Upon our reasonable request, you will provide us with then-current copies of the documents evidencing your ownership of, or right to possess, the Facility and/or the real property upon which the Facility is located, and a complete and accurate list of all of your owners and their Equity Interests

3 3 **Training.**  You (or a person with executive authority if you are an entity) and the Facility's general manager (or other representative who exercises day to day operational authority) will attend the training programs described in Section 4 1 we designate as mandatory for  franchisees or general managers, respectively  You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement  You will pay for all travel, lodging, meals and compensation expenses of the people you send for training programs, the cost of

2

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A EE672A0BD5E

training materials and other reasonable charges we may impose for training under Section 4 1, and all travel, lodging, meal and facility and equipment rental expenses of our representatives if training is provided at the Facility

**3 4 Marketing.**

3 4 1 You will participate in System marketing programs, including the Directory, if any, the Reservation System, and guest loyalty programs You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants You authorize us to offer and sell reservations for rooms and services at the Facility according to the rules of participation and System Standards You may implement, at your option and expense, your own local advertising Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication You will stop using any non-conforming, out-dated or misleading advertising materials if we so request

3 4 2 You will participate in any regional management association ("RMA") of Chain franchisees formed to provide regional marketing, training, and other benefits for Chain Facilities in your area You will pay the RMA Fee described in Schedule C to support the RMA's activities, if and when levied

3 4 3 The Facility must participate in all mandatory Internet and distribution marketing activities and programs in accordance with the System Standards Manual, including any arrangements we make with third party distribution channels You must provide us with information about the Facility and use our approved photographer for taking photographs of the Facility for posting on the Chain Websites, third party travel websites and various marketing media The content you provide us or use yourself for any Internet or distribution marketing activities must be true, correct and accurate, and you will promptly notify us in writing, in accordance with our processes that are then in effect, when any correction to the content becomes necessary You must promptly modify at our request the content of any Internet or distribution marketing materials for the Facility you use, authorize, display or provide to conform to System Standards You will discontinue any Internet or distribution marketing activities that conflict, in our reasonable discretion, with Chain-wide Internet or distribution marketing activities You must honor the terms of any participation agreement you sign for Internet or distribution marketing activities You will pay when due any fees, commissions, charges and reimbursements relating to Internet or distribution marketing activities (i) in which you agree to participate, or (ii) that we designate as mandatory on a Chain-wide basis We may suspend the Facility's participation in Internet and/or distribution marketing activities if you default under this Agreement

3 4 4 You will participate in the Wyndham Rewards or any successor guest rewards or loyalty program we determine is appropriate and pay the Loyalty Program Charge associated with the program as set forth in Schedule C The Wyndham Rewards Front Desk Guide sets forth additional standards, which you agree to follow The Front Desk Guide, including fees assessed

3

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A

and reimbursements rates, may be revised at any time by us or our affiliates upon thirty (30) days' prior notice

3 4 5    As a requirement of your participation in the Reservation System, you must participate in our Signature Reservation Services ("SRS") program during the Term of the Agreement  Under the SRS program, you will pay the fees associated with certain reservations answered by our agents on behalf of the Facility  The program terms and fees associated with the program are described in the SRS agreement that you will sign and deliver to us at the same time as you sign this Agreement

**3 5 Governmental Matters.**  You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote  You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings  You will comply with all applicable federal, state and local laws, regulations and orders applicable to you and/or the Facility, including those combating terrorism such as the USA Patriot Act and Executive Order 13224

**3 6 Financial Books & Records; Audits.**

3 6 1    The Facility's transactions must be timely and accurately recorded in accounting books and records prepared on an accrual basis compliant with generally accepted accounting principles of the United States ("GAAP") and consistent with the most recent edition of the Uniform System of Accounts for the Lodging Industry published by the American Hotel & Motel Association, as modified by this Agreement and System Standards  You acknowledge that your accurate accounting for and reporting of Gross Room Revenues is a material obligation you accept under this Agreement

3 6 2    Upon our request, you will send to us copies of financial statements, tax returns, and other records relating to the Facility for the applicable accounting period that we require under this Agreement and System Standards  We may notify you of a date on which we propose to audit the Facility's books and records at the Facility but such notice is not required  You will be deemed to confirm our proposed date unless you follow the instructions with the audit notice for changing the date  You need to inform us where the books and records will be produced  You need to produce for our auditors at the confirmed time and place for the audit the books, records, tax returns and financial statements for the Facility  We may require access to the property including guest rooms  We may also perform an audit of the Facility's books and records remotely or electronically without advance notice or your knowledge  Your staff must cooperate with and assist our auditors to perform any audit we conduct

3 6 3    We will notify you in writing if you default under this Agreement because (i) you do not cure a violation of Section  3 6 2 within 30 days after the date of the initial audit, (ii) you cancel *two or more previously scheduled audits, (iii) you refuse to admit our auditors  during normal*

4

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A   EE672A0BD5E

business hours at the place where you maintain the Facility's books and records, or refuse to produce the books and records at the audit or send them to us as required under this Agreement and System Standards for the applicable accounting periods, (iv) our audit determines that the books and records you produced are incomplete or show evidence of tampering or violation of generally accepted internal control procedures, or (v) our audit determines that that you have reported to us less than 97% of the Facility's Gross Room Revenues for any fiscal year preceding the audit  Our notice of default may include, in our sole discretion and as part of your performance needed to cure the default under this Section 3 6, an "Accounting Procedure Notice " The Accounting Procedure Notice requires that you obtain and deliver to us, within 90 days after the end of each of your next three fiscal years ending after the Accounting Procedure Notice, an audit opinion signed by an independent certified public accountant who is a member of the American Institute of Certified Public Accountants addressed to us that the Facility's Gross Room Revenues you reported to us during the fiscal year fairly present the Gross Room Revenues of the Facility computed in accordance with this Agreement for the fiscal year  You must also pay any deficiency in Recurring Fees, any Audit Fee, as defined in Section 4 8, we assess you for your default of Section 3 6 as described in Section 4 8, and/or other charges we identify and invoice as a result of the audit

3 6 4   You shall, at your expense, prepare and submit to us by the third day of each month, a statement in the form prescribed by us, accurately reflecting for the immediately preceding month all Gross Room Revenues and such other data or information as we may require  You must submit your statements to us using our on-line reporting and payment tool or through such other technology or means as we may establish from time to time

3 7 **Inspections.**  You acknowledge that the Facility's participation in our quality assurance inspection program (including unannounced inspections) is a material obligation you accept under this Agreement  You will permit our representatives to perform quality assurance inspections of the Facility at any time with or without advance notice  The inspections will commence during normal business hours although we may observe Facility operation at any time  You and the Facility staff will cooperate with the representative performing the inspection  If the Facility fails an inspection, you refuse to cooperate with our representative, or you refuse to comply with our published inspection System Standards, then you will pay us when invoiced for any Reinspection Fee specified in System Standards Manuals plus the reasonable travel, lodging and meal costs our representative incurs for a reinspection  You will also be charged the Reinspection Fee if we are required to return to the Facility to inspect it as a result of your failure to complete any Improvement Obligation by the deadline established in the Punch List, as set forth in Schedule D  We may also include the results of paper and electronic customer satisfaction surveys of your guests as well as unsolicited feedback received from your guests in your final quality assurance score  We may publish and disclose the results of quality assurance inspections and guest surveys  We may, at our discretion, implement a chain-wide quality assurance/mystery shopper inspection program to be performed by a reputable third party  You must provide free lodging for the inspector(s) when he/she visits your Facility

3 8 **Insurance.**  You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards

5

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

established in the Manual   Unless we instruct you otherwise, your liability insurance policies will name as additional insureds Ramada Worldwide Inc , Wyndham Hotels & Resorts, Inc , Wyndham Hotel Group, LLC, and their current and former subsidiaries, affiliates, successors and assigns astheir interests may appear   All policies must be primary and non-contributory with or excess of any insurance coverage that may be available to an additional insured   You must submit to us, annually, a copy of the certificate of or other evidence of renewal or extension of each such insurance policy as required by the System Standards

3 9 **Conferences.**   You or your representative will attend each Chain conference and pay the Conference Registration Fee   The Chain conference may be held as part of a Wyndham Hotel Group, LLC multi-brand conference with special sessions and programs for our Chain only   Mandatory recurrent training for  franchisees and general managers described in Section 4 1 4 may be held at a conference   The Fee will be the same for all Chain Facilities that we  franchise in the United States   We will invoice and charge you for the Conference Fee even if you do not attend the Chain conference You will receive reasonable notice of a Chain conference

3 10    **Purchasing.**   You will purchase or obtain certain items we designate as proprietary or that bear or depict the Marks only from suppliers we approve   You may purchase other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards

3 11    **Good Will.**   You will use reasonable efforts to protect, maintain and promote the name "Ramada" or "Ramada by Wyndham" and its distinguishing characteristics, and the other Marks   You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in conduct which is unlawful or damaging to the good will or public image of the Chain or System   You agree that, in event that you or any of your principals or Guarantors is or is discovered to have been, convicted of a felony or any other offense likely to reflect adversely upon us, the System or the Marks, such conviction is a material, incurable breach of this Section   You will follow System Standards for identification of the Facility and for you to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners   You will participate in Chain-wide guest service and satisfaction guaranty programs we require in good faith for all Chain Facilities You shall use your best efforts to promote usage of other Chain Facilities by members of the public   Except as provided in the System Standards Manual or if you obtain our prior written consent, which we may withhold in our sole discretion, neither your nor the Facility shall promote or advertise any competing business at the Facility including, but not limited to, any other guest lodging facility, time share resort, vacation club, residence club, fractional ownership residence, condominium/apartment leasing or rental business, or the like, unless we or one of our affiliates franchise, manage or own that business

3 12    **Facility Modifications.**   You may not materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) until you receive our prior written consent, which we will not unreasonably withhold or delay   You will pay our Rooms Addition Fee then in effect for each guest room you add to the Facility before you begin construction of any expansion   If we so request, you will obtain our prior written approval of the plans and

6

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 16 of 91 PageID: 16
DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

specifications for any material modification, which we will not unreasonably withhold or delay You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards

3 13   **Courtesy Lodging.** You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time (but only to the extent that adequate room vacancies exist) to our representatives and members of their immediate family, but not more than three standard guest rooms at the same time

3 14   **Minor Renovations.** Beginning three years after the Opening Date, we may issue a "Minor Renovation Notice" to you that will specify reasonable Facility upgrading and renovation requirements (a 'Minor Renovation") to be commenced no sooner than 90 days after the notice is issued, having an aggregate cost for labor, FF&E and materials estimated by us to be not more than the Minor Renovation Ceiling Amount You will perform the Minor Renovations as and when the Minor Renovation Notice requires We will not issue a Minor Renovation Notice within three years after the date of a prior Minor Renovation Notice, or if the three most recent quality assurance inspection scores of the Facility averaged no less than 80% and the most recent quality assurance inspection score for the Facility was no less than 75% (or equivalent scores under a successor quality assurance scoring system we employ), when the Facility is otherwise eligible for a Minor Renovation

3 15   **Technology Standards & Communications.** You recognize that the System requires you to acquire, operate and maintain a computer-based property management system and provide guests with innovative technology for communications and entertainment You must purchase the computer system and other equipment and software that we specify, including preventative maintenance software We may modify System Standards to require new or updated technology at all Chain Facilities At our request, you shall participate in any intranet or extranet system developed for use in connection with the System Such intranet or extranet system may be combined with that of our affiliates You shall agree to such terms and conditions for the use of such intranet or extranet system as we may prescribe, which may include, among other things (a) confidentiality requirements for materials transmitted via such system, (b) password protocols and other security precautions, (c) grounds and procedures for our suspension or revocation of access to the system by you and others, and (d) a privacy policy governing the parties' access to and use of electronic communications posted on electronic bulletin boards or transmitted via the system You shall pay any fee imposed from time to time by us or a third party service provider in connection with hosting such system

4.   **Our Operating and Service Obligations.** We will provide you with the following services and assistance

4 1 **Training.** We may offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager training, remedial training, re-certification training, and supplemental training

7

RAM
Q1/19

P-10

4 1 1 **General Manager Training.** We will offer at our corporate offices or at another location we designate training for your general manager in our Hospitality Management Program  The program will not exceed two weeks in duration and will cover such topics as operating a Chain Facility, marketing and sales, financial management, guest services and people management  We may administer certain diagnostic tests via the Internet to measure the skill set of your general manager and, based in part of his/her score, offer certain Internet-based training as a supplement to the classroom training experience  Your initial general manager (or other representative who exercises day to day operational authority) for the Facility must complete this program to our satisfaction no later than 90 days after the Opening Date  Any replacement general manager must complete the training program to our satisfaction within 90 days after he/she assumes the position  If we do not offer a place in the training program within the above time frame, your replacement general manager must attend the next program held at which we offer a place  Your general manager for the Facility must complete the training even if you employ managers at other Chain Facilities who have already received this training  We charge you tuition for training for your general manager in our Hospitality Management Program which is set forth on Schedule D  If he/she does not attend the training within 90 days after the Opening Date, and for any replacement general manager, you must pay a separate tuition at the rate then in effect for the program when your manager attends the program  If you or any other employee at the Facility wishes to attend the training, you can do so and you must pay the Additional Attendee Fee, currently, $1,400, which is payable by the scheduled date for the program and is in addition to the tuition due for your general manager  We may charge you full or discounted tuition for "refresher" training for your general manager or for additional staff members who attend the training program with your general manager  We will charge the then in effect discounted tuition for any additional staff members who attend the training program with your general manager  You must also pay for your, your general manager and/or additional staff member's travel, lodging, meals, incidental expenses, compensation and benefits

4 1 2 **Remedial Training.** We may require you, your general manager and/or your staff to participate in remedial training if the Facility receives a D or F (or equivalent score) on a quality assurance inspection, a D or F score on quality assurance electronic guest survey (or equivalent evaluation system), or experiences significant complaints to our customer care department or posted on third-party travel websites, distribution channels, blogs, social network and other forums, as determined by us in our sole discretion  This training may be offered at our corporate offices, at a regional location, on-line or at the Facility  The training may be in the form of one or more classes held at different times and locations as we may require  You must pay the tuition in effect for this program when it is offered to you  If the training is provided at the Facility, you must provide lodging for our trainers  In addition, if at the time of your quality assurance inspection, you receive (i) a failure rating on guest room cleanliness and (ii) an average quality assurance score of F on cleanliness of guestroom category or cleanliness of bathroom category (based on a minimum of 10 electronic quality assurance guest surveys), then we may require you to take a one day, on-site remedial class on housekeeping within 60 days after the inspection  The tuition for an on-line class is currently $250, but is subject to increase in the future  The fee for an on-site customer experience assessment or training class is currently $1,250, but is subject to increase in the future

8

RAM
Q1/19

P-11

DocuSign Envelope ID 71AB64A8-7582-4FC6-/    /EE672A0BD5E

**4 1 3    Ongoing Training and Support.** You must subscribe and pay an annual fee for access to our learning management system, Wyndham University, which includes training via live workshops, e-learning modules, webinars, online courses, videos and other educational resources, accessible by you and your staff via the Internet  All general managers must complete recertification training at such intervals as we may establish in the System Standards Manual You must pay us the tuition then in effect for the program We may offer other mandatory or optional training programs for reasonable tuition or without charge  Recertification and other supplemental training may be offered in our corporate offices or other locations or held in conjunction with a Chain lodging conference  You must pay the then current tuition for the training as well as for your representative's travel, lodging, meals, incidental expenses, compensation and benefits while attending the training  We may offer, rent or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices  We may also offer Internet-based training via the Chain's intranet website

**4 1 4    No Show and Cancellation Fees.** If you or your general manager, or any other member of your staff you designate, fails to register for a required training program within the required time period, or registers for a training program but fails to attend such program as scheduled without, notifying us in advance, whether such attendance is required or optional, we may charge you a No-Show Fee of up to 100% of the tuition for the program  If you, your general manager or any other member of your staff cancels participation in any training program less than seven (7) days before it is scheduled to be held, we may charge you a Cancellation Fee of up to 50% of the tuition for the program  No-Show and Cancellation Fees are in addition to the tuition you will have to pay at the then offered rate when you or your general manager attends the program  We may assess you additional No-Show or Cancellation Fees for continued failures by you under this Section 4 1

**4 2 Reservation System.** We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion  We will use Basic Reservation Fees we collect as part of allocated System Assessment Fees for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System  We or our Approved Supplier will provide software maintenance and support for any software we  or an Approved Supplier license to you to connect to the Reservation System if you are up to date in your payment of Recurring Fees and all other fees you must pay under any other agreement with us, an affiliate or the supplier, as applicable  During the Term, the Facility will participate in the Reservation System on an exclusive basis, including entering into all related technology agreements and complying with all terms and conditions which we establish from time to time for participation  The Facility may not book any reservations through any other electronic reservation system, booking engine or other technology  You shall own all Guest Information within your possession or any service provider holding such information on your behalf, and we shall own all Guest Information within our possession or any service provider holding such information on our behalf  To the extent that you and we both possess identical Guest Information, your and our respective ownership rights with regard to such Guest Information shall be separate and independent from one another  We have the right to provide reservation services to lodging facilities other than Chain Facilities or to other parties

9

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

## 4 3 Marketing.

4 3 1    We will use Marketing Contributions we collect as part of the System Assessment Fees to promote public awareness and usage of Chain Facilities by implementing advertising, promotion, publicity, market research, loyalty marketing and other marketing programs, training programs and related activities as we deem appropriate    We will determine in our discretion  (i) The nature and type of media placement, (ii) The allocation (if any) among international, national, regional and local markets, and (iii) The nature and type of advertising copy, other materials and programs    We or an affiliate may be reimbursed from Marketing Contributions for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services    We are not obligated to supplement or advance funds available from collections of the Marketing Contributions to pay for marketing activities    We do not promise that the Facility or you will benefit directly or proportionately from marketing activities

4 3 2    We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) as we deem appropriate and may make available to you (to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs

4 3 3    We may, at our discretion, implement "group booking" programs created to encourage use of Chain Facilities for tours, conventions and the like, possibly for an additional fees

**4 4 Purchasing and Other Services.**  We may offer optional assistance to you with purchasing items used at or in the Facility    Our affiliates may offer this service on our behalf    We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts    We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards

**4 5 The System.**  We will control and establish requirements for all aspects of the System    We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions    We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances    We may, in our discretion, change the designation standards for the Chain and then require that you change the designation of the Facility and related presentation of that designation where it appears    We will not be liable to you for any expenses, losses or damages you may sustain as a result of any Mark addition, modification, substitution or discontinuation

**4 6 Consultations and Standards Compliance.**  We will assist you to understand your obligations under System Standards by telephone, mail, during any visits by our employees to the Facility, through the System Standards Manual, at training sessions and during conferences, meetings and visits we conduct    We will provide telephone and mail consultation on Facility operation and marketing through our representatives    We will offer you access to any Internet website we may maintain to provide Chain  franchisees with information and services, subject to

10

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A   EE672A0BD5E

any rules, policies and procedures we establish for its use and access and to this Agreement We may limit or deny access to any such website while you are in default under this Agreement

**4 7 System Standards Manual and Other Publications.** We will specify System Standards in the System Standards Manual, policy statements or other publications which we may make available to you via our Chain intranet, in paper copies or through another medium You will at all times comply with the System Standards You acknowledge that the System Standards and the System Standards Manual are designed to protect the System and the Marks, and not to control the day-to-day operation of your business We will provide you with access to the System Standards Manual promptly after we sign this Agreement We will notify you via our Chain intranet or another medium of any System Standards Manual revisions and/or supplements as and when issued as well as any other publications and policy statements in effect for Chain franchisees from time to time

**4 8 Inspections and Audits.** We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3 6 We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection We may impose a reinspection fee and will charge you for our costs as provided in Section 3 7 In connection with an audit, you will pay us any understated amount plus interest under Section 3 6 If the understated amount is three percent (3%) or more of the total amount owed during a six month period, you will also pay us an "Audit Fee" equal to the costs and expenses associated with the audit Our inspections are solely for the purposes of checking compliance with System Standards

**5. Term.** The Term begins on the date that we insert in the preamble of this Agreement after we sign it (the "Effective Date") and expires at the end of the fifteenth (15th) Franchise Year NEITHER PARTY HAS RENEWAL RIGHTS OR OPTIONS However, if applicable law requires us to offer renewal rights, and you desire to renew this Agreement, then you will apply for a renewal franchise agreement at least six months, but not more than nine months, prior to the expiration date, and subject to such applicable law, you will have to meet our then-current requirements for applicants seeking a franchise agreement, which may include (i) executing our then-current form of license and other agreements, which license and other agreements may contain materially different terms and provisions (such as operating standards and fees) from those contained in this Agreement, (ii) executing a general release of us and our affiliates, in form and substance satisfactory to us, (iii) completing a property improvement plan, and (iv) paying a standard renewal fee, if then applicable

**6 Application and Initial Fees.** You must pay us a non-refundable Application Fee of $2,500, which shall be applied to your Initial or Relicense Fee If your franchise is for a new construction or conversion Facility, you must pay us an Initial Fee If you are a transferee of an existing Facility or are renewing an existing franchise, you will pay us a Relicense Fee The amount of your Initial or Relicense Fee is $ 25,000, $2,500 of which shall be applied from your Application Fee, and the remainder paid when you sign this Agreement and is fully earned when we sign this Agreement

11

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A     EE672A0BD5E

## 7.  Recurring Fees, Taxes and Interest.

7 1 You will pay us certain "Recurring Fees" each month of the Term payable in U S  dollars (or such other currency as we may direct if the Facility is outside the United States)  The Recurring Fees described in this Section 7 1 are payable three days after the month in which they accrue, without billing or demand   Other Recurring Fees are payable at the time set forth in the System Standards  Recurring Fees include the following

7 1 1    A "Royalty" equal to four and one half percent (4 5%) of Gross Room Revenues of the Facility accruing during the calendar month, accrues from the earlier of the Opening Date or the date you identify the Facility as a Chain Facility or operate it under a Mark until the end of the Term

7 1 2    A "System Assessment Fee" as set forth in Schedule C, including a "Marketing Contribution" for advertising, marketing, training, and other related services and programs, and a "Basic Reservation Fee" for the Reservation System, accrues from the Opening Date until the end of the Term, including during reservation suspension periods   We collect and deposit these Fees from franchisees, then disburse and administer the funds collected by means of a separate account or accounts   We may use the System Assessment Fees we collect, in whole or in part, to reimburse our reasonable direct and indirect costs, overhead or other expenses of providing marketing, training and reservation services   You will also pay or reimburse us as described in Schedule C for "Additional Fees" such as commissions we pay to travel and other agents paid for certain reservation and marketing services to generate reservation at the Facility plus a reasonable service fee, fees levied to pay for reservations for the Facility originated or processed through the Global Distribution System, the Chain Websites  and/or other reservation systems, distribution channels and networks, and fees for additional services and programs   We may charge Facilities using the Reservation System outside the United States for reservation service using a different formula   We may change, modify, add or delete the System Assessment Fee and/or Additional Fees in accordance with Schedule C

7 2 You will pay to us "Taxes" equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Recurring Fees and basic charges by the jurisdictions where the Facility is located, but not including any income tax, franchise or other similar tax for the privilege of doing business by us in your State   You will pay Taxes to us when due

7 3 "Interest" is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1 5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid

7 4 If a transfer occurs, your transferee or you will pay us our then current Application Fee and a "Relicense Fee" equal to the Initial Fee we would then charge a new franchisee for the Facility

7 5 You will report and pay to us all Recurring Fees and other fees and charges on-line via our self-service Electronic Invoice Presentment and Payment tool ( `WynPay") accessible through our

12

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

Chain intranet  In the WynPay on-line environment, payments can be made either through the electronic check payment channel or the credit card payment channel  We reserve the right to change, from time to time, the technologies or other means for reporting and paying fees to us by amending the System Standards Manual

## 8. **Indemnifications.**

8 1 Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any payment you make or fail to make to us, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven    You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury  This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property

8 2 You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee    You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest    We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters

8 3 We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses incurred by you in any action or claim arising from your proper use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name    You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you    You will cooperate with our defense and resolution of the claim  We may resolve the matter by obtaining a license of the property for you at our expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others

## 9. **Your Assignments, Transfers and Conveyances.**

13

RAM
Q1/19

P-16

DocuSign Envelope ID 71AB64A8-7582-4FC6-A  EE672A0BD5E

**9 1 Transfer of the Facility.** This Agreement is personal to you (and your owners if you are an entity) We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you You may finance the Facility and grant a lien, security interest or encumbrance on it (but not in this Agreement) without notice to us or our consent If a Transfer is to occur, the transferee or you must comply with Section 9 3 Your Franchise is subject to termination when the Transfer occurs The Franchise is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13 You and your owners may. only with our prior written consent and after you comply with Sections 9 3 and 9 6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights. benefits and obligations under this Agreement, as security or otherwise Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers

**9 2 Financing Documents.** Neither you, nor any of your Equity Interest owners, shall represent in any proposed financing arrangement to any proposed lender or participant in a private or public investment offering that we or any of our affiliates are or shall be in any way responsible for your obligations or financial projections, if any, set forth in such financing arrangement or investment offering or that we or any of our affiliates are or shall be participating in such private or public investment offering In addition, any proposed financing arrangement where the service mark "Ramada" appears, or a reference to this Agreement appears, shall contain a disclaimer in bold face type substantially as follows THE BORROWER IS A PARTY TO AN AGREEMENT WITH RAMADA WORLDWIDE INC TO OPERATE HOTELS USING THE SERVICE MARK "RAMADA " NEITHER RAMADA WORLDWIDE INC NOR ITS AFFILIATES OWN ANY SUCH HOTELS OR ARE A PARTY TO THIS FINANCING AND HAVE NOT *PROVIDED OR REVIEWED, AND ARE NOT RESPONSIBLE FOR, ANY DISCLOSURES OR OTHER INFORMATION SET FORTH HEREIN* Also, at least fifteen (15) days prior to closing such financing, you shall submit to us a written statement certifying that you have not misrepresented or overstated your relationship with us and our affiliates or your rights to use the Marks

**9 3 Conditions.** We may condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions, however, we will not unreasonably withhold, delay or condition our consent to a Transfer if the Facility is then financed under a program in which the United States Small Business Administration ("SBA") guarantees the financing or its repayment If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a franchisee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new franchise applicant, pay the Application and Relicense Fees then in effect, sign the form of Franchise Agreement we then offer in conversion transactions and agree to renovate the Facility as if it were an existing facility converting to the System, as we reasonably determine We will provide a Punch List of improvements we will require after the transferee's Application is submitted to us We may require structural changes to the Facility if it no longer meets System Standards for entering conversion facilities or, in the alternative, condition our

14

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

approval of the Transfer on limiting the transferee's term to the balance of your Term, or adding a right to terminate without cause exercisable by either party after a period of time has elapsed Our consent to the transaction will not be effective until these conditions are satisfied If we do not approve the Transfer, we may, in our sole discretion, allow you to terminate the Franchise when you sell the Facility and pay us Liquidated Damages under Section 12 1 at the same rate as you would pay if the termination occurred before the Opening Date Such payment would be due and payable when you transfer possession of the Facility We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise Our consent to a transfer is not a waiver of (i) any claims we may have against you, or (ii) our right to demand strict compliance from the Transferee with the terms of its agreement

9 4 **Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee No Transfer will be deemed to occur You also must not be in default and you must comply with the application and notice procedures specified in Sections 9 3 and 9 6 Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the Franchise Agreement form then offered prospective franchisees No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement You must comply with this Section if you transfer the Facility to a Permitted Transferee A transfer resulting from a death may occur even if you are in default under this Agreement

9 5 **Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained will be void, as between you and us You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility

9 6 **Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility We will respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request

10. **Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent We will have no obligations to you with respect to any assigned right or duty after you are notified that our transferee has assumed such rights or duties under this Agreement except those that arose before we assign this Agreement

15

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A        EE672A0BD5E

## 11. Default and Termination.

11 1    **Default.**  In addition to the matters identified in Sections 3 1 and 3 6, you will be in default under this Agreement if (a) you do not pay us when a payment is due under this Agreement or under any other instrument, debt, agreement or account with us related to the Facility, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement  If your default is not cured within ten days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate this Agreement by written notice to you, under Section 11 2  We will not exercise our right to terminate if you have completely cured your default during the time allowed for cure, or until any waiting period required by law has elapsed  In the case of a default resulting from the Facility's failure to meet Quality Standards as measured by a quality assurance inspection, if you have acted diligently to cure the default but cannot do so, and the default does not relate to health or safety, we may, in our discretion, enter into an improvement agreement with you provided you request such an agreement within 30 days after receiving notice of the failing inspection  If we have entered into an improvement agreement, you must cure the default within the time period specified in the improvement agreement which shall not exceed 90 days after the failed inspection  We may terminate this Agreement and any or all rights granted hereunder if you do not timely perform that improvement agreement

11 2    **Termination.**  We may terminate this Agreement effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11 1 or we are authorized to terminate under Schedule D due to your failure to perform your Improvement Obligation, (2) you discontinue operating the Facility as a "Ramada" or a "Ramada by Wyndham", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another franchise agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of Section 9 occurs, or a Transfer occurs before the relicensing process is completed, (11) you or any of your Equity Interest owners contest in court the ownership or right to franchise or license all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, or (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests

16

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6 A   EE672A0BD5E

## 11 3   Casualty and Condemnation.

11 3 1   You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available   You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations   You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty   This restoration will be completed within 180 days after the Casualty   You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first   If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13   You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty

11 3 2   You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date   This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority but you will be liable for the Condemnation Payments set forth in Section 12 2

11 3 3   Any protected territory covenants will terminate when you give us notice of any proposed Condemnation or that you will not restore the Facility after a Casualty

11 4   **Our Other Remedies.**  We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement or any other written agreement with us relating to the Facility, discontinue reservation referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default   All System Assessment Fees and related Reservation System user fees accrue during the suspension period   Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform   We may charge you, and you must pay as a condition precedent to restoration of reservation service, a Reconnection Fee specified on Schedule C to reimburse us for our costs associated with service suspension and restoration   We may deduct points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards   We may omit the Facility from any paper or electronic directory of Chain Facilities that we issue   We may also suspend or terminate any temporary or other fee reductions we may have agreed to in this Agreement and/or any stipulations in Section 18 below, and/or cease to provide any operational support until you address any failure to perform under this Agreement   You agree that our exercise of any rights in this Section will not constitute an actual or constructive termination of this Agreement All such remedies are cumulative and not in lieu of any other rights or remedies we may have under this Agreement   If we exercise our right not to terminate this Agreement but to implement such suspension and/or removal, we reserve the right at any time after the appropriate cure period under the written notice has lapsed, to, upon written notice to you, terminate this Agreement without giving you any additional corrective or cure period (subject to applicable law)   You recognize that

17

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6 A    EE672A0BD5E

any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief, without the need for posting any bond  We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice  Our consent or approval may be withheld if needed while you are in default under this Agreement or may be conditioned on the cure of all your defaults  Once a termination or expiration date for this Agreement has been established in accordance with the provisions of this Agreement, we may cease accepting reservations through the Reservation System for any person(s) seeking to make a reservation for a stay on any date including or following the termination or expiration of this Agreement

### 11 5 **Your Remedies.**

11 5 1 If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent to the obligation  To the extent permitted by applicable law, this action shall be your exclusive remedy

11 5 2 You (and your owners and guarantors) waive, to the fullest extent permitted by law, any right to, or claim for, any punitive or exemplary damages against us and against any affiliates, owners, employees or agents of us, and agree that in the event of a dispute, you will be limited to the recovery of any actual damages sustained and any equitable relief to which you might be entitled

### 12. **Liquidated Damages.**

12 1    **Generally.** If we terminate this Agreement under Section 11 2, or you terminate this Agreement (except under Section 11 3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less)  If the Facility has been open for fewer than 24 months, then the amount shall be the average monthly Royalties and System Assessment Fees since the Opening Date multiplied by 24   You will also pay any applicable Taxes assessed on such payment and Interest calculated under Section 7 3 accruing from 30 days after the date of termination  Before the Ending Period, Liquidated Damages will not be less than the product of $2,000 multiplied by the number of guest rooms that we authorized you to operate under Schedule B of this Agreement, regardless of any room reduction  If we terminate this Agreement under  Schedule D before the Opening Date, you will pay us within 10 days after you receive our notice of termination  Liquidated Damages equal to one-half the amount payable for termination under Section 11 2  If any valid, applicable law or regulation of a competent governmental authority having jurisdiction over this Agreement limits your ability to pay, and our ability to receive, the Liquidated Damages you are obligated to pay hereunder, you shall be liable to us for any and all damages which we incur, now or in the future, as a result of your breach of this Agreement

18

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6 A     EE672A0BD5E

Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement  Our right to receive other amounts due under this Agreement is not affected

12 2   **Condemnation Payments.**  In the event a Condemnation is to occur, you will pay us the fees set forth in Section 7 for a period of one year after we receive the initial notice of condemnation described in Section 11 3 2, or until the Condemnation occurs, whichever is longer  You will pay us Liquidated Damages equal to the average daily Royalties and System Assessment Fees for the one year period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period if the Condemnation is completed before the one year notice period expires  This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority)  You will pay no Liquidated Damages if the Condemnation is completed after the one year notice period expires, but the fees set forth in Section 7 must be paid when due until Condemnation is completed

13. **Your Duties At and After Termination.**   When a Termination occurs for any reason whatsoever

13 1   **System Usage Ceases.**   You must comply with the following "de-identification" obligations  You will immediately stop using the System to operate and identify the Facility  You will remove all signage and other items bearing any Marks and follow the other steps detailed in the System Standards Manual or other brand directives for changing the identification of the Facility  You will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features  You shall not identify the Facility with a confusingly similar mark or name, or use the same colors as the System trade dress for signage, printed materials and painted surfaces  You will cease all Internet marketing using any Marks to identify the Facility  If you do not strictly comply with all of the de-identification requirements above, in the System Standards Manual and in our other brand directives, you agree to pay us a royalty equal to $2,000 per day until de-identification is completed to our satisfaction

13 2   **Other Duties.**  You will pay all amounts owed to us under this Agreement within 10 days after termination  We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11 4  We may notify third parties that the Facility is no longer associated with the Chain  We may also, to the extent permitted by applicable law, and without prior notice enter the Facility and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours  If you have not completed your de-identification obligations to our satisfaction, we may paint over or remove and purchase for $10 00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination  You will promptly pay or reimburse us for our cost of removing such items, net of the $10 00 purchase price for signage  We will exercise reasonable care in removing or painting over signage  We will have no obligation or liability to restore the Facility to its condition prior to removing the signage  We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and

19

RAM
Q1/19

(Page 23 of 49)

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 29 of 91 PageID: 29
DocuSign Envelope ID 71AB64A8 7582 4FC6 A        EE672A0BD5E

supplies at the lower of their cost or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you  You will transfer to us any domain names you own that include any material portion of the Marks

13 3    **Reservations.**  The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when the reservations are made and pay when due all related travel agent commissions  You acknowledge and agree that once a termination or expiration date for this Agreement has been established in accordance with the provisions of this Agreement, we may stop accepting reservations through the Reservation System for any person(s) seeking to make a reservation for a stay on any date on or after the termination or expiration of this Agreement  In addition, when this Agreement terminates or expires for any reason, we have the right to contact those individuals or entities who have reserved rooms with you through the CRS to inform them that your lodging facility is no longer part of the System  We further have the right to inform those guests of other facilities within the System that are near your Facility in the event that the guests prefer to change their reservations  You agree that the exercise of our rights under this Section will not constitute an interference with your contractual or business relationship

13 4    **Survival of Certain Provisions.**  Sections 3 6 (as to audits, for 2 years after termination), the first two sentences of 3 11, 7 (as to amounts accruing through termination), 8, 11 3 2, 11 4, 12, 13, 15, 16 and 17 survive termination of this Agreement  Additionally, all covenants, obligations and agreements of yours which by their terms or by implication are to be performed after the termination or expiration of the Term, shall survive such termination or expiration

**14. Your Representations and Warranties.**  You expressly represent and warrant to us as follows

14 1    **Quiet Enjoyment and Financing.**  You own, or will own prior to commencing improvement, or lease, the Location and the Facility  You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility  You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform your obligations under this Agreement

14 2    **This Transaction.**  You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement  You have obtained all necessary approvals of your owners, Board of Directors and lenders  No executory franchise, license, or affiliation agreement for the Facility exists other than this Agreement  Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject  Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar

20

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A EE672A0BD5E

action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application You will submit to us the documents about the Facility, you, your owners and your finances that we request in the Franchise Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement You represent and warrant to us that the information you provided in your Application is true, correct and accurate To the best of your knowledge, neither you, your owners (if you are an entity), your officers, directors or employees or anyone else affiliated or associated with you, whether by common ownership,, by contract, or otherwise, has been designated as, or is, a terrorist, a "Specially Designated National" or a "Blocked Person" under U S Executive Order 13224, in lists published by the U S Department of the Treasury's Office of Foreign Assets Control, or otherwise

14 3 **No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the circumstances There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement

## 15. Proprietary Rights.

15 1 **Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing You agree to (i) execute any documents we request to obtain or maintain protection for the Marks, (ii) use the Marks only in connection with the operation of the Facility as permitted by the System Standards, and (iii) that your unauthorized use of the Marks shall constitute both an infringement of our rights and a material breach of your obligations under this Agreement

15 2 **Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit No good will shall attach to any secondary designator that you use

15 3 **Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as franchisor or franchisee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location outside the Protected Territory You acknowledge that we are affiliated with or in the future may

21

RAM
Q1/19

DocuSign Envelope ID  71AB64A8-7582-4FC6 A    'EE672A0BD5E

become affiliated with other lodging providers or franchise systems that operate under names or marks other than the Marks  We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, Approved Supplier lists, franchise sales personnel (or independent franchise sales representatives), etc

15 4    **Confidential Information.**    You will take all appropriate actions to preserve the confidentiality of all Confidential Information   Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement    You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software)   You will use Confidential Information only for the Facility and to perform under this Agreement   Upon termination (or earlier, as we may request), you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of the U S  Copyright Act, as amended   Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years   We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information

15 5    **Litigation.**  You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual property, and (ii) or any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware   We alone will handle disputes with third parties concerning use of all or any part of the System   You will cooperate with our efforts to resolve these disputes   We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material

15 6    **The Internet and other Distribution Channels.**  You may use the Internet to market the Facility subject to this Agreement and System Standards   You shall not use, license or register any domain name, universal resource locator, or other means of identifying you or the Facility that uses a mark or any image or language confusingly similar to a Mark except as otherwise expressly permitted by the System Standards Manual or with our written consent   You will assign to us any such identification at our request without compensation or consideration   You may not purchase any key words for paid search or other electronic marketing that utilizes any Mark without our written consent   You must make available through the Reservation System and the Chain Website all rates you offer directly to the general public or indirectly via Internet marketing arrangements with third parties   You agree to participate in our Central Commission Payment Program and to reimburse us for any fees or commissions we pay to intermediaries and retailers on your behalf or for Chain Facilities to participate in their programs   You must

22

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-/    7EE672A0BD5E

participate in the Chain's best available rate on the Internet guarantee or successor program  The content you provide us or use yourself for any Internet or distribution marketing materials must be true, correct and accurate, and you will notify us in writing promptly when any correction to the content becomes necessary  You shall promptly modify at our request the content of any Internet or distribution marketing materials for the Facility you use, authorize, display or provide to conform to System Standards  Any use of the Marks and other elements of the System on the Internet inures to our benefit under Section 15 2

## 16. Relationship of Parties.

16 1    **Independence.** You are an independent contractor  You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever  We and you have a business relationship based entirely on and circumscribed by this Agreement  No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement  You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees

16 2    **Joint Status.** If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly  The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities

## 17. Legal Matters.

17 1    **Partial Invalidity.** If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect  If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected  However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this Agreement by written notice to you without penalty or compensation owed by either party

17 2    **Waivers, Modifications and Approvals.** If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice  Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel  All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective  We may unilaterally revise Schedule C when this Agreement so permits

17 3    **Notices.** Notices will be effective if in writing and delivered (i) by facsimile transmission with confirmation original sent by first class mail, postage prepaid, (ii) by delivery service, with proof of delivery, (iii) by first class, prepaid certified or registered mail, return receipt requested,

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6 A     EE672A0BD5E

(iv) by electronic mail, posting of the notice on our Chain intranet site or by a similar technology, or (v) by such other means as to result in actual or constructive receipt by the person or office holder designated below, to the appropriate party at its address stated below or as it may otherwise designated by notice You consent to receive electronic mail from us Notices shall be deemed given on the date delivered or date of attempted delivery, if refused

Ramada Worldwide Inc
Our address  22 Sylvan Way, Parsippany, New Jersey 07054-0278
Attention  Senior Vice President - Contracts Administration, Fax No  (973) 753-7254

Your name  Management Solution Holdings, LLC, Your address  2510 Telegraph Rd  Suite L Bloomfield Township. MI 48302, Attention  Shannon Steel, Your fax No      , Your e-mail address  s steel331@gmail com

17 4    **Remedies.** Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity  The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement

17 5    **Miscellaneous.** This Agreement is exclusively for the benefit of the parties  There are no third party beneficiaries  No agreement between us and anyone else is for your benefit  The section headings in this Agreement are for convenience of reference only

17 6    **Choice of Law; Venue; Dispute Resolution**

17 6 1  This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles  The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey

17 6 2  The parties shall attempt in good faith to resolve any dispute concerning this Agreement or the parties' relationship promptly through negotiation between authorized representatives  If these efforts are not successful, either party may attempt to resolve the dispute through non-binding mediation  Either party may request mediation which shall be conducted by a mutually acceptable and neutral third party organization  If the parties cannot resolve the dispute through negotiation or mediation, or choose not to negotiate or mediate, either party may pursue litigation

17 6 3  You consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you

17 6 4  **WAIVER OF JURY TRIAL. THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION RELATED TO THIS AGREEMENT OR THE**

24

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 34 of 91 PageID: 34
DocuSign Envelope ID 71AB64A8-7582-4FC6-/   7EE672A0BD5E

## RELATIONSHIP BETWEEN THE FRANCHISOR, THE FRANCHISEE, ANY GUARANTOR, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS.

17 6 5 Any judicial proceeding directly or indirectly arising from or relating to this Agreement shall be considered unique as to its facts and may not be brought as a class action You and each of the owners of your Equity Interests waive any right to proceed against us by way of class action

**17 7    Special Acknowledgments.  You acknowledge the following statements to be true and correct as of the date you sign this Agreement, and to be binding on you.**

**17 7 1 You have read our disclosure document for prospective franchisees ("FDD") and independently evaluated and investigated the risks of investing in the hotel industry generally and purchasing this franchise specifically, including such factors as current and potential market conditions, owning a franchise and various competitive factors**

**17 7 2 You have received our FDD at least 14 days before signing this Agreement or paying the Initial Fee to us.**

**17 7 3 Neither we nor any person acting on our behalf has made any oral or written representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement or in the FDD.  You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement or in the FDD.**

**17 7 4 This Agreement, together with the exhibits and schedules attached, is the entire agreement superseding all previous oral and written representations, agreements and understandings of the parties about the Facility and the Franchise other than representations set forth in the FDD.  Notwithstanding the foregoing, no provision in any franchise or membership agreement, or any related agreement, is intended to disclaim the express representations made in the FDD.**

**17 7 5 You acknowledge that no salesperson has made any promise or provided any information to you about actual or projected sales, revenues, income, profits or expenses from the Facility except as stated in Item 19 of the FDD or in a writing that is attached to this Agreement and signed by us.**

**17 7 6 You understand that the franchise relationship is an arms' length, commercial business relationship in which each party acts in its own interest.**

17 8    **Force Majeure.**  Neither you nor we shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform obligations results from   (a) windstorms, rains, floods, earthquakes, typhoons, mudslides or other similar natural causes, (b) fires, strikes, embargoes, war, acts of terrorism or riot, (c) legal restrictions that prohibit or prevent performance, or (d) any other similar event or cause beyond the control of the party affected   Any delay resulting

25

RAM
Q1/19

DocuSign Envelope ID 71AB64A8 7582 4FC6 /    7EE672A0BD5E

from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, so long as a remedy is continuously and diligently sought by the affected party, except that no such cause shall excuse payment of amounts owed at the time of such occurrence or payment of Recurring Fees and other amounts due to us subsequent to such occurrence other than a governmental or judicial order prohibiting such payments

17 9    **No Right to Offset**. **You acknowledge and agree that you will not withhold or offset any liquidated or unliquidated amounts, damages or other monies allegedly due you by us against any Recurring Fees or any other fees due us under this Agreement.**

18    **Special Stipulations**.  The following special stipulations apply to this Agreement and supersede any inconsistent or conflicting provisions   You acknowledge that these stipulations and any changes made to the body of the Agreement at your request or in response to other changes to our form agreement are the product of arms' length negotiations with us and represent mutually agreed, material inducements to enter into this Agreement, beneficial to you and supported by adequate consideration from both parties   These are personal to you and are not transferable or assignable except to a Permitted Transferee

18 1    **Extension of Performance Deadlines**.  You have requested an extension of the time specified in Schedule D to complete the pre-opening conversion and renovations of the Facility specified in the Punch List (attached to Schedule D) to September 30, 2019  We agree to this extension provided that you demonstrate to our reasonable satisfaction that you have acted diligently after the Effective Date to commence renovation,

18 2    **Combined Fees**   Notwithstanding Section 7 1, you will pay a Combined Fee consisting of the Royalty and System Assessment Fee (which is comprised of the Marketing Contribution and Basic Reservation Fee), at the rates set forth in this Section   The Combined Fee excludes commissions and related service charges, guest complaint assessments, Internet and GDS Fees, the Loyalty Program Charge and other similar fees and charges described on Schedule C which must be paid as stated in this Agreement

18 2 1    The Combined Fee shall be four and a half  percent (4 5%) of Gross Room Revenues accruing during the first Franchise Year, and

18 2 1    The Combined Fee shall be five  percent (5%) of Gross Room Revenues accruing during the second and third Franchise Years, and

18 2 1    The Combined Fee shall be six  percent (6%) of Gross Room Revenues accruing during the fourth and fifth Franchise Years, and

18 2 2    The Royalty and System Assessment Fee shall be computed and paid at the rates specified in Section 7 1 on Gross Room Revenues accruing after the fifth Franchise Year

18 2 3    The rate changes set forth in this Section automatically terminate without notice or opportunity to cure, and the Royalty and System Assessment Fees shall reset to the rates specified

26

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6    7EE672A0BD5E

in Section 7, if and as of the date (i) a Termination occurs, or we send you a notice of default and you fail to cure the default within the time specified, if any, in the notice of default, or (ii) after you either satisfy the Improvement Obligation or fail to complete it by the required deadlines, the Facility receives a quality assurance inspection score of less than 80% (or its then equivalent) and the Facility fails to achieve a quality assurance inspection score of more than 80% in a re-inspection to be performed not less than 60 days after the initial inspection

18 3    Development Incentive

18 3 1 You will be eligible to participate in our Development Incentive Program if (i) you sign and deliver this Agreement together with the Initial Fee by June 28, 2019, (ii) you and your guarantors sign and return to us a Development Incentive Note with the signed Agreement, (iii) the Chain Facility has a Punch List we provide to you, and (iv) you open the Facility in compliance with the Punch List and Schedule D    The amount of the Development Incentive is based on the number of guest rooms at the Facility on the Opening Date, subject to certain limitations    The amount of the Development Incentive will be $657,000, based on the number of guest rooms specified on Schedule B    If the number of guest rooms changes with our consent, we will adjust the amount of the Development Incentive based on the formula of $2,750 for each guest room, less the approved 239 guest rooms, but not more than 50% of your equity investment in the Facility    You authorize us to modify the principal amount of the Development Incentive Note based on this Section and the number of guest rooms at the Facility

18 3 2 The Development Incentive will be disbursed after (i) you have passed a final credit/financial review with no material adverse changes in your or your guarantors' business, legal, litigation, bankruptcy status or finances or the financial viability of the Facility since preliminary approval, (ii) the Facility officially opens with our consent, (iii) you have completed all required pre-opening improvements specified in this Agreement, and (iv) you have paid the Initial Fee    The Development Incentive is a loan that is not subject to repayment unless the Franchise terminates before the end of the Term of the Agreement or a Transfer occurs    If that happens, you will repay the balance of the Development Incentive    At each anniversary of the Opening Date, the Development Incentive reduces by 1/15th of the original amount    The Development Incentive Note bears no interest except in the case of default    Your principal owners must co-sign the Note with you    If your principals are residents of community property or certain other states, their spouses must also co-sign the Note    If you engage in or suffer a Transfer, you must repay the balance of the Development Incentive Note unless the transferee and its principals assume the obligation to repay the Development Incentive and provide us with such other security as we may require in our sole discretion    We reserve the right to conduct a credit investigation of the Transferee and its owners at all times and withdraw the offer of the Development Incentive before we issue or disburse the Development Incentive

**[Signatures follow on next page]**

RAM
Q1/19

DocuSign Envelope ID  71AB64A8-7582-4FC6   7EE672A0BD5E

June        IN WITNESS WHEREOF, the parties have executed this Agreement on this $^{26}$___ day of
_____, 20$^{19}$___ and agree to be bound by the terms and conditions of this Agreement as of the Effective Date

**WE:**
RAMADA WORLDWIDE INC

DocuSigned by

Michael Piccola

By _____

00FA2031CB45440

Michael Piccola
Senior Vice President


**YOU,** as franchisee
**Management Solution Holdings LLC**

DocuSigned by

By _____

09F9A1C8D02543A

Manager

28

RAM
Q1/19

(Page 32 of 49)

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 38 of 91 PageID: 38
DocuSign Envelope ID  71AB64A8-7582-4FC6    -7EE672A0BD5E

# APPENDIX A

## DEFINITIONS

<u>Additional Fees</u> means the fees charged under Section 7 1 2 other than System Assessment Fee

<u>Agreement</u> means this Franchise Agreement

<u>Application Fee</u> means the fee you pay when you submit your Application under Section 6

<u>Approved Plans</u> means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Schedule D

<u>Basic Reservation Fee</u> means the fees set forth in Section 7 1 2 and Schedule C, as modified in accordance with this Agreement for reservation services and other charges

<u>Casualty</u> means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control

<u>Chain</u> means the network of Chain Facilities

<u>Chain Facility</u> means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks

<u>Chain Websites</u> means any current or future consumer or business websites, mobile websites or mobile applications that we or our affiliates develop for booking reservations for and/or providing information about Chain Facilities, and any future equivalent technology

<u>Condemnation</u> means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation

<u>Conference Fee</u> means the fee we charge for your attendance at a conference for Chain Facilities and their franchisees when and if held

<u>Confidential Information</u> means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence    Confidential Information includes all other system standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the property management system software and other applications software

Appendix A - 29

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-A    EE672A0BD5E

Design Standards mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility

Directory means any general purpose directory we issue, whether printed, web-based, or issued in another medium, which may list the names and addresses of Chain Facilities in the United States, and at our discretion, other System facilities located outside the United States, Canada and Mexico

Effective Date means the date we insert in the Preamble of this Agreement after we sign it

Equity Interests shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests

Equity Transfer means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those disclosed on Schedule B, as in effect prior to the transaction   Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes   An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner   An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date   An Equity Transfer does not occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners   An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority

Facility means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties existing or to be constructed at the Location on or after the Effective Date

FF&E means furniture, fixtures and equipment

FF&E Standards means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility

Appendix A - 30

Case 2:23-cv-02183-EP-MAH    Document 1    FILED 04/19/23    Page 40 of 91 PageID: 40
DocuSign Envelope ID 71AB64A8-7582-4FC6    -7EE672A0BD5E

Food and Beverage means any restaurant, catering, bar/lounge, entertainment, room service, retail food or beverage operation, continental breakfast, food or beverage concessions and similar services offered at the Facility

Franchise means the non-exclusive franchise to operate the type of Chain Facility described in Schedule B only at the Location, using the System and the Mark we designate in Section 1

Franchise Year means

(i) *If the Opening Date occurs on the first day of a month* the period beginning on the Opening Date and ending on the day immediately preceding the first anniversary of the Opening Date, and each subsequent one year period, or

(ii) *If the Opening Date does not occur on the first day of a month* the period beginning on the Opening Date and ending on the first anniversary of the last day of the month in which the Opening Date occurs, and each subsequent one year period

Gross Room Revenues means gross revenues attributable to or payable for rentals of guest (sleeping) rooms at the Facility, including all credit transactions, whether or not collected, guaranteed no-show revenue, net of chargebacks from credit card issuers, any proceeds from any business interruption or similar insurance applicable to the loss of revenues due to the non-availability of guest rooms and any miscellaneous fees charged to all guests regardless of the accounting treatment of such fees   Excluded from Gross Room Revenues are separate charges to guests for Food and Beverage (including room service), actual telephone charges for calls made from a guest room, key forfeitures and entertainment (including Internet fees and commissions), vending machine receipts, and federal, state and local sales, occupancy and use taxes   Gross Room Revenue is further described in System Standards

Guest Information means any names, email addresses, phone numbers, mailing addresses and other information about guests and customers of the Facility, including without limitation stay information, that either you or we or a person acting on behalf of you, us, or both you and us, receives from or on behalf of the other or any guest or customer of the Facility or any other third party

Improvement Obligation means your obligation to either (i) renovate and upgrade the Facility, or (ii) construct and complete the Facility, in accordance with the Approved Plans and System Standards, as described in Schedule D

Indemnitees means us, our direct and indirect parent, subsidiary and sister corporations, and the respective officers, directors, shareholders, employees, agents and contractors, and the successors, assigns, personal representatives, heirs and legatees of all such persons or entities

Initial Fee means the fee you are to pay for signing this Agreement as stated in Section 6, if the Agreement is for a new construction or conversion franchise

Appendix A - 31

RAM
Q1/19

DocuSign Envelope ID 71AB64A8 7582-4FC6    -7EE672A0BD5E

Liquidated Damages means the amounts payable under Section 12, set by the parties because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty

Location means the parcel of land situated at 28100 Franklin Rd Southfield, MI 48034, as more fully described in Schedule A

Losses and Expenses means (x) all payments or obligations to make payments either (i) to or for third party claimants by any and all Indemnitees, including guest refunds, or (ii) incurred by any and all Indemnitees to investigate, respond to or defend a matter, including without limitation investigation and trial charges, costs and expenses, attorneys' fees, experts' fees, court costs, settlement amounts, judgments and costs of collection, and (y) the "Returned Check Fee" we then specify in the System Standards Manual ($20 00 on the Effective Date) if the drawee dishonors any check that you submit to us

Loyalty Program Charge means the fee you pay us under Section 3 4 4 and Schedule C for a frequent guest rewards program or other special marketing programs that we may create or undertake and require participation by Chain Facilities

Maintenance Standards means the standards specified from time to time in the System Standards Manual for repair, refurbishment and replacement of FF&E, finishes, decor, and other capital items and design materials in Chain Facilities

Marketing Contribution means the fee you pay to us under Section 7 1 2 and Schedule C, as amended, for advertising, marketing, training and other services

Marks means, collectively (i) the service marks associated with the System published in the System Standards Manual from time to time including, but not limited to, the name, design and logo for "Ramada" and other marks (U S Reg Nos 718,705, 849,591, 854,323, 1,276,587, 2,385,656, 1,249,405, 1,719,119, 1,719,119, 3,110,399, 3,130,934, 3,213,931, 5,624,203, 5,588,176, and5,645,281) and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere

Minor Renovation means the repairs, refurbishing, repainting, and other redecorating of the interior, exterior, guest rooms, public areas and grounds of the Facility and replacements of FF&E we may require you to perform under Section 3 14

Minor Renovation Ceiling Amount means $3,000 00 per guest room

Appendix A - 32

RAM
Q1/19

(Page 36 of 49)

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 42 of 91 PageID: 42
DocuSign Envelope ID 71AB64A8-7582 4FC6 A        EE672A0BD5E

Minor Renovation Notice means the written notice from us to you specifying the Minor Renovation to be performed and the dates for commencement and completion given under Section 3 14

Opening Date has the meaning specified in Schedule D

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor

Prototype Plans has the meaning specified in Schedule D for New Construction Facilities

Punch List means the list of upgrades and improvements attached as part of Schedule D, which you are required to complete under Section 3 1 and Schedule D

Reconnection Fee means the fee you pay us when we suspend Central Reservation Service because you default under this Agreement or for any other reason, in the amount specified in Schedule C

Recurring Fees means fees paid to us on a periodic basis, including without limitation, Royalties, System Assessment Fees, and other reservation fees and charges as stated in Section 7

Reinspection Fee means the fee you must pay to us under Section 3 7 if you do not complete your Punch List on time, fail any inspection or do not cooperate with our inspector or inspection System Standards

Relicense Fee means the fee your transferee pays to us when a Transfer occurs or the fee you pay to us if you are renewing an existing franchise

Reservation System or "Central Reservation System" means the back end technology platform and applications used by us to accept, store and/or communicate reservations for Chain Facilities The Reservation System is separate from, but enables, the booking of reservations for Chain Facilities through various distribution channels such as the Chain Websites, the GDS and other distribution channels

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility

Appendix A - 33

RAM
Q1/19

DocuSign Envelope ID  71AB64A8-7582-4FC6-A      EE672A0BD5E

Royalty means the monthly fee you pay to us for use of the System under Section 7 1 1 ' Royalties ' means the aggregate of all amounts owed as a Royalty

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify which at present includes only the following  (a) the Marks, (b) other intellectual property, including Confidential Information, System Standards Manual and know-how, (c) marketing, advertising, publicity and other promotional materials and programs, (d) System Standards, (e) training programs and materials, (f) quality assurance inspection and scoring programs, and (g) the Reservation System

System Assessment Fees means the assessments charged as set forth in Section 7 1 2 and Schedule C

System Standards means the standards for participating in the System published in the System Standards Manual, or elsewhere, including but not limited to design standards, FF&E Standards, Marks standards, marketing standards, operations standards, technology standards and maintenance standards and any other standards, policies, rules and procedures we promulgate about System operation and usage

System Standards Manual means the Standards of Operation and Design Manual and any other manual or written directive or other communication we issue or distribute specifying the System Standards

Taxes means the amounts payable under Section 7 2 of this Agreement

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5

Termination means a termination of this Agreement

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility  A Transfer

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6    -7EE672A0BD5E

does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction

"You" and "Your" means and refers to the party named as franchisee identified in the first paragraph of this Agreement and its Permitted Transferees

"We`, "Our" and `Us" means and refers to Ramada Worldwide Inc , a Delaware corporation, its successors and assigns

Appendix A - 35

RAM
Q1/19

DocuSign Envelope ID  71AB64A8-7582-4FC6 /     EE672A0BD5E

## SCHEDULE A

### (Legal Description of Facility)

'

Schedule A - 36

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 46 of 91 PageID: 46
DocuSign Envelope ID 71AB64A8-7582-4FC6-A     EE672A0BD5E

## SCHEDULE B

PART I           YOUR OWNERS

| Name | Ownership Percentage | Type of Equity Interest | Office Held (Title) |
|------|---------------------|------------------------|---------------------|
| **Shannon Steel** | **50%** | | |
| **Aaron Morris** | **50%** | | |

PART II            THE FACILITY

Primary designation of Facility  **Ramada** Plaza

Number of approved guest rooms  239

Initial

Schedule B - 37

RAM
Q1/19

P-40

DocuSign Envelope ID 71AB64A8-7582-4FC6-/    EE672A0BD5E

## RAMADA WORLDWIDE INC. '
## SCHEDULE C
**April 2019**

### I.  System Assessment Fee

The System Assessment Fee consists of the "Marketing Contribution" and the "Basic Reservation Fee " The Marketing Contribution is 2% of Gross Room Revenues, the Basic Reservation Fee is 2% of Gross Room Revenues  The System Assessment Fee is subject to change for all Chain Facilities, and new fees and charges may be assessed for new services, but only upon the recommendation of the Executive Committee of RINA and our approval

### II.  RMA Fee

To provide additional regional marketing services through your Ramada Management Association or RMA, we have established a mandatory "RMA Fee"  The RMA Fee is $15 per guest room per year, up to a maximum of $3,000 per year  The RMA Fee will be payable before the start of each year on a date we establish and communicate to you at least 60 days in advance, and will be fully earned once the year begins  The RMA Fee is subject to change for all Chain Facilities, but only upon the recommendation of the Executive Committee of RINA and our approval  Each RMA may elect to charge supplemental RMA Fees with our approval

### III.  Additional Fees

### A  Loyalty Program Fees

We charge a Loyalty Program Charge for your participation in the Wyndham Rewards or successor guest loyalty program  The Loyalty Program Charge is 5% of any amounts on which members of the Loyalty Program earn points or other program currency at the Facility as defined in the Front Desk Guide or any other program rules, which are System Standards  We will proactively match and award members with points or other program currency they earn at the Facility even if they do not present their Wyndham Rewards membership number upon check–in You will be billed monthly in arrears for points or other program currency awarded to members during the preceding month  If you do not achieve a certain number of Wyndham Rewards valid enrollments, you must pay us a Retraining Fee of up to $400 per month as described in the Front Desk Guide  If you do not process a member's points in a timely manner and we must resolve the issue with the member, we will charge you a Loyalty Member Services Administration Fee as described in the Front Desk Guide

### B  Customer Care Fee

We will contact you if we receive any guest complaint about you or the Facility, and you will be responsible for resolving the complaint to the satisfaction of the guest  We may also contact you, at our discretion, if we become aware of any other complaints about the Facility including complaints which are posted on third-party travel websites, distribution channels, blogs

Schedule C - 38

DocuSign Envelope ID 71AB64A8-7582-4FC6 A    EE672A0BD5E

and social networks, or other forums to which you do not respond  If you do not respond to and resolve any complaint to the guest's satisfaction within three business days after we refer it to you, we will charge you a "Customer Care Fee" of $195 00, plus the costs we incur to settle the matter with the guest  The Customer Care Fee is intended only to reimburse us for the costs of complaint handling and is not intended as penalties or liquidated damages  All guest complaints remain subject to indemnification under this Agreement

C       **Best Rate Guarantee Program**

You must (i) make available through the Central Reservation System and the Chain Websites room rates equivalent to those you offer to the general public directly or indirectly via third parties that you authorize to offer and sell reservations for the Facility's guest rooms and (ii) participate in the Chain's Best Rate Guarantee Program according to its published requirements  We will also charge you a Processing Fee, currently $60 to reimburse us for our administrative charges of handling the complaint

D       **Reconnection Fee**

If we suspend Central Reservation System Service because of your default under this Agreement or for any other reason, then you must pay us the Reconnection Fee set forth in the System Standards before we restore service  Currently, the Reconnection Fee is $4,000

E       **Other Fees, Commissions and Charges**

You will pay us a fee, as applicable, for reservations for your Facility from certain distribution partners processed through various reservation channels  "GDS Fees" are assessed for qualified reservations processed through any global distribution system ("GDS") or through any Internet website or other booking source powered by a GDS  "Internet Booking Fees" are assessed for qualified reservations processed through an Internet website connected through an alternate distribution system  "Third Party Channel Fees" are assessed for qualified reservations coming from our partners directly or indirectly to our distribution platform  We will establish the amount of the GDS, Internet Booking Fees, and Third Party Channel Fees from time to time based on the fees these channels charge us and/or our own costs (including overhead) for providing these services   Some of our distribution partners may charge a commission on reservations you receive through these reservation channels and, if we pay such commission on your behalf, you will reimburse us and pay our service charge of 1 5% of commissionable revenue  Upon written notice to you, we may alter, change, modify, remove or add new fees as existing reservation channels are modified or partners are added to existing channels or new reservation channels are established

You will also pay commissions for (a) reservations booked by "Agents" and/or (b) qualified reservations consumed by members of affinity groups and organizations that participate in our Member Benefits program  You must pay our service charge of 1 5% of commissionable revenue, if applicable  "Agents" include, but are not limited to, travel agents, on-line travel and referral websites, travel consortia, travel management companies, and global sales agents, as well

Schedule C - 39

DocuSign Envelope ID 71AB64A8-7582-4FC6    ,-7EE672A0BD5E

as digital media linking to Chain websites and unique call center numbers purchased by the pay-for-performance program ("PFP") These commission payments may go to the Agent, affinity group or organization in whole or a portion of the payment may be allocated to various marketing activities and/or to our Global Sales Organization to offset its administrative and overhead costs for supporting the Member Benefit Program and other programs that generate room nights at Chain Facilities, or, in the case of the PFP program, to fund purchases of additional digital media directing consumers to Chain websites and unique call center numbers

Under our Wyndham Referral Rewards Program, Chain Facilities may receive leads from other Chain Facilities, facilities of our affiliates and employees of our parent company or its predecessor For this business, we charge you a referral commission of 10% of the commissionable revenue on qualifying reservations When the referring party is a Chain Facility or facility of an affiliate 7% of the referral commission is paid to the referring facility, and when the referring party is an employee of our parent company or its predecessor, 6% of the referral commission is paid to the employee The remaining 3% and 4%, as applicable, is distributed to our Global Sales Organization to offset its administrative and overhead costs for supporting the Wyndham Referral Rewards Program

We may change, modify or delete Additional Fees for existing services and programs and add new Additional Fees for new services, programs and distribution channels at any time upon not less than thirty (30) days' written notice

Schedule C - 40

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6   -7EE672A0BD5E

## SCHEDULE D
## ADDENDUM FOR CONVERSION FACILITIES

This Addendum applies if you are converting an existing guest lodging facility to a Chain Facility

## 1. YOUR IMPROVEMENT OBLIGATION.

**1.1 Generally.** You must select and acquire the Location and acquire, equip and supply the Facility in accordance with this Agreement and System Standards   You must provide us with proof that you own or lease the Facility by the earlier to occur of (a) 30 days after the Effective Date or (b) the Opening Date   You must maintain control of the Facility consistent with such documentation during the Term   You must begin renovation of the Facility no later than 30 days after the Effective Date   Time is of the essence for the completion of the Improvement Obligation   We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Improvement Obligation   The grant of an extension will not waive any other default existing at the time the extension is granted   All renovations must comply with System Standards, any Approved Plans, this Agreement and the Punch List   Your general contractor or you must carry the insurance required under this Agreement during renovation

**1.2 Pre-Opening Improvements** You must complete all renovations specified as "prior to opening" on the Punch List before we consider the Facility to be ready to open under the System   The deadline for completing the pre-opening phase of conversion and the renovations shall be as specified on any Punch List attached to this Agreement, but is otherwise 90 days from the Effective Date   You must continue renovation and improvement of the Facility after the Opening Date if the Punch List so requires   We may, in our sole discretion, terminate this Agreement by giving written notice to you (subject to applicable law) if (1) you do not commence or complete the pre-opening improvements of the Facility by the dates specified on the Punch List or otherwise and you fail to do so within five days after we send you written notice of default, or (2) you prematurely identify the Facility as a Chain Facility or begin operation under the System in violation of this Schedule and you fail to cease operating and/or identifying the Facility under the Marks and System within five days after we send you written notice of default   If we choose to grant an extension of any deadlines, including the Facility's Opening Date, you must pay an extension fee of $10,000   The extension fee is due within ten days of the Facility's Opening Date   You must also pay us the Reinspection Fee described in Section 3 7 if you fail to complete the Improvement Obligation by the deadline established in the Punch List or otherwise and our representatives must return to the Facility to inspect it   In limited circumstances, you may identify the Facility as a Chain Facility prior to the Opening Date, or commence operation of the Facility under a Mark and using the System, only after first obtaining our approval   If you identify the Facility as a Chain Facility or operate the Facility under a Mark before the Opening Date without our express written consent, then in addition to our remedies under Section 11, you will begin paying the Royalty to us, as specified in Section 7 1, from the date you identify or operate the Facility using the Mark   We may delay the Opening Date until you pay the Royalty accruing under this Section

Schedule D Conversion - 41

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-,   7EE672A0BD5E

## 1.3 Improvement Plans.

(a) <u>Generally</u>   You will create plans and specifications for the work described in Section 1 1 of this Schedule D (based upon System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location   We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like, who must exercise their own independent professional care, skill and diligence in the design and renovation of your Facility   Our review does not cover technical, architectural or engineering factors relating to the existing structure at the Location, the validity of conversion given the existing structure, or compliance with federal, state or local laws, regulations or code requirements, for which your architect is responsible   You must allow for 10 days of our review each time you submit Plans to us   We will not be liable to your lenders, contractors, employees, guests, others, or you on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after the renovation   Any material variation from the Approved Plans requires our prior written approval   Approved Plans must incorporate design elements as set forth in System Standards   You may purchase furniture, fixtures, equipment and other supplies that you may need during renovation of the Facility through our affiliate, Worldwide Sourcing Solutions, Inc 's "Approved Supplier" program   If you choose to purchase certain design items from a supplier other than an Approved Supplier, we may charge you a Custom Interior Design Review Fee, currently $6,000   This fee will be assessed for our review of custom interior design drawings which you must submit to us to ensure compliance with our interior design standards     We may offer other optional architectural and design services for a separate fee   You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request

(b) <u>Deviation from Approved Plans</u>   We may inspect the work while in progress without prior notice   We may direct you to change the work in progress if it deviates from the Approved Plans or System Standards and may terminate this Agreement if you fail to comply with any such direction   If you encounter unexpected issues with demolition, renovation, reconstruction or refurbishment of the existing structure which make continuation of the project using the Approved Plans commercially infeasible, you must notify us immediately and provide a complete written report on the matter, including any proposal to modify the Approved Plans you believe is appropriate together with your estimate of the projected costs of meeting the Approved Plans   We will evaluate the report, your proposal and the situation and respond within 30 days to any request to vary the Approved Plans, or provide suggestions for resolving the issues in such a manner as will be acceptable to us   Neither party shall terminate this Agreement unless and until such notice is given and the 30 day period shall have elapsed without agreement on modifying the Approved Plans   If either party then decides to terminate this Agreement, you will pay, if then not paid, and we will retain, the full Initial Fee as Liquidated Damages

Schedule D Conversion - 42

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 52 of 91 PageID: 52
DocuSign Envelope ID  71AB64A8-7582-4FC6-   7EE672A0BD5E

## 2. ONBOARDING AND MANDATORY SERVICES AND FEES

**2.1 Onboarding Services** We will provide full operational resources, including training and support, for property opening   We will provide training through various on-line courses on subjects such as quality assurance, housekeeping, preventative maintenance, customer service, and the RFP process   A member of our field team will also assist with property operations topics including Systems Standards and use of the Chain's intranet site    These onboarding services are provided as part of the Initial Fee required in Section 6

**2.2 Mandatory Support Services and Fees.** We will arrange for delivery of an initial supply of key property supplies that assist the Facility with meeting System Standards and/or participating in key marketing initiatives as reasonably determined by us   You will pay $500 for your initial supplies   We will arrange to have our preferred photography provider take digital photographs of the in accordance with System Standards for use on our Chain Websites, third party travel websites and various marketing media and such photographs will be owned by us   You will pay $2,750 for the required photo package   If we allow you to open the Facility before your installation of permanent signage, we will arrange for one of our Approved Suppliers to provide temporary exterior signage for the Facility in the form of a Mark-bearing bag to cover your existing primary free standing sign   You will pay $1,000 for this temporary signage   If you install permanent signage from an Approved Supplier for the Facility on or before the Opening Date, or if within thirty (30) days of the Opening Date you sign a quote and pay the required deposit for permanent signage from the vendor assigned to provide temporary signage for the Facility, then we shall issue you a credit of $1,000   We will provide training for your general manager as set forth in Section 4 1 of the Agreement if he/she attends the training by the deadline set forth in Section 4 1    The tuition for this mandatory training program is currently $2,000

## 3. DEFINITIONS.

Opening Date means the date on which we authorize you to open the Facility for business identified by the Marks and using the System

Schedule D Conversion - 43

RAM
Q1/19

DocuSign Envelope ID 71AB64A8-7582-4FC6-, 7EE672A0BD5E

## SCHEDULE D
## ADDENDUM FOR CONVERSION FACILITIES


**[Punch List Attached]**

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 54 of 91 PageID: 54
DocuSign Envelope ID  71AB64A8-7582-4FC6      7EE672A0BD5E

## GUARANTY

To induce Ramada Worldwide, Inc , its successors and assigns ("you") to sign the Franchise Agreement (the "Agreement") with the party named as the "Franchisee," to which this Guaranty is attached. the undersigned, jointly and severally ('we. "our" or "us'). irrevocably and unconditionally (i) warrant to you that Franchisee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Franchisee's obligations under the Agreement, including any amendments, will be punctually paid and performed

Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement  Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee  We waive notice of amendment of the Agreement We acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Franchisee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect

This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement

**GUARANTORS:**

DocuSigned by

_____09E0A1C8D02543A_____
Name Shannon Steel
Address 31084 Applewood Lane Farmington Hills, MI 48331

DocuSigned by
*Aaron Morris*
_____1ACAFDBAA266498_____
Name Aaron Morris
Address 2510 Telegraph Rd  Bloomfield Hills, MI 48302

RAM
Q1/19

(Page 49 of 49)

DocuSign Envelope ID 71AB64A8-7582-4FC6-   7EE672A0BD5E

RAM
Q1/19

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 56 of 91 PageID: 56
DocuSign Envelope ID  71AB64A8-7582-4FC6        7EE672A0BD5E

## GUARANTY

To induce Ramada Worldwide, Inc , its successors and assigns ("you") to sign the Franchise Agreement (the "Agreement") with the party named as the "Franchisee," to which this Guaranty is attached, the undersigned, jointly and severally ('we, "our" or "us'), irrevocably and unconditionally (i) warrant to you that Franchisee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Franchisee's obligations under the Agreement, including any amendments, will be punctually paid and performed

Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement  Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee  We waive notice of amendment of the Agreement  We acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Franchisee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect

This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement

### GUARANTORS:

DocuSigned by

_Shun_
09E0A1C8D002543A

Name Shannon Steel
Address 31084 Applewood Lane Farmington Hills, MI 48331

DocuSigned by

_Aaron Morris_
1ACAFD8AA266498

Name Aaron Morris
Address 2510 Telegraph Rd  Bloomfield Hills, MI 48302

RAM
Q1/19

**WYNDHAM**
HOTELS & RESORTS

Contracts Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 fax (800) 880-9445

July 8, 2022

<u>**Via Electronic Mail & UPS**</u>
<u>s.steel@wyndhamsouthfield.com</u>
<u>water.investments313@yahoo.com</u>

Ms. Shannon Steel
Management Solution Holdings, LLC
28100 Franklin Road
Southfield, MI 48034

**Re:**   **NOTICE OF DEFAULT** related to the Franchise Agreement, dated June 26, 2019 (the "Agreement"), between Management Solution Holdings, LLC ("you" or "your") and Ramada Worldwide Inc. ("we", "us" or "our") relating to Ramada® by Wyndham Unit #54721-15418-01 located in Southfield, MI (the "Facility")

Dear Ms. Steel:

You are in default under the Agreement for your failure to satisfy the required operational standards, failure to meet your financial obligations, and failure to meet your insurance obligations. Most, if not all, of these defaults have been brought to your attention previously, and, in some cases, we have extended to you the courtesy of allowing you additional time to cure. You must not assume that any further courtesies will be forthcoming.

We will address each matter in turn.

Operational Defaults

We issued an Acknowledgment of Temporary Closing for the Facility on October 13, 2020, and subsequently updated it by letters dated February 22, 2021, September 15, 2021, and March 11, 2022, which allowed the Facility to close temporarily for repairs and/or renovations needed in order to obtain your Certificate of Occupancy ("CO") from the City of Southfield. Pursuant to the last Acknowledgment of Temporary Closing, you were required to re-open the Facility by July 1, 2022. However, it has come to our attention that the Facility has remained closed, without our consent, as of the date of this letter.

We remind you that Section 3.2 of the Agreement reads as follows: "You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with all federal, state, and local laws, regulations and ordinances as well as the System Standards." The closure of the Facility without our consent is a default of your obligations under Section 3.2 of the Agreement.

Further, we have received information that you have failed to pay personal property taxes and received a final notice from the Oakland County Treasurer. Your failure to pay local fees and taxes for any period of time constitutes a violation of the Agreement. We have requested in prior letters that you please provide us with an update from the Oakland County Treasurer regarding the personal property taxes that were past due, and we have received no such update as of the date of this letter.



Ms. Shannon Steel
July 8, 2022
Page 2

Section 3.5 of the Agreement states that "You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings."

Your failure to adhere to these operational requirements constitutes material defaults under the Agreement and may result in the termination of the Agreement.

The Financial Default

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of the date of this letter, your account is past due in the amount of $92,516.89. We have enclosed an itemized statement detailing the fees past due. Although the Agreement permits us to terminate if you do not cure within ten (10) days, we would like to continue our relationship with you and are providing you thirty (30) days to cure. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Ramada System.

The Insurance Default

Lastly, we have been advised that we have not received confirmation that you have obtained, and delivered to us, proof of the minimum insurance coverage required by us. This is a material default under the Agreement.

Consequences of Uncured Defaults

We are well within our right to terminate the Agreement, but, as a courtesy (and without waiving any of our rights), we are affording you another thirty (30) days in which to cure your defaults. The Facility's access to our central reservations system was suspended on April 12, 2021, for outstanding monetary issues; we have added operational standards to the list of reasons for this suspension. Please be advised that if we do not receive proof of proper insurance coverage by August 9, 2022, we reserve the right to add a default in your insurance obligations to the list of reasons for this suspension. Please be advised that the Facility's access to our central reservation system will remain suspended until the monetary, operational standards, and insurance issues have been cured to our satisfaction.

As you no doubt recall, the Agreement provides you with certain rights and benefits that in return, require you to cure any defaults under the Agreement within the time permitted. We remind you that if you fail to cure your defaults timely, your Combined Fees will expire automatically at the end of the cure period. You will then be obligated to perform your responsibilities under the Agreement, without the reduction in fees, for the remainder of the term.

If we terminate the Agreement, you and your Guarantors must pay us Liquidated Damages in the amount of $476,000, in accordance with Section 12.1 of the Agreement. You must also pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. You must also repay the outstanding Development Incentive or similar loan as of the Termination Date. This carries a principal balance of $569,616.67 as of this date of this Notice.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. If you do not cure this default within thirty (30) days of this Notice, the Agreement may be subject to termination. By copy of this notice, we are also informing your Guarantors of your default regarding the Facility.

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 59 of 91 PageID: 59

We urge you to take this opportunity to resolve your defaults. If you have any questions regarding your defaults or how they can be timely cured, please do not hesitate to contact Shilpan Patel, Senior Vice President, Franchise Services, at shilpan.patel@wyndham.com or (973) 753-6134.

Sincerely yours,

Suzanne Fenimore
Vice President, Contracts Compliance

Enclosures

cc:     Shannon Steel (as Guarantor) – 31084 Applewood Lane, Farmington Hills, MI 48331
       Aaron Morris (Guarantor) – 2510 Telegraph Road, Bloomfield Hills, MI 48302
       Cindy Rhodes Victor, Esq. – Via Electronic Mail; cvictor@kusryan.com
       Stephanie Kendrick
       Shilpan Patel
       Kelly Krug
       Robert Spence
       Mike Torre
       Joe Maida



GO GREEN: **PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

Management Solution Holdings, LLC
28100 Franklin Rd.,
Southfield,
MI 48034, United States

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

Payment Terms: 30 Days from date of invoice          Account Number   54721-15418-01-RAM          Statement as of:  08-JUL-2022

| Period | Invoice Date | Invoice Number | Invoice Description | Amount Billed (USD) | Tax | Finance Charges | Amount Applied/ Credited | Adjustment | Total (USD) |
|---|---|---|---|---|---|---|---|---|---|
| AUG-19 | 08/07/2019 | 32003023 | EQUIP SHIPPING Shipping | 71.00 | 0.00 | 28.57 | 0.00 | 0.00 | 99.57 |
| | 08/07/2019 | 32003022 | PM SYSTEM HARDWARE PC/Comtrol/Cables | 1,628.27 | 97.69 | 693.80 | 0.00 | 0.00 | 2,419.76 |
| | 08/07/2019 | 32003021 | PM SYSTEM TRAINING/SERVICES Opera Install Training/Services | 22,007.37 | 0.00 | 7,328.04 | 0.00 | 0.00 | 29,335.41 |
| | | | **Total AUG-19** | **23,706.64** | **97.69** | **8,050.41** | **0.00** | **0.00** | **31,854.74** |
| SEP-19 | 09/24/2019 | 32030143 | 2019 RMA DUES | 1,195.00 | 0.00 | 451.72 | 0.00 | 0.00 | 1,646.72 |
| | 09/24/2019 | 32030147 | INTEGRATION AMENITY | 500.00 | 30.00 | 200.42 | 0.00 | 0.00 | 730.42 |
| | 09/24/2019 | 32030144 | INTEGRATION HMP | 2,000.00 | 0.00 | 756.00 | 0.00 | 0.00 | 2,756.00 |
| | 09/24/2019 | 32030145 | INTEGRATION PHOTOS | 2,750.00 | 0.00 | 1,039.58 | 0.00 | 0.00 | 3,789.58 |
| | 09/24/2019 | 32030146 | INTEGRATION SIGNAGE | 1,000.00 | 60.00 | 400.68 | 0.00 | 0.00 | 1,460.68 |
| | 09/30/2019 | 44623024 | Actual-RINA FEE | 3.44 | 0.00 | 38.74 | 0.00 | 0.00 | 42.18 |
| | 09/30/2019 | 44623023 | Actual-ROYALTY FEE | 6.89 | 0.00 | 77.61 | 0.00 | 0.00 | 84.50 |
| | | | **Total SEP-19** | **7,455.33** | **90.00** | **2,964.75** | **0.00** | **0.00** | **10,510.08** |
| OCT-19 | 10/22/2019 | 25207406 | WYNREWARDS 5% | 58.43 | 0.00 | 20.92 | 0.00 | 0.00 | 79.35 |
| | 10/31/2019 | 44656998 | Actual-RINA FEE | 153.01 | 0.00 | 96.78 | 0.00 | 0.00 | 249.79 |
| | 10/31/2019 | 44656997 | Actual-ROYALTY FEE | 306.01 | 0.00 | 193.50 | 0.00 | 0.00 | 499.51 |
| | 10/31/2019 | 44632947 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 286.66 | 0.00 | 0.00 | 1,083.78 |
| | | | **Total OCT-19** | **1,269.45** | **45.12** | **597.86** | **0.00** | **0.00** | **1,912.43** |
| NOV-19 | 11/05/2019 | 106653 | WYNREWARD RETRAINFEE RETRAIN-OCT2019-4 | 400.00 | 0.00 | 139.80 | 0.00 | 0.00 | 539.80 |
| | 11/20/2019 | 11126909 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 66.70 | 0.00 | 0.00 | 261.70 |
| | 11/20/2019 | 11127181 | WR GUEST SATISFACTION | 38.46 | 0.00 | 13.23 | 0.00 | 0.00 | 51.69 |
| | 11/22/2019 | 25209201 | WR ENROLLMENT FEE CREDIT | -69.39 | 0.00 | 0.00 | 0.00 | 0.00 | -69.39 |
| | 11/22/2019 | 25208947 | WR GOFREE REIMBURSEMENT | -25.00 | 0.00 | 0.00 | 0.00 | 0.00 | -25.00 |
| | 11/22/2019 | 25208479 | WYNDHAM REWARDS BONUS POINTS | 2.50 | 0.00 | 0.90 | 0.00 | 0.00 | 3.40 |
| | 11/22/2019 | 25208626 | WYNREWARDS 5% | 344.31 | 0.00 | 117.42 | 0.00 | 0.00 | 461.73 |
| | 11/26/2019 | 32102767 | 2020 RMA DUES | 3,000.00 | 0.00 | 970.50 | 0.00 | 0.00 | 3,970.50 |
| | 11/26/2019 | 32094115 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 415.80 | 0.00 | 0.00 | 1,615.80 |
| | 11/26/2019 | 32089002 | DIGITAL PFP | 69.35 | 0.00 | 23.44 | 0.00 | 0.00 | 92.79 |
| | 11/26/2019 | 32097292 | GDS & INTERNET BKGS Oct-19 | 32.00 | 0.00 | 10.90 | 0.00 | 0.00 | 42.90 |

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 61 of 91 PageID: 61

| | Date | Ref | Description | | | | | | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | 11/30/2019 | 44689503 | Actual-RINA FEE | 193.44 | 0.00 | 66.69 | 0.00 | 0.00 | 260.13 |
| | 11/30/2019 | 44689330 | Actual-ROYALTY FEE | 386.88 | 0.00 | 133.38 | 0.00 | 0.00 | 520.26 |
| | 11/30/2019 | 44668061 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 274.69 | 0.00 | 0.00 | 1,071.81 |
| | | | **Total NOV-19** | **6,519.55** | **45.12** | **2,233.45** | **0.00** | **0.00** | **8,798.12** |
| DEC-19 | 12/01/2019 | 29015951 | SIGNATURE RES SVC | 18.00 | 0.00 | 6.20 | 0.00 | 0.00 | 24.20 |
| | 12/05/2019 | TP0945920 | AAA PROGRAM | 15.00 | 0.00 | 5.14 | 0.00 | 0.00 | 20.14 |
| | 12/05/2019 | TM0945920 | MEMBER BENEFIT COMM | 29.43 | 0.00 | 9.87 | 0.00 | 0.00 | 39.30 |
| | 12/05/2019 | TC0945920 | T/A COMM SERVICE CHG | 10.84 | 0.00 | 3.63 | 0.00 | 0.00 | 14.47 |
| | 12/06/2019 | 106760 | WYNREWARD RETRAINFEE RETRAIN-NOV2019-8 | 400.00 | 0.00 | 133.60 | 0.00 | 0.00 | 533.60 |
| | 12/22/2019 | 25210465 | WR ENROLLMENT FEE CREDIT | -20.85 | 0.00 | 0.00 | 0.00 | 0.00 | -20.85 |
| | 12/22/2019 | 25209792 | WYNREWARDS 5% | 174.13 | 0.00 | 56.77 | 0.00 | 0.00 | 230.90 |
| | 12/27/2019 | 32113330 | GDS & INTERNET BKGS Nov-19 | 60.00 | 0.00 | 19.41 | 0.00 | 0.00 | 79.41 |
| | 12/31/2019 | 44724186 | Actual-RINA FEE | 576.61 | 0.00 | 187.69 | 0.00 | 0.00 | 764.30 |
| | 12/31/2019 | 44724185 | Actual-ROYALTY FEE | 1,153.22 | 0.00 | 375.29 | 0.00 | 0.00 | 1,528.51 |
| | 12/31/2019 | 32124779 | DIGITAL PFP | 29.57 | 0.00 | 9.55 | 0.00 | 0.00 | 39.12 |
| | 12/31/2019 | 44698172 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 262.33 | 0.00 | 0.00 | 1,059.45 |
| | | | **Total DEC-19** | **3,197.95** | **45.12** | **1,069.48** | **0.00** | **0.00** | **4,312.55** |
| JAN-20 | 01/01/2020 | 29016047 | SIGNATURE RES SVC | 234.05 | 0.00 | 76.91 | 0.00 | 0.00 | 310.96 |
| | 01/15/2020 | 11132948 | GUEST SATISFACTION | 547.50 | 0.00 | 177.15 | 0.00 | 0.00 | 724.65 |
| | 01/15/2020 | 11133717 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| | 01/15/2020 | 11133051 | WR GUEST SATISFACTION | 57.69 | 0.00 | 18.65 | 0.00 | 0.00 | 76.34 |
| | 01/21/2020 | TP0953770 | AAA PROGRAM | 3.75 | 0.00 | 1.26 | 0.00 | 0.00 | 5.01 |
| | 01/21/2020 | TM0953770 | MEMBER BENEFIT COMM | 28.78 | 0.00 | 9.34 | 0.00 | 0.00 | 38.12 |
| | 01/21/2020 | TC0953770 | T/A COMM SERVICE CHG | 11.94 | 0.00 | 3.93 | 0.00 | 0.00 | 15.87 |
| | 01/21/2020 | TA0953770 | T/A COMMISSIONS | 40.14 | 0.00 | 12.94 | 0.00 | 0.00 | 53.08 |
| | 01/21/2020 | TR0953770 | TMC / CONSORTIA | 43.32 | 0.00 | 14.00 | 0.00 | 0.00 | 57.32 |
| | 01/22/2020 | 11134496 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| | 01/22/2020 | 25210998 | WR ENROLLMENT FEE CREDIT | -400.35 | 0.00 | 0.00 | 0.00 | 0.00 | -400.35 |
| | 01/22/2020 | 25211599 | WYNREWARDS 5% | 900.36 | 0.00 | 291.36 | 0.00 | 0.00 | 1,191.72 |
| | 01/29/2020 | 32141993 | GDS & INTERNET BKGS Dec-19 | 70.00 | 0.00 | 22.71 | 0.00 | 0.00 | 92.71 |
| | 01/31/2020 | 44757571 | Actual-RINA FEE | 322.65 | 0.00 | 104.37 | 0.00 | 0.00 | 427.02 |
| | 01/31/2020 | 44757570 | Actual-ROYALTY FEE | 645.29 | 0.00 | 208.72 | 0.00 | 0.00 | 854.01 |
| | 01/31/2020 | 32154176 | DIGITAL PFP | 45.37 | 0.00 | 14.64 | 0.00 | 0.00 | 60.01 |
| | 01/31/2020 | 44735621 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 257.95 | 0.00 | 0.00 | 1,055.07 |
| | | | **Total JAN-20** | **3,692.49** | **45.12** | **1,340.11** | **0.00** | **0.00** | **5,077.72** |
| FEB-20 | 02/05/2020 | 11135614 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| | 02/05/2020 | 11135719 | WR GUEST SATISFACTION | 57.69 | 0.00 | 18.65 | 0.00 | 0.00 | 76.34 |
| | 02/05/2020 | 11135759 | WR GUEST SATISFACTION | 57.69 | 0.00 | 18.65 | 0.00 | 0.00 | 76.34 |
| | 02/06/2020 | TA0961288 | T/A COMMISSIONS | 9.81 | 0.00 | 3.17 | 0.00 | 0.00 | 12.98 |
| | 02/06/2020 | TR0961288 | TMC / CONSORTIA | 3.43 | 0.00 | 1.07 | 0.00 | 0.00 | 4.50 |
| | 02/07/2020 | 29016203 | SIGNATURE RES SVC | 92.42 | 0.00 | 29.89 | 0.00 | 0.00 | 122.31 |

| Date | Ref | Description | | | | | | |
|------|-----|-------------|---|---|---|---|---|---|
| 02/12/2020 | 11136706 | GUEST SRVCS TRANSACTION | 164.26 | 0.00 | 53.06 | 0.00 | 0.00 | 217.41 |
| 02/12/2020 | 11136411 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| 02/12/2020 | 11136506 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| 02/12/2020 | 11136266 | WR GUEST SATISFACTION | 28.85 | 0.00 | 9.34 | 0.00 | 0.00 | 38.19 |
| 02/19/2020 | 11137517 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| 02/19/2020 | 11137239 | WR GUEST SATISFACTION | 28.85 | 0.00 | 9.34 | 0.00 | 0.00 | 38.19 |
| 02/22/2020 | 25211881 | WR ENROLLMENT FEE CREDIT | -67.35 | 0.00 | 0.00 | 0.00 | 0.00 | -67.35 |
| 02/22/2020 | 25212754 | WR GOFREE REIMBURSEMENT | -123.11 | 0.00 | 0.00 | 0.00 | 0.00 | -123.11 |
| 02/22/2020 | 25212356 | WYNREWARDS 5% | 473.62 | 0.00 | 153.17 | 0.00 | 0.00 | 626.79 |
| 02/24/2020 | 32176244 | GDS & INTERNET BKGS Jan-20 | 42.00 | 0.00 | 13.58 | 0.00 | 0.00 | 55.58 |
| 02/29/2020 | 44790653 | Accrual-RINA FEE | 472.22 | 0.00 | 152.74 | 0.00 | 0.00 | 624.96 |
| 02/29/2020 | 44790652 | Accrual-ROYALTY FEE | 944.43 | 0.00 | 305.56 | 0.00 | 0.00 | 1,249.99 |
| 02/29/2020 | 32189800 | DIGITAL PFP | 55.27 | 0.00 | 17.92 | 0.00 | 0.00 | 73.19 |
| 02/29/2020 | 44765750 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 257.95 | 0.00 | 0.00 | 1,055.07 |
| | | **Total FEB-20** | **3,772.07** | **45.12** | **1,296.55** | **0.00** | **0.00** | **5,113.74** |
| MAR-20 | 03/01/2020 | 29016449 | SIGNATURE RES SVC | 167.22 | 0.00 | 54.08 | 0.00 | 0.00 | 221.30 |
| | 03/22/2020 | 25213099 | WR ENROLLMENT FEE CREDIT | -95.42 | 0.00 | 0.00 | 0.00 | 0.00 | -95.42 |
| | 03/22/2020 | 25213157 | WYNREWARDS 5% | 524.61 | 0.00 | 169.69 | 0.00 | 0.00 | 694.30 |
| | 03/25/2020 | TP0968851 | AAA PROGRAM | 18.69 | 0.00 | 6.04 | 0.00 | 0.00 | 24.73 |
| | 03/25/2020 | TC0968851 | T/A COMM SERVICE CHG | 22.25 | 0.00 | 7.11 | 0.00 | 0.00 | 29.36 |
| | 03/25/2020 | TA0968851 | T/A COMMISSIONS | 95.01 | 0.00 | 30.74 | 0.00 | 0.00 | 125.75 |
| | 03/25/2020 | TR0968851 | TMC / CONSORTIA | 50.13 | 0.00 | 16.24 | 0.00 | 0.00 | 66.37 |
| | 03/30/2020 | 32206712 | GDS INTERNET CONNECTIVITY FEE February - 2020 | 170.00 | 0.00 | 55.06 | 0.00 | 0.00 | 225.06 |
| | 03/31/2020 | 44818459 | Accrual-RINA FEE | 162.60 | 0.00 | 52.61 | 0.00 | 0.00 | 215.21 |
| | 03/31/2020 | 44818458 | Accrual-ROYALTY FEE | 325.20 | 0.00 | 105.20 | 0.00 | 0.00 | 430.40 |
| | 03/31/2020 | 44798004 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 155.09 | 398.56 | 0.00 | 553.65 |
| | | **Total MAR-20** | **2,192.29** | **45.12** | **651.86** | **398.56** | **0.00** | **2,490.71** |
| APR-20 | 04/01/2020 | 29016561 | SIGNATURE RES SVC | 3.43 | 0.00 | 1.07 | 0.00 | 0.00 | 4.50 |
| | 04/22/2020 | TP0976021 | AAA PROGRAM COMMISSION | 31.21 | 0.00 | 10.07 | 0.00 | 0.00 | 41.28 |
| | 04/22/2020 | TM0976021 | MEMBER BENEFIT COMMISSION | 9.81 | 0.00 | 3.17 | 0.00 | 0.00 | 12.98 |
| | 04/22/2020 | TC0976021 | TA COMMISSION SERVICE CHARGE | 24.98 | 0.00 | 8.08 | 0.00 | 0.00 | 33.06 |
| | 04/22/2020 | TR0976021 | TMC / CONSORTIA PFP FEES | 18.64 | 0.00 | 6.04 | 0.00 | 0.00 | 24.68 |
| | 04/22/2020 | TA0976021 | TRAVEL AGENT COMMISSIONS | 67.59 | 0.00 | 21.87 | 0.00 | 0.00 | 89.46 |
| | 04/22/2020 | 25214021 | WYNDHAM REWARDS 5% | 83.90 | 0.00 | 27.14 | 0.00 | 0.00 | 111.04 |
| | 04/22/2020 | 25214584 | WYNREWARDS ENROLMENT FEE CR | -63.40 | 0.00 | 0.00 | 0.00 | 0.00 | -63.40 |
| | 04/29/2020 | 32238585 | GDS INTERNET CONNECTIVITY FEE March 2020 | 20.00 | 0.00 | 6.47 | 0.00 | 0.00 | 26.47 |
| | 04/30/2020 | 44853291 | Accrual-RINA FEE | 114.42 | 0.00 | 36.99 | 0.00 | 0.00 | 151.41 |
| | 04/30/2020 | 44853290 | Accrual-ROYALTY FEE | 228.84 | 0.00 | 74.04 | 0.00 | 0.00 | 302.88 |
| | 04/30/2020 | 32244812 | DIGITAL PFP January - March 2020 | 37.96 | 0.00 | 12.30 | 0.00 | 0.00 | 50.26 |
| | 04/30/2020 | 44828567 | OPERA FULL SUPPORT | 752.00 | 45.12 | 155.09 | 398.56 | 0.00 | 553.65 |
| | | **Total APR-20** | **1,329.38** | **45.12** | **362.33** | **398.56** | **0.00** | **1,338.27** |

Case 2:23-cv-02183-EP-MAH   Document 1   Filed 04/19/23   Page 63 of 91 PageID: 63

| Period | Date | Reference | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MAY-20 | 05/01/2020 | 29016849 | SIGNATURE RESERVATION SERVICE | 14.34 | 0.00 | 4.64 | 0.00 | 0.00 | 18.98 |
| | 05/05/2020 | 25214834 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 16.24 | 0.00 | 0.00 | 66.24 |
| | 05/27/2020 | 11145727 | GUEST SATISFACTION | 192.66 | 0.00 | 62.38 | 0.00 | 0.00 | 255.04 |
| | 05/27/2020 | 11145523 | GUEST SATISFACTION | 680.58 | 0.00 | 220.19 | 0.00 | 0.00 | 900.77 |
| | 05/27/2020 | 11145650 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 63.09 | 0.00 | 0.00 | 258.09 |
| | 05/27/2020 | TR0983577 | TMC / CONSORTIA PFP FEES | 2.92 | 0.00 | 0.97 | 0.00 | 0.00 | 3.89 |
| | 05/27/2020 | TA0983577 | TRAVEL AGENT COMMISSIONS | 9.16 | 0.00 | 2.96 | 0.00 | 0.00 | 12.12 |
| | 05/29/2020 | 32269687 | GDS INTERNET CONNECTIVITY FEE May - 2020 | 2.00 | 0.00 | 0.64 | 0.00 | 0.00 | 2.64 |
| | 05/31/2020 | 44883737 | Accrual-RINA FEE | 385.17 | 0.00 | 124.61 | 0.00 | 0.00 | 509.78 |
| | 05/31/2020 | 44883736 | Accrual-ROYALTY FEE | 770.34 | 0.00 | 249.23 | 0.00 | 0.00 | 1,019.57 |
| | 05/31/2020 | 44862750 | OPERA FULL SUPPORT | 752.00 | 45.12 | 232.68 | 334.30 | 0.00 | 695.50 |
| | | | **Total MAY-20** | **3,054.17** | **45.12** | **977.63** | **334.30** | **0.00** | **3,742.62** |
| JUN-20 | 06/01/2020 | 29016947 | SIGNATURE RESERVATION SERVICE | 9.43 | 0.00 | 2.46 | 0.00 | 0.00 | 11.89 |
| | 06/08/2020 | 25215692 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 12.95 | 0.00 | 0.00 | 62.95 |
| | 06/22/2020 | 25215810 | WYNDHAM REWARDS 5% | 48.41 | 0.00 | 12.51 | 0.00 | 0.00 | 60.92 |
| | 06/22/2020 | 25216200 | WYNREWARDS ENROLMENT FEE CR | -4.50 | 0.00 | 0.00 | 0.00 | 0.00 | -4.50 |
| | | | **Total JUN-20** | **103.34** | **0.00** | **27.92** | **0.00** | **0.00** | **131.26** |
| JUL-20 | 07/17/2020 | TD0998244 | DIGITAL PFP | 6.87 | 0.00 | 1.80 | 0.00 | 0.00 | 8.67 |
| | 07/30/2020 | 32352157 | GDS INTERNET CONNECTIVITY FEE July 2020 | 6.00 | 0.00 | 1.51 | 0.00 | 0.00 | 7.51 |
| | 07/31/2020 | 44946738 | Actual-RINA FEE | 1,486.32 | 0.00 | 383.47 | 0.00 | 0.00 | 1,869.79 |
| | 07/31/2020 | 44946737 | Actual-ROYALTY FEE | 2,972.64 | 0.00 | 766.99 | 0.00 | 0.00 | 3,739.63 |
| | | | **Total JUL-20** | **4,471.83** | **0.00** | **1,153.77** | **0.00** | **0.00** | **5,625.60** |
| AUG-20 | 08/05/2020 | TD1005539 | DIGITAL PFP | 42.00 | 0.00 | 10.83 | 0.00 | 0.00 | 52.83 |
| | 08/27/2020 | 32365674 | GDS INTERNET CONNECTIVITY FEE August 2020 | 10.00 | 0.00 | 2.63 | 0.00 | 0.00 | 12.63 |
| | | | **Total AUG-20** | **52.00** | **0.00** | **13.46** | **0.00** | **0.00** | **65.46** |
| NOV-20 | 11/30/2020 | 45054858 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 309.60 | 0.00 | 0.00 | 1,509.60 |
| | | | **Total NOV-20** | **1,200.00** | **0.00** | **309.60** | **0.00** | **0.00** | **1,509.60** |
| DEC-20 | 12/09/2020 | 32419330 | 2021 RMA DUES | 3,000.00 | 0.00 | 685.50 | 0.00 | 0.00 | 3,685.50 |
| | | | **Total DEC-20** | **3,000.00** | **0.00** | **685.50** | **0.00** | **0.00** | **3,685.50** |
| NOV-21 | 11/30/2021 | 45436868 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 97.20 | 0.00 | 0.00 | 1,297.20 |
| | | | **Total NOV-21** | **1,200.00** | **0.00** | **97.20** | **0.00** | **0.00** | **1,297.20** |
| DEC-21 | 12/07/2021 | 32628432 | 2022 RMA DUES | 3,000.00 | 0.00 | 138.00 | 0.00 | 0.00 | 3,138.00 |
| | | | **Total DEC-21** | **3,000.00** | **0.00** | **138.00** | **0.00** | **0.00** | **3,138.00** |
| JAN-22 | 01/31/2022 | 45500171 | OPERA FULL SUPPORT | 752.00 | 0.00 | 37.61 | 0.00 | 0.00 | 789.61 |
| | | | **Total JAN-22** | **752.00** | **0.00** | **37.61** | **0.00** | **0.00** | **789.61** |
| FEB-22 | 02/02/2022 | 32663645 | AHLA MEMBERSHIP FEE | 1,071.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,071.00 |
| | 02/08/2022 | 32671987 | OPERA FULL SUPPORT Temporary Closure Waiver JAN 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 02/28/2022 | 45531112 | OPERA FULL SUPPORT | 752.00 | 0.00 | 27.08 | 0.00 | 0.00 | 779.08 |

Case 2:23-cv-02183-EP-MAH Document 1 Filed 04/19/23 Page 64 of 91 PageID: 64

| Month | Date | Number | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | **Total FEB-22** | 1,071.05 | 0.00 | 27.03 | 0.00 | 0.00 | 1,098.08 |
| MAR-22 | 03/03/2022 | 32685396 | OPERA FULL SUPPORT Temporary Closure Waiver FEB 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 03/31/2022 | 45560783 | OPERA FULL SUPPORT | 752.00 | 0.00 | 15.42 | 0.00 | 0.00 | 767.42 |
| | | | **Total MAR-22** | 0.00 | 0.00 | 15.42 | 0.00 | 0.00 | 15.42 |
| APR-22 | 04/08/2022 | 32702754 | OPERA FULL SUPPORT Temporary Closure Waiver MAR 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 04/28/2022 | 32720131 | GOVERNMENT RFP PROGRAM Annual Fee Omega Government RFP | 6.00 | 0.00 | 0.04 | 0.00 | 0.00 | 6.04 |
| | 04/30/2022 | 45591908 | OPERA FULL SUPPORT | 752.00 | 0.00 | 4.14 | 0.00 | 0.00 | 756.14 |
| | | | **Total APR-22** | 6.00 | 0.00 | 4.18 | 0.00 | 0.00 | 10.18 |
| MAY-22 | 05/27/2022 | 32728794 | OPERA XPRESS SUPPORT Temporary Closure Waiver April 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 05/31/2022 | 45623902 | OPERA FULL SUPPORT | 752.00 | 0.00 | 0.00 | 0.00 | 0.00 | 752.00 |
| | | | **Total MAY-22** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| JUN-22 | 06/07/2022 | 32736475 | OPERA FULL SUPPORT Temporary Closure Waiver May 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 06/30/2022 | 45650488 | OPERA FULL SUPPORT | 752.00 | 0.00 | 0.00 | 0.00 | 0.00 | 752.00 |
| | | | **Total JUN-22** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | **Total Outstanding:** | 71,045.49 | 548.65 | 22,054.17 | 1,131.42 | 0.00 | 92,516.89 |



Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

**PAYMENT OPTIONS**

**BY WIRE TRANSFER**: Please ensure all transfers costs are settled by yourselves. Please quote the invoice and account number with payment and transfer to:

| | | |
|---|---|---|
| Bank | : | Bank of America, N.A. |
| Branch Address | : | 100 West 33rd Street<br>New York, NY 10001 |
| Account Name | : | Ramada Worldwide, Inc. |
| Bank Account Number | : | 4426450874 |
| ABA | : | 026009593 |
| Swift Code | : | BOFAUS3N |

**REMIT CHECKS TO:**

Ramada Worldwide, Inc.
15018 Collections Center Drive
Chicago, IL 60693

**GO GREEN: PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

**Additional Information:**

Thank you in advance for your prompt payment and continued business
Please note accrual invoices on your account are estimates and can't be paid until actual revenues are reported
Please ensure you promptly submit your actual revenues and rooms sold in Wynpay

**Contact information:**

For supporting invoice details please visit WynPay and/or MyPortal.  For questions please call 1-855-849-3487 or email Financial.Services@wyndham.com

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany, NJ 07054
Email: Ins.admin@wyndham.com
Fax: 973-753-8343



## CHECKLIST
## INSURANCE REQUIREMENTS

1.  **General Liability** – minimum limit of $1,000,000 combined single limit per occurrence. The policy must be on a commercial general liability coverage form. Claims made coverage and eroding policies are not accepted.

2.  **Umbrella/Excess Liability** – minimum limit of $3,000,000 per occurrence, at least as broad as the required underlying coverage. Higher limits are strongly recommended.

3.  **Liquor Liability** – minimum limit of $1,000,000 per occurrence if the exposure exists and to be included in the excess liability coverage. Exposure exists if beer, liquor, and/or alcoholic beverages are sold or served on premises whether restaurant/lounge is owned by Franchisee or leased to a third party.

4.  **Auto Liability** – minimum limit of $1,000,000 comprehensive, per occurrence coverage on all hired, owned, and non-owned vehicles.

5.  **Carrier/Insurer rating** – coverage must be placed with insurance companies which maintain an A.M. Best rating of **A-** or better. Claims made policies and cut-through endorsements/re-insurance to A rated carriers are not acceptable.

6.  **Named Insureds** – each insurance policy must include the individual(s) and entity(ies) (and their respective successors or assigns) that are identified as franchisees in the Franchise Agreement.

7.  **Additional Insureds** – **Ramada Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and all related entities** must be named as additional insureds (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

8.  **Insurance cancellation and changes notice** – all policies must contain a provision for notice of cancellation to Ramada Worldwide, Inc. of not less than 30 days at the address above.

9.  **Business Interruption** minimum of $100,000 of coverage, actual loss, or 12 months sustained.

10. **Worker's Compensation** insurance must be in compliance with state laws.

11. **Employer's Liability** insurance with minimum limit of $100,000.

## LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY
**(Street Address, City, and State)**

**Failure to demand compliance with insurance provisions is not a waiver of Franchisee's obligations.**

Sample Certificate attached.



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | |
|---|---|---|---|
| | | PHONE (A/C, No, Ext): | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | |
| | | **INSURER(S) AFFORDING COVERAGE** | NAIC # |
| | | INSURER A : | |
| INSURED | | INSURER B : | |
| | | INSURER C : | |
| | | INSURER D : | |
| | | INSURER E : | |
| | | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | ☐ N/A | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2010/05)**

© 1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

| **From:** | Violette, Kristine |
| **To:** | s.steel@wyndhamsouthfield.com; water.investments313@yahoo.com |
| **Cc:** | cvictor@kusryan.com; Fenimore, Suzanne; "Maida, Joe"; Patel, Shilpan; Krug, Kelly |
| **Subject:** | Notice of Multiple Defaults - Ramada Site #54721-15418-01 located in Southfield, MI |
| **Date:** | Friday, July 8, 2022 1:33:00 PM |
| **Attachments:** | Ramada Site #54721 Southfield MI; Multiple Defaults 7-8-22.pdf |

Dear Ms. Steel,

Attached please find Notice of Multiple Defaults dated July 8, 2022. Please note the same will be sent via UPS to your attention at a later date.

Thank you.

Kristine Violette

Coordinator, Contracts Compliance

Wyndham Hotels & Resorts

22 Sylvan Way

Parsippany, NJ 07054

Phone: (973) 753-7204

Fax: (973) 753-7254

Email: Kristine.Violette@wyndham.com

**WYNDHAM**

**HOTELS & RESORTS**

Contracts Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 fax (800) 880-9445

September 19, 2022

**Via Electronic Mail & UPS**
s.steel@wyndhamsouthfield.com
water.investments313@yahoo.com

Ms. Shannon Steel
Management Solution Holdings, LLC
28100 Franklin Road
Southfield, MI 48034

**Re:　NOTICE OF CONTINUING DEFAULT** related to the Franchise Agreement, dated June 26, 2019 (the "Agreement"), between Management Solution Holdings, LLC ("you" or "your") and Ramada Worldwide Inc. ("we", "us" or "our") relating to Ramada® by Wyndham Unit #54721-15418-01 located in Southfield, MI (the "Facility")

Dear Ms. Steel:

We write to provide you with formal notice that you remain in default under the Agreement for your failure to satisfy the required operational standards, failure to meet your financial obligations, and failure to meet your insurance obligations. We will address each matter in turn.

Operational Defaults

As you are aware, we issued an Acknowledgment of Temporary Closing for the Facility most recently on March 11, 2022, which allowed the Facility to close temporarily for repairs and/or renovations needed in order to obtain your Certificate of Occupancy ("CO") from the City of Southfield. You will recall that on July 8, 2022, we sent you a default notice because you failed to re-open the Facility by the deadline described in the last Acknowledgement of Temporary Closing. That notice required you to cure the default in thirty (30) days. To date, we have not received a formal response to our notice, nor have we received any confirmation that renovation work has commenced or received any details regarding a renovation schedule.

We remind you that Section 3.2 of the Agreement reads as follows: "You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with all federal, state, and local laws, regulations and ordinances as well as the System Standards." Please be advised that the continued closure of the Facility is without our consent.

Further, we have requested in prior letters that you please provide us with an update from the Oakland County Treasurer regarding the personal property taxes that were past due, and we have received no such update as of the date of this Notice.



Ms. Shannon Soni
September 19, 2022
Page 2

As a kind reminder, Section 3.5 of the Agreement states that "You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings."

The Financial Defaults

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. You will recall that, on July 8, 2022, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within thirty (30) days. However, you did not cure your default within the time permitted. Our Financial Services Department advises us that as of September 19, 2022, your account is past due in the amount of $150,751.62. We have enclosed an itemized statement detailing the fees past due.

The Insurance Defaults

Lastly, we have been advised that we still have not received confirmation that you have obtained, and delivered to us, proof of the minimum insurance coverage required by us. This is a material default under the Agreement.

Consequences of Uncured Defaults

We are well within our right to terminate the Agreement, but, as a courtesy (and without waiving any of our rights), we are affording you another thirty (30) days in which to cure your defaults. The Facility's access to our central reservations system was suspended on April 12, 2021, for outstanding monetary issues and on July 8, 2022 for operational standards. Please be advised that we have added insurance to the list of reasons for this suspension. Please be advised that the Facility's access to our central reservation system will remain suspended until the monetary, operational standards, and insurance issues have been cured to our satisfaction.

The Agreement provided you with certain rights and benefits that in return, require you to cure any defaults under the Agreement within the time permitted. Because you failed to do so, your Combined Fees have expired. You must now perform your obligations under the Agreement for the remainder of the term.

If we terminate the Agreement, you and your Guarantors must pay us Liquidated Damages in the amount of $476,000, in accordance with Section 12.1 of the Agreement. You must also pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. You must also repay the outstanding Development Incentive or similar loan as of the Termination Date. This carries a principal balance of $569,616.67 as of this date of this Notice.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. If you do not cure this default within thirty (30) days of this Notice, the Agreement may be subject to termination. By copy of this notice, we are also informing your Guarantors of your default regarding the Facility.

We urge you to take this opportunity to resolve your defaults. If you have any questions regarding your

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 71 of 91 PageID: 71

Ms. Shannon Steel
September 19, 2022
Page 3

defaults or how they can be timely cured, please do not hesitate to contact Kelly Krug, Vice President – Litigation, at (973) 753-6757 or at Kelly.Krug@wyndham.com.

Sincerely yours,

Suzanne Fenimore
Vice President, Contracts Compliance

Enclosures

cc:      Shannon Steel (as Guarantor) – 31084 Applewood Lane, Farmington Hills, MI 48331
         Aaron Morris (Guarantor) – 2510 Telegraph Road, Bloomfield Hills, MI 48302
         Cindy Rhodes Victor, Esq. – Via Electronic Mail; cvictor@kusryan.com
         Stephanie Kendrick
         Shilpan Patel
         Kelly Krug
         Robert Spence
         Joe Maida



**GO GREEN: PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

Management Solution Holdings, LLC
28100 Franklin Rd.,
Southfield,
MI 48034, United States

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

Payment Terms: 30 Days from date of invoice          Account Number   54721-15418-01-RAM          Statement as of:  19-SEP-2022

| Period | Invoice Date | Invoice Number | Invoice Description | Amount Billed (USD) | Tax | Finance Charges | Amount Applied/ Credited | Adjustment | Total (USD) |
|---|---|---|---|---|---|---|---|---|---|
| AUG-19 | 08/07/2019 | 32003023 | EQUIP SHIPPING Shipping | 71.00 | 0.00 | 31.84 | 0.00 | 0.00 | 102.84 |
| | 08/07/2019 | 32003022 | PM SYSTEM HARDWARE PC/Comtrol/Cables | 1,628.27 | 97.69 | 773.19 | 0.00 | 0.00 | 2,499.15 |
| | 08/07/2019 | 32003021 | PM SYSTEM TRAINING/SERVICES Opera Install Training/Services | 22,007.37 | 0.00 | 8,127.43 | 0.00 | 0.00 | 30,134.80 |
| | | | **Total AUG-19** | **23,706.64** | **97.69** | **8,932.46** | **0.00** | **0.00** | **32,736.79** |
| SEP-19 | 09/24/2019 | 32030143 | 2019 RMA DUES | 1,195.00 | 0.00 | 506.69 | 0.00 | 0.00 | 1,701.69 |
| | 09/24/2019 | 32030147 | INTEGRATION AMENITY | 500.00 | 30.00 | 224.81 | 0.00 | 0.00 | 754.81 |
| | 09/24/2019 | 32030144 | INTEGRATION HMP | 2,000.00 | 0.00 | 848.00 | 0.00 | 0.00 | 2,848.00 |
| | 09/24/2019 | 32030145 | INTEGRATION PHOTOS | 2,750.00 | 0.00 | 1,166.09 | 0.00 | 0.00 | 3,916.09 |
| | 09/24/2019 | 32030146 | INTEGRATION SIGNAGE | 1,000.00 | 60.00 | 449.44 | 0.00 | 0.00 | 1,509.44 |
| | 09/30/2019 | 44623024 | Actual-RINA FEE | 3.44 | 0.00 | 38.89 | 0.00 | 0.00 | 42.33 |
| | 09/30/2019 | 44623023 | Actual-ROYALTY FEE | 6.89 | 0.00 | 77.93 | 0.00 | 0.00 | 84.82 |
| | | | **Total SEP-19** | **7,455.33** | **90.00** | **3,311.85** | **0.00** | **0.00** | **10,857.18** |
| OCT-19 | 10/22/2019 | 25207406 | WYNREWARDS 5% | 58.43 | 0.00 | 23.62 | 0.00 | 0.00 | 82.05 |
| | 10/31/2019 | 44656998 | Actual-RINA FEE | 153.01 | 0.00 | 103.82 | 0.00 | 0.00 | 256.83 |
| | 10/31/2019 | 44656997 | Actual-ROYALTY FEE | 306.01 | 0.00 | 207.57 | 0.00 | 0.00 | 513.58 |
| | 10/31/2019 | 44632947 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 323.34 | 0.00 | 0.00 | 1,120.46 |
| | | | **Total OCT-19** | **1,269.45** | **45.12** | **658.35** | **0.00** | **0.00** | **1,972.92** |
| NOV-19 | 11/05/2019 | 106653 | WYNREWARD RETRAINFEE RETRAIN-OCT2019-4 | 400.00 | 0.00 | 158.20 | 0.00 | 0.00 | 558.20 |
| | 11/20/2019 | 11126909 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 75.67 | 0.00 | 0.00 | 270.67 |
| | 11/20/2019 | 11127181 | WR GUEST SATISFACTION | 38.46 | 0.00 | 15.01 | 0.00 | 0.00 | 53.47 |
| | 11/22/2019 | 25209201 | WR ENROLLMENT FEE CREDIT | -69.39 | 0.00 | 0.00 | 0.00 | 0.00 | -69.39 |
| | 11/22/2019 | 25208947 | WR GOFREE REIMBURSEMENT | -25.00 | 0.00 | 0.00 | 0.00 | 0.00 | -25.00 |
| | 11/22/2019 | 25208479 | WYNDHAM REWARDS BONUS POINTS | 2.50 | 0.00 | 1.02 | 0.00 | 0.00 | 3.52 |
| | 11/22/2019 | 25208626 | WYNREWARDS 5% | 344.31 | 0.00 | 133.26 | 0.00 | 0.00 | 477.57 |
| | 11/26/2019 | 32102767 | 2020 RMA DUES | 3,000.00 | 0.00 | 1,108.50 | 0.00 | 0.00 | 4,108.50 |
| | 11/26/2019 | 32094115 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 471.00 | 0.00 | 0.00 | 1,671.00 |
| | 11/26/2019 | 32089002 | DIGITAL PFP | 69.35 | 0.00 | 26.62 | 0.00 | 0.00 | 95.97 |
| | 11/26/2019 | 32097292 | GDS & INTERNET BKGS Oct-19 | 32.00 | 0.00 | 12.38 | 0.00 | 0.00 | 44.38 |

| | Date | Ref | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 11/30/2019 | 44689503 | Actual-RINA FEE | 193.41 | 0.00 | 75.62 | 0.00 | 0.00 | 269.03 |
| | 11/30/2019 | 44689330 | Actual-ROYALTY FEE | 386.88 | 0.00 | 151.18 | 0.00 | 0.00 | 538.06 |
| | 11/30/2019 | 44668061 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 311.37 | 0.00 | 0.00 | 1,108.49 |
| | | | **Total NOV-19** | **6,519.55** | **45.12** | **2,539.80** | **0.00** | **0.00** | **9,104.47** |
| DEC-19 | 12/01/2019 | 29015951 | SIGNATURE RES SVC | 18.00 | 0.00 | 7.03 | 0.00 | 0.00 | 25.03 |
| | 12/05/2019 | TP0945920 | AAA PROGRAM | 15.00 | 0.00 | 5.83 | 0.00 | 0.00 | 20.83 |
| | 12/05/2019 | TM0945920 | MEMBER BENEFIT COMM | 29.43 | 0.00 | 11.23 | 0.00 | 0.00 | 40.66 |
| | 12/05/2019 | TC0945920 | T/A COMM SERVICE CHG | 10.84 | 0.00 | 4.13 | 0.00 | 0.00 | 14.97 |
| | 12/06/2019 | 106760 | WYNREWARD RETRAINFEE RETRAIN-NOV2019-8 | 400.00 | 0.00 | 152.00 | 0.00 | 0.00 | 552.00 |
| | 12/22/2019 | 25210465 | WR ENROLLMENT FEE CREDIT | -20.85 | 0.00 | 0.00 | 0.00 | 0.00 | -20.85 |
| | 12/22/2019 | 25209792 | WYNREWARDS 5% | 174.13 | 0.00 | 64.78 | 0.00 | 0.00 | 238.91 |
| | 12/27/2019 | 32113330 | GDS & INTERNET BKGS Nov-19 | 60.00 | 0.00 | 22.17 | 0.00 | 0.00 | 82.17 |
| | 12/31/2019 | 44724186 | Actual-RINA FEE | 576.61 | 0.00 | 214.22 | 0.00 | 0.00 | 790.83 |
| | 12/31/2019 | 44724185 | Actual-ROYALTY FEE | 1,153.22 | 0.00 | 428.33 | 0.00 | 0.00 | 1,581.55 |
| | 12/31/2019 | 32124779 | DIGITAL PFP | 29.57 | 0.00 | 10.91 | 0.00 | 0.00 | 40.48 |
| | 12/31/2019 | 44698172 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 299.01 | 0.00 | 0.00 | 1,096.13 |
| | | | **Total DEC-19** | **3,197.95** | **45.12** | **1,219.64** | **0.00** | **0.00** | **4,462.71** |
| JAN-20 | 01/01/2020 | 29016047 | SIGNATURE RES SVC | 234.05 | 0.00 | 87.68 | 0.00 | 0.00 | 321.73 |
| | 01/15/2020 | 11132948 | GUEST SATISFACTION | 547.50 | 0.00 | 202.34 | 0.00 | 0.00 | 749.84 |
| | 01/15/2020 | 11133717 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 01/15/2020 | 11133051 | WR GUEST SATISFACTION | 57.69 | 0.00 | 21.30 | 0.00 | 0.00 | 78.99 |
| | 01/21/2020 | TP0953770 | AAA PROGRAM | 3.75 | 0.00 | 1.44 | 0.00 | 0.00 | 5.19 |
| | 01/21/2020 | TM0953770 | MEMBER BENEFIT COMM | 28.78 | 0.00 | 10.67 | 0.00 | 0.00 | 39.45 |
| | 01/21/2020 | TC0953770 | T/A COMM SERVICE CHG | 11.94 | 0.00 | 4.49 | 0.00 | 0.00 | 16.43 |
| | 01/21/2020 | TA0953770 | T/A COMMISSIONS | 40.14 | 0.00 | 14.78 | 0.00 | 0.00 | 54.92 |
| | 01/21/2020 | TR0953770 | TMC / CONSORTIA | 43.32 | 0.00 | 15.99 | 0.00 | 0.00 | 59.31 |
| | 01/22/2020 | 11134496 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 01/22/2020 | 25210998 | WR ENROLLMENT FEE CREDIT | -400.35 | 0.00 | 0.00 | 0.00 | 0.00 | -400.35 |
| | 01/22/2020 | 25211599 | WYNREWARDS 5% | 900.36 | 0.00 | 332.79 | 0.00 | 0.00 | 1,233.15 |
| | 01/29/2020 | 32141993 | GDS & INTERNET BKGS Dec-19 | 70.00 | 0.00 | 25.94 | 0.00 | 0.00 | 95.94 |
| | 01/31/2020 | 44757571 | Actual-RINA FEE | 322.65 | 0.00 | 119.21 | 0.00 | 0.00 | 441.86 |
| | 01/31/2020 | 44757570 | Actual-ROYALTY FEE | 645.29 | 0.00 | 238.40 | 0.00 | 0.00 | 883.69 |
| | 01/31/2020 | 32154176 | DIGITAL PFP | 45.37 | 0.00 | 16.72 | 0.00 | 0.00 | 62.09 |
| | 01/31/2020 | 44735621 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 294.63 | 0.00 | 0.00 | 1,091.75 |
| | | | **Total JAN-20** | **3,692.49** | **45.12** | **1,530.50** | **0.00** | **0.00** | **5,268.11** |
| FEB-20 | 02/05/2020 | 11135614 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 02/05/2020 | 11135719 | WR GUEST SATISFACTION | 57.69 | 0.00 | 21.30 | 0.00 | 0.00 | 78.99 |
| | 02/05/2020 | 11135759 | WR GUEST SATISFACTION | 57.69 | 0.00 | 21.30 | 0.00 | 0.00 | 78.99 |
| | 02/06/2020 | TA0961288 | T/A COMMISSIONS | 9.81 | 0.00 | 3.62 | 0.00 | 0.00 | 13.43 |
| | 02/06/2020 | TR0961288 | TMC / CONSORTIA | 3.43 | 0.00 | 1.22 | 0.00 | 0.00 | 4.65 |
| | 02/07/2020 | 29016203 | SIGNATURE RES SVC | 92.42 | 0.00 | 34.14 | 0.00 | 0.00 | 126.56 |

| Month | Date | Reference | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 02/12/2020 | 1113677 | GUEST SRVCS TRANSACTION | 164.25 | 0.00 | 60.72 | 0.00 | 0.00 | 224.97 |
| | 02/12/2020 | 11136411 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 02/12/2020 | 11136506 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 02/12/2020 | 11136266 | WR GUEST SATISFACTION | 28.85 | 0.00 | 10.67 | 0.00 | 0.00 | 39.52 |
| | 02/19/2020 | 11137517 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 02/19/2020 | 11137239 | WR GUEST SATISFACTION | 28.85 | 0.00 | 10.67 | 0.00 | 0.00 | 39.52 |
| | 02/22/2020 | 25211881 | WR ENROLLMENT FEE CREDIT | -67.35 | 0.00 | 0.00 | 0.00 | 0.00 | -67.35 |
| | 02/22/2020 | 25212754 | WR GOFREE REIMBURSEMENT | -123.11 | 0.00 | 0.00 | 0.00 | 0.00 | -123.11 |
| | 02/22/2020 | 25212356 | WYNREWARDS 5% | 473.62 | 0.00 | 174.95 | 0.00 | 0.00 | 648.57 |
| | 02/24/2020 | 32176244 | GDS & INTERNET BKGS Jan-20 | 42.00 | 0.00 | 15.51 | 0.00 | 0.00 | 57.51 |
| | 02/29/2020 | 44790653 | Accrual-RINA FEE | 472.22 | 0.00 | 174.46 | 0.00 | 0.00 | 646.68 |
| | 02/29/2020 | 44790652 | Accrual-ROYALTY FEE | 944.43 | 0.00 | 349.01 | 0.00 | 0.00 | 1,293.44 |
| | 02/29/2020 | 32189800 | DIGITAL PFP | 55.27 | 0.00 | 20.47 | 0.00 | 0.00 | 75.74 |
| | 02/29/2020 | 44765750 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 294.63 | 0.00 | 0.00 | 1,091.75 |
| | | | **Total FEB-20** | **3,772.07** | **45.12** | **1,480.91** | **0.00** | **0.00** | **5,298.10** |
| MAR-20 | 03/01/2020 | 29016449 | SIGNATURE RES SVC | 167.22 | 0.00 | 61.77 | 0.00 | 0.00 | 228.99 |
| | 03/22/2020 | 25213099 | WR ENROLLMENT FEE CREDIT | -95.42 | 0.00 | 0.00 | 0.00 | 0.00 | -95.42 |
| | 03/22/2020 | 25213157 | WYNREWARDS 5% | 524.61 | 0.00 | 193.82 | 0.00 | 0.00 | 718.43 |
| | 03/25/2020 | TP0968851 | AAA PROGRAM | 18.69 | 0.00 | 6.90 | 0.00 | 0.00 | 25.59 |
| | 03/25/2020 | TC0968851 | T/A COMM SERVICE CHG | 22.25 | 0.00 | 8.12 | 0.00 | 0.00 | 30.37 |
| | 03/25/2020 | TA0968851 | T/A COMMISSIONS | 95.01 | 0.00 | 35.11 | 0.00 | 0.00 | 130.12 |
| | 03/25/2020 | TR0968851 | TMC / CONSORTIA | 50.13 | 0.00 | 18.55 | 0.00 | 0.00 | 68.68 |
| | 03/30/2020 | 32206712 | GDS INTERNET CONNECTIVITY FEE February - 2020 | 170.00 | 0.00 | 62.89 | 0.00 | 0.00 | 232.89 |
| | 03/31/2020 | 44818459 | Accrual-RINA FEE | 162.60 | 0.00 | 60.09 | 0.00 | 0.00 | 222.69 |
| | 03/31/2020 | 44818458 | Accrual-ROYALTY FEE | 325.20 | 0.00 | 120.16 | 0.00 | 0.00 | 445.36 |
| | 03/31/2020 | 44798004 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 173.43 | 398.56 | 0.00 | 571.99 |
| | | | **Total MAR-20** | **2,192.29** | **45.12** | **740.84** | **398.56** | **0.00** | **2,579.69** |
| APR-20 | 04/01/2020 | 29016561 | SIGNATURE RES SVC | 3.43 | 0.00 | 1.22 | 0.00 | 0.00 | 4.65 |
| | 04/22/2020 | TP0976021 | AAA PROGRAM COMMISSION | 31.21 | 0.00 | 11.50 | 0.00 | 0.00 | 42.71 |
| | 04/22/2020 | TM0976021 | MEMBER BENEFIT COMMISSION | 9.81 | 0.00 | 3.62 | 0.00 | 0.00 | 13.43 |
| | 04/22/2020 | TC0976021 | TA COMMISSION SERVICE CHARGE | 24.98 | 0.00 | 9.23 | 0.00 | 0.00 | 34.21 |
| | 04/22/2020 | TR0976021 | TMC / CONSORTIA PFP FEES | 18.64 | 0.00 | 6.90 | 0.00 | 0.00 | 25.54 |
| | 04/22/2020 | TA0976021 | TRAVEL AGENT COMMISSIONS | 67.59 | 0.00 | 24.98 | 0.00 | 0.00 | 92.57 |
| | 04/22/2020 | 25214021 | WYNDHAM REWARDS 5% | 83.90 | 0.00 | 31.00 | 0.00 | 0.00 | 114.90 |
| | 04/22/2020 | 25214584 | WYNREWARDS ENROLMENT FEE CR | -63.40 | 0.00 | 0.00 | 0.00 | 0.00 | -63.40 |
| | 04/29/2020 | 32238585 | GDS INTERNET CONNECTIVITY FEE March 2020 | 20.00 | 0.00 | 7.39 | 0.00 | 0.00 | 27.39 |
| | 04/30/2020 | 44853291 | Accrual-RINA FEE | 114.42 | 0.00 | 42.25 | 0.00 | 0.00 | 156.67 |
| | 04/30/2020 | 44853290 | Accrual-ROYALTY FEE | 228.84 | 0.00 | 84.57 | 0.00 | 0.00 | 313.41 |
| | 04/30/2020 | 32244812 | DIGITAL PFP January - March 2020 | 37.96 | 0.00 | 14.05 | 0.00 | 0.00 | 52.01 |
| | 04/30/2020 | 44828567 | OPERA FULL SUPPORT | 752.00 | 45.12 | 173.43 | 398.56 | 0.00 | 571.99 |
| | | | **Total APR-20** | **1,329.38** | **45.12** | **410.14** | **398.56** | **0.00** | **1,386.08** |

| | Date | Ref | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MAY-20 | 05/01/2020 | 29016849 | SIGNATURE RESERVATION SERVICE | 14.34 | 0.00 | 5.30 | 0.00 | 0.00 | 19.64 |
| | 05/05/2020 | 25214834 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 18.55 | 0.00 | 0.00 | 68.55 |
| | 05/27/2020 | 11145727 | GUEST SATISFACTION | 192.66 | 0.00 | 71.25 | 0.00 | 0.00 | 263.91 |
| | 05/27/2020 | 11145523 | GUEST SATISFACTION | 680.58 | 0.00 | 251.50 | 0.00 | 0.00 | 932.08 |
| | 05/27/2020 | 11145650 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 72.06 | 0.00 | 0.00 | 267.06 |
| | 05/27/2020 | TR0983577 | TMC / CONSORTIA PFP FEES | 2.92 | 0.00 | 1.11 | 0.00 | 0.00 | 4.03 |
| | 05/27/2020 | TA0983577 | TRAVEL AGENT COMMISSIONS | 9.16 | 0.00 | 3.38 | 0.00 | 0.00 | 12.54 |
| | 05/29/2020 | 32269687 | GDS INTERNET CONNECTIVITY FEE May - 2020 | 2.00 | 0.00 | 0.73 | 0.00 | 0.00 | 2.73 |
| | 05/31/2020 | 44883737 | Accrual-RINA FEE | 385.17 | 0.00 | 142.33 | 0.00 | 0.00 | 527.50 |
| | 05/31/2020 | 44883736 | Accrual-ROYALTY FEE | 770.34 | 0.00 | 284.67 | 0.00 | 0.00 | 1,055.01 |
| | 05/31/2020 | 44862750 | OPERA FULL SUPPORT | 752.00 | 45.12 | 253.96 | 334.30 | 0.00 | 716.78 |
| | | | **Total MAY-20** | **3,054.17** | **45.12** | **1,104.84** | **334.30** | **0.00** | **3,869.83** |
| JUN-20 | 06/01/2020 | 29016947 | SIGNATURE RESERVATION SERVICE | 9.43 | 0.00 | 2.90 | 0.00 | 0.00 | 12.33 |
| | 06/08/2020 | 25215692 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 15.26 | 0.00 | 0.00 | 65.26 |
| | 06/22/2020 | 25215810 | WYNDHAM REWARDS 5% | 48.41 | 0.00 | 14.74 | 0.00 | 0.00 | 63.15 |
| | 06/22/2020 | 25216200 | WYNREWARDS ENROLMENT FEE CR | -4.50 | 0.00 | 0.00 | 0.00 | 0.00 | -4.50 |
| | | | **Total JUN-20** | **103.34** | **0.00** | **32.90** | **0.00** | **0.00** | **136.24** |
| JUL-20 | 07/17/2020 | TD0998244 | DIGITAL PFP | 6.87 | 0.00 | 2.12 | 0.00 | 0.00 | 8.99 |
| | 07/30/2020 | 32352157 | GDS INTERNET CONNECTIVITY FEE July 2020 | 6.00 | 0.00 | 1.78 | 0.00 | 0.00 | 7.78 |
| | 07/31/2020 | 44946738 | Actual-RINA FEE | 1,486.32 | 0.00 | 451.84 | 0.00 | 0.00 | 1,938.16 |
| | 07/31/2020 | 44946737 | Actual-ROYALTY FEE | 2,972.64 | 0.00 | 903.74 | 0.00 | 0.00 | 3,876.38 |
| | | | **Total JUL-20** | **4,471.83** | **0.00** | **1,359.48** | **0.00** | **0.00** | **5,831.31** |
| AUG-20 | 08/05/2020 | TD1005539 | DIGITAL PFP | 42.00 | 0.00 | 12.76 | 0.00 | 0.00 | 54.76 |
| | 08/27/2020 | 32365674 | GDS INTERNET CONNECTIVITY FEE August 2020 | 10.00 | 0.00 | 3.10 | 0.00 | 0.00 | 13.10 |
| | | | **Total AUG-20** | **52.00** | **0.00** | **15.86** | **0.00** | **0.00** | **67.86** |
| NOV-20 | 11/30/2020 | 45054858 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 364.80 | 0.00 | 0.00 | 1,564.80 |
| | | | **Total NOV-20** | **1,200.00** | **0.00** | **364.80** | **0.00** | **0.00** | **1,564.80** |
| DEC-20 | 12/09/2020 | 32419330 | 2021 RMA DUES | 3,000.00 | 0.00 | 823.50 | 0.00 | 0.00 | 3,823.50 |
| | | | **Total DEC-20** | **3,000.00** | **0.00** | **823.50** | **0.00** | **0.00** | **3,823.50** |
| NOV-21 | 11/30/2021 | 45436868 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 152.40 | 0.00 | 0.00 | 1,352.40 |
| | | | **Total NOV-21** | **1,200.00** | **0.00** | **152.40** | **0.00** | **0.00** | **1,352.40** |
| DEC-21 | 12/07/2021 | 32628432 | 2022 RMA DUES | 3,000.00 | 0.00 | 276.00 | 0.00 | 0.00 | 3,276.00 |
| | | | **Total DEC-21** | **3,000.00** | **0.00** | **276.00** | **0.00** | **0.00** | **3,276.00** |
| JAN-22 | 01/31/2022 | 45500171 | OPERA FULL SUPPORT | 752.00 | 0.00 | 72.21 | 0.00 | 0.00 | 824.21 |
| | | | **Total JAN-22** | **752.00** | **0.00** | **72.21** | **0.00** | **0.00** | **824.21** |
| FEB-22 | 02/02/2022 | 32663645 | AHLA MEMBERSHIP FEE | 1,071.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,071.00 |
| | 02/08/2022 | 32671987 | OPERA FULL SUPPORT Temporary Closure Waiver JAN 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 02/28/2022 | 45531112 | OPERA FULL SUPPORT | 752.00 | 0.00 | 61.68 | 0.00 | 0.00 | 813.68 |

| Month | Date | Number | Description | Col1 | Col2 | Col3 | Col4 | Col5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | **Total FEB-22** | **1,071.00** | **0.00** | **61.68** | **0.00** | **0.00** | **1,132.68** |
| MAR-22 | 03/03/2022 | 32685396 | OPERA FULL SUPPORT Temporary Closure Waiver FEB 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 03/31/2022 | 45560783 | OPERA FULL SUPPORT | 752.00 | 0.00 | 50.02 | 0.00 | 0.00 | 802.02 |
| | | | **Total MAR-22** | **0.00** | **0.00** | **50.02** | **0.00** | **0.00** | **50.02** |
| APR-22 | 04/08/2022 | 32702754 | OPERA FULL SUPPORT Temporary Closure Waiver MAR 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 04/28/2022 | 32720131 | GOVERNMENT RFP PROGRAM Annual Fee Omega Government RFP | 6.00 | 0.00 | 0.31 | 0.00 | 0.00 | 6.31 |
| | 04/30/2022 | 45591908 | OPERA FULL SUPPORT | 752.00 | 0.00 | 38.74 | 0.00 | 0.00 | 790.74 |
| | | | **Total APR-22** | **6.00** | **0.00** | **39.05** | **0.00** | **0.00** | **45.05** |
| MAY-22 | 05/27/2022 | 32728794 | OPERA XPRESS SUPPORT Temporary Closure Waiver April 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 05/31/2022 | 45623902 | OPERA FULL SUPPORT | 752.00 | 0.00 | 27.08 | 0.00 | 0.00 | 779.08 |
| | | | **Total MAY-22** | **0.00** | **0.00** | **27.08** | **0.00** | **0.00** | **27.08** |
| JUN-22 | 06/07/2022 | 32736475 | OPERA FULL SUPPORT Temporary Closure Waiver May 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 06/30/2022 | 45650488 | OPERA FULL SUPPORT | 752.00 | 0.00 | 15.80 | 0.00 | 0.00 | 767.80 |
| | | | **Total JUN-22** | **0.00** | **0.00** | **15.80** | **0.00** | **0.00** | **15.80** |
| JUL-22 | 07/31/2022 | 45704340 | Accrual-RINA FEE | 12,067.64 | 0.00 | 66.37 | 0.00 | 0.00 | 12,134.01 |
| | 07/31/2022 | 45704339 | Accrual-ROYALTY FEE | 13,576.09 | 0.00 | 74.67 | 0.00 | 0.00 | 13,650.76 |
| | 07/31/2022 | 45684048 | OPERA FULL SUPPORT | 752.00 | 0.00 | 4.14 | 0.00 | 0.00 | 756.14 |
| | | | **Total JUL-22** | **26,395.73** | **0.00** | **145.18** | **0.00** | **0.00** | **26,540.91** |
| AUG-22 | 08/31/2022 | 45729159 | Accrual-RINA FEE | 13,071.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,071.00 |
| | 08/31/2022 | 45729158 | Accrual-ROYALTY FEE | 14,704.88 | 0.00 | 0.00 | 0.00 | 0.00 | 14,704.88 |
| | 08/31/2022 | 45715975 | OPERA FULL SUPPORT | 752.00 | 0.00 | 0.00 | 0.00 | 0.00 | 752.00 |
| | | | **Total AUG-22** | **28,527.88** | **0.00** | **0.00** | **0.00** | **0.00** | **28,527.88** |
| | | | **Total Outstanding:** | **125,969.10** | **548.65** | **25,365.29** | **1,131.42** | **0.00** | **150,751.62** |



Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

**PAYMENT OPTIONS**

**BY WIRE TRANSFER**: Please ensure all transfers costs are settled by yourselves. Please quote the invoice and account number with payment and transfer to:

| | | |
|---|---|---|
| Bank | : | Bank of America, N.A. |
| Branch Address | : | 100 West 33rd Street<br>New York, NY 10001 |
| Account Name | : | Ramada Worldwide, Inc. |
| Bank Account Number | : | 4426450874 |
| ABA | : | 026009593 |
| Swift Code | : | BOFAUS3N |

**REMIT CHECKS TO:**

Ramada Worldwide, Inc.
15018 Collections Center Drive
Chicago, IL 60693

**GO GREEN: PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

**Additional Information:**

Thank you in advance for your prompt payment and continued business
Please note accrual invoices on your account are estimates and can't be paid until actual revenues are reported
Please ensure you promptly submit your actual revenues and rooms sold in Wynpay

**Contact information:**

For supporting invoice details please visit WynPay and/or MyPortal.  For questions please call 1-855-849-3487 or email Financial.Services@wyndham.com

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany, NJ 07054
Email: Ins.admin@wyndham.com
Fax: 973-753-8343



**CHECKLIST**
**INSURANCE REQUIREMENTS**

1. **General Liability** – minimum limit of $1,000,000 combined single limit per occurrence.  The policy must be on a commercial general liability coverage form.  Claims made coverage and eroding policies are not accepted.

2. **Umbrella/Excess Liability** – minimum limit of $3,000,000 per occurrence, at least as broad as the required underlying coverage. Higher limits are strongly recommended.

3. **Liquor Liability** – minimum limit of $1,000,000 per occurrence if the exposure exists and to be included in the excess liability coverage.  Exposure exists if beer, liquor, and/or alcoholic beverages are sold or served on premises whether restaurant/lounge is owned by Franchisee or leased to a third party.

4. **Auto Liability** – minimum limit of $1,000,000 comprehensive, per occurrence coverage on all hired, owned, and non-owned vehicles.

5. **Carrier/Insurer rating** – coverage must be placed with insurance companies which maintain an A.M. Best rating of **A-** or better. Claims made policies and cut-through endorsements/re-insurance to A rated carriers are not acceptable.

6. **Named Insureds** – each insurance policy must include the individual(s) and entity(ies) (and their respective successors or assigns) that are identified as franchisees in the Franchise Agreement.

7. **Additional Insureds** – **Ramada Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and all related entities** must be named as additional insureds (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

8. **Insurance cancellation and changes notice** – all policies must contain a provision for notice of cancellation to Ramada Worldwide, Inc. of not less than 30 days at the address above.

9. **Business Interruption** minimum of $100,000 of coverage, actual loss, or 12 months sustained.

10. **Worker's Compensation** insurance must be in compliance with state laws.

11. **Employer's Liability** insurance with minimum limit of $100,000.

**LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY**
**(Street Address, City, and State)**

**Failure to demand compliance with insurance provisions is not a waiver of Franchisee's obligations.**

Sample Certificate attached.

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 79 of 91 PageID: 79



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an **ADDITIONAL INSURED**, the policy(ies) must be endorsed. If **SUBROGATION IS WAIVED**, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | INSURER A : | | |
| INSURED | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**    **CERTIFICATE NUMBER:**    **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N/A **(Mandatory in NH)** | | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | **AUTHORIZED REPRESENTATIVE** |

**ACORD 25 (2010/05)**    **© 1988-2010 ACORD CORPORATION. All rights reserved.**

The ACORD name and logo are registered marks of ACORD

| **From:** | Violette, Kristine |
| **To:** | "s.steel@wyndhamsouthfield.com"; "water.investments313@yahoo.com" |
| **Cc:** | "cvictor@kusryan.com"; Fenimore, Suzanne; "Maida, Joe"; Krug, Kelly |
| **Subject:** | Notice of Continuing Multiple Defaults - Ramada Site #54721-15418-01 located in Southfield, MI |
| **Date:** | Monday, September 19, 2022 11:52:00 AM |
| **Attachments:** | Ramada Site #54721 Southfield MI; Continuing Multiple Defaults 9-19-22.pdf |

Dear Ms. Steel,

Attached please find Notice of Continuing Multiple Defaults dated September 19, 2022.  Please note the same will be sent via UPS to your attention at a later date.

Thank you.
Kristine Violette
Coordinator, Contracts Compliance
Wyndham Hotels & Resorts
22 Sylvan Way
Parsippany, NJ 07054
Phone: (973) 753-7204
Fax: (973) 753-7254
Email: Kristine.Violette@wyndham.com

**WYNDHAM**

**HOTELS & RESORTS**

Contracts Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 fax (800) 880-9445

December 21, 2022

**Via Electronic Mail & UPS**
s.steel@wyndhamsouthfield.com
water.investments313@yahoo.com

Ms. Shannon Steel
Management Solution Holdings, LLC
28100 Franklin Road
Southfield, MI 48034

Re:  **NOTICE OF CONTINUING DEFAULT** related to the Franchise Agreement, dated June 26, 2019 (the "Agreement"), between Management Solution Holdings, LLC ("you" or "your") and Ramada Worldwide Inc. ("we", "us" or "our") relating to Ramada® by Wyndham Unit #54721-15418-01 located in Southfield, MI (the "Facility")

Dear Ms. Steel:

We have previously advised you in writing that you are in default under the Agreement for your continued failure to satisfy the required operational standards, failure to meet your financial obligations, and failure to meet your insurance obligations.  We will again address each matter in turn.

Operational Defaults

We issued an Acknowledgment of Temporary Closing for the Facility most recently on March 11, 2022, which allowed the Facility to close temporarily for repairs and/or renovations needed in order to obtain your Certificate of Occupancy ("CO") from the City of Southfield.  You will recall that on July 8, 2022 and September 19, 2022, we sent you default notices because you failed to reopen the Facility by the deadline described in the last Acknowledgement of Temporary Closing.  The notices required you to cure the default in thirty (30) days.  To date, we have not received a formal response to our notices, nor have we received any confirmation that renovation work has commenced or received any details regarding a renovation schedule.

We remind you that Section 3.2 of the Agreement reads as follows: "You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with all federal, state, and local laws, regulations and ordinances as well as the System Standards." Please be advised that the continued closure of the Facility is without our consent.

Further, we had requested in prior letters that you please provide us with an update from the Oakland County Treasurer regarding the personal property taxes that were past due, and as of the date of this Notice, you have failed to respond in writing with regards to this matter.

As a kind reminder, Section 3.5 of the Agreement states that "You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings."

The Financial Defaults

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System.  You will recall that, on July 8, 2022 and September 19, 2022, we sent you default notices

                 

Ms. Shannon Steel
December 21, 2022
Page 2

because of your failure to meet your financial obligations to us. The notices required you to cure the default within thirty (30) days. However, you did not cure your default within the time permitted. Our Financial Services Department advises us that as of the date of this Notice, your account is past due in the amount of $225,622.79. We have enclosed an itemized statement detailing the fees past due.

The Insurance Defaults

Lastly, we have been advised that we still have not received confirmation that you have obtained, and delivered to us, proof of the minimum insurance coverage required by us. This is a material default under the Agreement.

Consequences of Uncured Defaults

We are well within our right to terminate the Agreement, but, as a courtesy (and without waiving any of our rights), we are affording you another thirty (30) days in which to cure your defaults. Also, please be advised that the Facility's access to our central reservations system has been suspended for monetary, operational standards, and insurance issues and will remain suspended until the monetary, operational standards, and insurance issues have been cured to our satisfaction.

If we terminate the Agreement, you and your Guarantors must pay us Liquidated Damages in the amount of $476,000, in accordance with Section 12.1 of the Agreement. You must also pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. You must also repay the outstanding Development Incentive or similar loan as of the Termination Date. This carries a principal balance of $525,800 as of this date of this Notice.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. If you do not cure this default within thirty (30) days of this Notice, the Agreement may be subject to termination. By copy of this notice, we are also informing your Guarantors of your default regarding the Facility.

We urge you to take this opportunity to resolve your defaults. If you have any questions regarding your defaults or how they can be timely cured, please do not hesitate to contact Kelly Krug, Vice President – Litigation, at (973) 753-6757 or at Kelly.Krug@wyndham.com.

Sincerely yours,

Suzanne Fenimore
Vice President, Contracts Compliance

Enclosures

cc:     Shannon Steel (as Guarantor) – 31084 Applewood Lane, Farmington Hills, MI 48331
        Aaron Morris (Guarantor) – 2510 Telegraph Road, Bloomfield Hills, MI 48302
        Cindy Rhodes Victor, Esq. – Via Electronic Mail; cvictor@kusryan.com
        Stephanie Kendrick
        Shilpan Patel
        Kelly Krug
        Robert Spence
        Joe Maida



Management Solution Holdings, LLC
28100 Franklin Rd.,
Southfield,
MI 48034, United States

**GO GREEN: PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

Payment Terms: 30 Days from date of invoice          Account Number   54721-15418-01-RAM          Statement as of:  21-DEC-2022

| Period | Invoice Date | Invoice Number | Invoice Description | Amount Billed (USD) | Tax | Finance Charges | Amount Applied/ Credited | Adjustment | Total (USD) |
|---|---|---|---|---|---|---|---|---|---|
| AUG-19 | 08/07/2019 | 32003023 | EQUIP SHIPPING Shipping | 71.00 | 0.00 | 35.08 | 0.00 | 0.00 | 106.08 |
| | 08/07/2019 | 32003022 | PM SYSTEM HARDWARE PC/Comtrol/Cables | 1,628.27 | 97.69 | 851.72 | 0.00 | 0.00 | 2,577.68 |
| | 08/07/2019 | 32003021 | PM SYSTEM TRAINING/SERVICES Opera Install Training/Services | 22,007.37 | 0.00 | 8,918.13 | 0.00 | 0.00 | 30,925.50 |
| | | | **Total AUG-19** | **23,706.64** | **97.69** | **9,804.93** | **0.00** | **0.00** | **33,609.26** |
| SEP-19 | 09/24/2019 | 32030143 | 2019 RMA DUES | 1,195.00 | 0.00 | 561.07 | 0.00 | 0.00 | 1,756.07 |
| | 09/24/2019 | 32030147 | INTEGRATION AMENITY | 500.00 | 30.00 | 248.93 | 0.00 | 0.00 | 778.93 |
| | 09/24/2019 | 32030144 | INTEGRATION HMP | 2,000.00 | 0.00 | 939.00 | 0.00 | 0.00 | 2,939.00 |
| | 09/24/2019 | 32030145 | INTEGRATION PHOTOS | 2,750.00 | 0.00 | 1,291.22 | 0.00 | 0.00 | 4,041.22 |
| | 09/24/2019 | 32030146 | INTEGRATION SIGNAGE | 1,000.00 | 60.00 | 497.67 | 0.00 | 0.00 | 1,557.67 |
| | 09/30/2019 | 44623024 | Actual-RINA FEE | 3.44 | 0.00 | 39.04 | 0.00 | 0.00 | 42.48 |
| | 09/30/2019 | 44623023 | Actual-ROYALTY FEE | 6.89 | 0.00 | 78.24 | 0.00 | 0.00 | 85.13 |
| | | | **Total SEP-19** | **7,455.33** | **90.00** | **3,655.17** | **0.00** | **0.00** | **11,200.50** |
| OCT-19 | 10/22/2019 | 25207406 | WYNREWARDS 5% | 58.43 | 0.00 | 26.29 | 0.00 | 0.00 | 84.72 |
| | 10/31/2019 | 44656998 | Actual-RINA FEE | 153.01 | 0.00 | 110.79 | 0.00 | 0.00 | 263.80 |
| | 10/31/2019 | 44656997 | Actual-ROYALTY FEE | 306.01 | 0.00 | 221.49 | 0.00 | 0.00 | 527.50 |
| | 10/31/2019 | 44632947 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 359.62 | 0.00 | 0.00 | 1,156.74 |
| | | | **Total OCT-19** | **1,269.45** | **45.12** | **718.19** | **0.00** | **0.00** | **2,032.76** |
| NOV-19 | 11/05/2019 | 106653 | WYNREWARD RETRAINFEE RETRAIN-OCT2019-4 | 400.00 | 0.00 | 176.40 | 0.00 | 0.00 | 576.40 |
| | 11/20/2019 | 11126909 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 84.55 | 0.00 | 0.00 | 279.55 |
| | 11/20/2019 | 11127181 | WR GUEST SATISFACTION | 38.46 | 0.00 | 16.77 | 0.00 | 0.00 | 55.23 |
| | 11/22/2019 | 25209201 | WR ENROLLMENT FEE CREDIT | -69.39 | 0.00 | 0.00 | 0.00 | 0.00 | -69.39 |
| | 11/22/2019 | 25208947 | WR GOFREE REIMBURSEMENT | -25.00 | 0.00 | 0.00 | 0.00 | 0.00 | -25.00 |
| | 11/22/2019 | 25208479 | WYNDHAM REWARDS BONUS POINTS | 2.50 | 0.00 | 1.14 | 0.00 | 0.00 | 3.64 |
| | 11/22/2019 | 25208626 | WYNREWARDS 5% | 344.31 | 0.00 | 148.92 | 0.00 | 0.00 | 493.23 |
| | 11/26/2019 | 32102767 | 2020 RMA DUES | 3,000.00 | 0.00 | 1,245.00 | 0.00 | 0.00 | 4,245.00 |
| | 11/26/2019 | 32094115 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 525.60 | 0.00 | 0.00 | 1,725.60 |
| | 11/26/2019 | 32089002 | DIGITAL PFP | 69.35 | 0.00 | 29.77 | 0.00 | 0.00 | 99.12 |
| | 11/26/2019 | 32097292 | GDS & INTERNET BKGS Oct-19 | 32.00 | 0.00 | 13.84 | 0.00 | 0.00 | 45.84 |

| | Date | Ref # | Description | | | | | | |
|---|---|---|---|---:|---:|---:|---:|---:|---:|
| | 11/30/2019 | 44689503 | Actual-RINA FEE | 193.44 | 0.00 | 84.03 | 0.00 | 0.00 | 277.83 |
| | 11/30/2019 | 44689330 | Actual-ROYALTY FEE | 386.88 | 0.00 | 168.78 | 0.00 | 0.00 | 555.66 |
| | 11/30/2019 | 44668061 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 347.65 | 0.00 | 0.00 | 1,144.77 |
| | | | **Total NOV-19** | **6,519.55** | **45.12** | **2,842.81** | **0.00** | **0.00** | **9,407.48** |
| DEC-19 | 12/01/2019 | 29015951 | SIGNATURE RES SVC | 18.00 | 0.00 | 7.85 | 0.00 | 0.00 | 25.85 |
| | 12/05/2019 | TP0945920 | AAA PROGRAM | 15.00 | 0.00 | 6.52 | 0.00 | 0.00 | 21.52 |
| | 12/05/2019 | TM0945920 | MEMBER BENEFIT COMM | 29.43 | 0.00 | 12.57 | 0.00 | 0.00 | 42.00 |
| | 12/05/2019 | TC0945920 | T/A COMM SERVICE CHG | 10.84 | 0.00 | 4.62 | 0.00 | 0.00 | 15.46 |
| | 12/06/2019 | 106760 | WYNREWARD RETRAINFEE RETRAIN-NOV2019-8 | 400.00 | 0.00 | 170.20 | 0.00 | 0.00 | 570.20 |
| | 12/22/2019 | 25210465 | WR ENROLLMENT FEE CREDIT | -20.85 | 0.00 | 0.00 | 0.00 | 0.00 | -20.85 |
| | 12/22/2019 | 25209792 | WYNREWARDS 5% | 174.13 | 0.00 | 72.70 | 0.00 | 0.00 | 246.83 |
| | 12/27/2019 | 32113330 | GDS & INTERNET BKGS Nov-19 | 60.00 | 0.00 | 24.90 | 0.00 | 0.00 | 84.90 |
| | 12/31/2019 | 44724186 | Actual-RINA FEE | 576.61 | 0.00 | 240.46 | 0.00 | 0.00 | 817.07 |
| | 12/31/2019 | 44724185 | Actual-ROYALTY FEE | 1,153.22 | 0.00 | 480.80 | 0.00 | 0.00 | 1,634.02 |
| | 12/31/2019 | 32124779 | DIGITAL PFP | 29.57 | 0.00 | 12.25 | 0.00 | 0.00 | 41.82 |
| | 12/31/2019 | 44698172 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 335.29 | 0.00 | 0.00 | 1,132.41 |
| | | | **Total DEC-19** | **3,197.95** | **45.12** | **1,368.16** | **0.00** | **0.00** | **4,611.23** |
| JAN-20 | 01/01/2020 | 29016047 | SIGNATURE RES SVC | 234.05 | 0.00 | 98.33 | 0.00 | 0.00 | 332.38 |
| | 01/15/2020 | 11132948 | GUEST SATISFACTION | 547.50 | 0.00 | 227.25 | 0.00 | 0.00 | 774.75 |
| | 01/15/2020 | 11133717 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 01/15/2020 | 11133051 | WR GUEST SATISFACTION | 57.69 | 0.00 | 23.93 | 0.00 | 0.00 | 81.62 |
| | 01/21/2020 | TP0953770 | AAA PROGRAM | 3.75 | 0.00 | 1.62 | 0.00 | 0.00 | 5.37 |
| | 01/21/2020 | TM0953770 | MEMBER BENEFIT COMM | 28.78 | 0.00 | 11.98 | 0.00 | 0.00 | 40.76 |
| | 01/21/2020 | TC0953770 | T/A COMM SERVICE CHG | 11.94 | 0.00 | 5.04 | 0.00 | 0.00 | 16.98 |
| | 01/21/2020 | TA0953770 | T/A COMMISSIONS | 40.14 | 0.00 | 16.60 | 0.00 | 0.00 | 56.74 |
| | 01/21/2020 | TR0953770 | TMC / CONSORTIA | 43.32 | 0.00 | 17.96 | 0.00 | 0.00 | 61.28 |
| | 01/22/2020 | 11134496 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 01/22/2020 | 25210998 | WR ENROLLMENT FEE CREDIT | -400.35 | 0.00 | 0.00 | 0.00 | 0.00 | -400.35 |
| | 01/22/2020 | 25211599 | WYNREWARDS 5% | 900.36 | 0.00 | 373.77 | 0.00 | 0.00 | 1,274.13 |
| | 01/29/2020 | 32141993 | GDS & INTERNET BKGS Dec-19 | 70.00 | 0.00 | 29.13 | 0.00 | 0.00 | 99.13 |
| | 01/31/2020 | 44757571 | Actual-RINA FEE | 322.65 | 0.00 | 133.89 | 0.00 | 0.00 | 456.54 |
| | 01/31/2020 | 44757570 | Actual-ROYALTY FEE | 645.29 | 0.00 | 267.76 | 0.00 | 0.00 | 913.05 |
| | 01/31/2020 | 32154176 | DIGITAL PFP | 45.37 | 0.00 | 18.78 | 0.00 | 0.00 | 64.15 |
| | 01/31/2020 | 44735621 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 330.91 | 0.00 | 0.00 | 1,128.03 |
| | | | **Total JAN-20** | **3,692.49** | **45.12** | **1,718.83** | **0.00** | **0.00** | **5,456.44** |
| FEB-20 | 02/05/2020 | 11135614 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 02/05/2020 | 11135719 | WR GUEST SATISFACTION | 57.69 | 0.00 | 23.93 | 0.00 | 0.00 | 81.62 |
| | 02/05/2020 | 11135759 | WR GUEST SATISFACTION | 57.69 | 0.00 | 23.93 | 0.00 | 0.00 | 81.62 |
| | 02/06/2020 | TA0961288 | T/A COMMISSIONS | 9.81 | 0.00 | 4.07 | 0.00 | 0.00 | 13.88 |
| | 02/06/2020 | TR0961288 | TMC / CONSORTIA | 3.43 | 0.00 | 1.37 | 0.00 | 0.00 | 4.80 |
| | 02/07/2020 | 29016203 | SIGNATURE RES SVC | 92.42 | 0.00 | 38.35 | 0.00 | 0.00 | 130.77 |

| | Date | Ref | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 02/12/2020 | 11136711 | GUEST SRVCS TRANSACTION | 164.25 | 0.00 | 68.19 | 0.00 | 0.00 | 232.44 |
| | 02/12/2020 | 11136411 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 02/12/2020 | 11136506 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 02/12/2020 | 11136266 | WR GUEST SATISFACTION | 28.85 | 0.00 | 11.98 | 0.00 | 0.00 | 40.83 |
| | 02/19/2020 | 11137517 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 02/19/2020 | 11137239 | WR GUEST SATISFACTION | 28.85 | 0.00 | 11.98 | 0.00 | 0.00 | 40.83 |
| | 02/22/2020 | 25211881 | WR ENROLLMENT FEE CREDIT | -67.35 | 0.00 | 0.00 | 0.00 | 0.00 | -67.35 |
| | 02/22/2020 | 25212754 | WR GOFREE REIMBURSEMENT | -123.11 | 0.00 | 0.00 | 0.00 | 0.00 | -123.11 |
| | 02/22/2020 | 25212356 | WYNREWARDS 5% | 473.62 | 0.00 | 196.49 | 0.00 | 0.00 | 670.11 |
| | 02/24/2020 | 32176244 | GDS & INTERNET BKGS Jan-20 | 42.00 | 0.00 | 17.42 | 0.00 | 0.00 | 59.42 |
| | 02/29/2020 | 44790653 | Accrual-RINA FEE | 472.22 | 0.00 | 195.94 | 0.00 | 0.00 | 668.16 |
| | 02/29/2020 | 44790652 | Accrual-ROYALTY FEE | 944.43 | 0.00 | 391.99 | 0.00 | 0.00 | 1,336.42 |
| | 02/29/2020 | 32189800 | DIGITAL PFP | 55.27 | 0.00 | 22.99 | 0.00 | 0.00 | 78.26 |
| | 02/29/2020 | 44765750 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 330.91 | 0.00 | 0.00 | 1,128.03 |
| | | | **Total FEB-20** | **3,772.07** | **45.12** | **1,663.30** | **0.00** | **0.00** | **5,480.49** |
| MAR-20 | 03/01/2020 | 29016449 | SIGNATURE RES SVC | 167.22 | 0.00 | 69.38 | 0.00 | 0.00 | 236.60 |
| | 03/22/2020 | 25213099 | WR ENROLLMENT FEE CREDIT | -95.42 | 0.00 | 0.00 | 0.00 | 0.00 | -95.42 |
| | 03/22/2020 | 25213157 | WYNREWARDS 5% | 524.61 | 0.00 | 217.69 | 0.00 | 0.00 | 742.30 |
| | 03/25/2020 | TP0968851 | AAA PROGRAM | 18.69 | 0.00 | 7.75 | 0.00 | 0.00 | 26.44 |
| | 03/25/2020 | TC0968851 | T/A COMM SERVICE CHG | 22.25 | 0.00 | 9.12 | 0.00 | 0.00 | 31.37 |
| | 03/25/2020 | TA0968851 | T/A COMMISSIONS | 95.01 | 0.00 | 39.44 | 0.00 | 0.00 | 134.45 |
| | 03/25/2020 | TR0968851 | TMC / CONSORTIA | 50.13 | 0.00 | 20.83 | 0.00 | 0.00 | 70.96 |
| | 03/30/2020 | 32206712 | GDS INTERNET CONNECTIVITY FEE February - 2020 | 170.00 | 0.00 | 70.63 | 0.00 | 0.00 | 240.63 |
| | 03/31/2020 | 44818459 | Accrual-RINA FEE | 162.60 | 0.00 | 67.49 | 0.00 | 0.00 | 230.09 |
| | 03/31/2020 | 44818458 | Accrual-ROYALTY FEE | 325.20 | 0.00 | 134.96 | 0.00 | 0.00 | 460.16 |
| | 03/31/2020 | 44798004 | OPERA SAAS SUPPORT | 752.00 | 45.12 | 191.57 | 398.56 | 0.00 | 590.13 |
| | | | **Total MAR-20** | **2,192.29** | **45.12** | **828.86** | **398.56** | **0.00** | **2,667.71** |
| APR-20 | 04/01/2020 | 29016561 | SIGNATURE RES SVC | 3.43 | 0.00 | 1.37 | 0.00 | 0.00 | 4.80 |
| | 04/22/2020 | TP0976021 | AAA PROGRAM COMMISSION | 31.21 | 0.00 | 12.92 | 0.00 | 0.00 | 44.13 |
| | 04/22/2020 | TM0976021 | MEMBER BENEFIT COMMISSION | 9.81 | 0.00 | 4.07 | 0.00 | 0.00 | 13.88 |
| | 04/22/2020 | TC0976021 | TA COMMISSION SERVICE CHARGE | 24.98 | 0.00 | 10.36 | 0.00 | 0.00 | 35.34 |
| | 04/22/2020 | TR0976021 | TMC / CONSORTIA PFP FEES | 18.64 | 0.00 | 7.75 | 0.00 | 0.00 | 26.39 |
| | 04/22/2020 | TA0976021 | TRAVEL AGENT COMMISSIONS | 67.59 | 0.00 | 28.05 | 0.00 | 0.00 | 95.64 |
| | 04/22/2020 | 25214021 | WYNDHAM REWARDS 5% | 83.90 | 0.00 | 34.82 | 0.00 | 0.00 | 118.72 |
| | 04/22/2020 | 25214584 | WYNREWARDS ENROLMENT FEE CR | -63.40 | 0.00 | 0.00 | 0.00 | 0.00 | -63.40 |
| | 04/29/2020 | 32238585 | GDS INTERNET CONNECTIVITY FEE March 2020 | 20.00 | 0.00 | 8.30 | 0.00 | 0.00 | 28.30 |
| | 04/30/2020 | 44853291 | Accrual-RINA FEE | 114.42 | 0.00 | 47.46 | 0.00 | 0.00 | 161.88 |
| | 04/30/2020 | 44853290 | Accrual-ROYALTY FEE | 228.84 | 0.00 | 94.98 | 0.00 | 0.00 | 323.82 |
| | 04/30/2020 | 32244812 | DIGITAL PFP January - March 2020 | 37.96 | 0.00 | 15.78 | 0.00 | 0.00 | 53.74 |
| | 04/30/2020 | 44828567 | OPERA FULL SUPPORT | 752.00 | 45.12 | 191.57 | 398.56 | 0.00 | 590.13 |
| | | | **Total APR-20** | **1,329.38** | **45.12** | **457.43** | **398.56** | **0.00** | **1,433.37** |

| | Date | Ref | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MAY-20 | 05/01/2020 | 29016849 | SIGNATURE RESERVATION SERVICE | 14.34 | 0.00 | 5.96 | 0.00 | 0.00 | 20.30 |
| | 05/05/2020 | 25214834 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 20.83 | 0.00 | 0.00 | 70.83 |
| | 05/27/2020 | 11145727 | GUEST SATISFACTION | 192.66 | 0.00 | 80.02 | 0.00 | 0.00 | 272.68 |
| | 05/27/2020 | 11145523 | GUEST SATISFACTION | 680.58 | 0.00 | 282.47 | 0.00 | 0.00 | 963.05 |
| | 05/27/2020 | 11145650 | GUEST SRVCS TRANSACTION CHARGE | 195.00 | 0.00 | 80.94 | 0.00 | 0.00 | 275.94 |
| | 05/27/2020 | TR0983577 | TMC / CONSORTIA PFP FEES | 2.92 | 0.00 | 1.24 | 0.00 | 0.00 | 4.16 |
| | 05/27/2020 | TA0983577 | TRAVEL AGENT COMMISSIONS | 9.16 | 0.00 | 3.80 | 0.00 | 0.00 | 12.96 |
| | 05/29/2020 | 32269687 | GDS INTERNET CONNECTIVITY FEE May - 2020 | 2.00 | 0.00 | 0.82 | 0.00 | 0.00 | 2.82 |
| | 05/31/2020 | 44883737 | Accrual-RINA FEE | 385.17 | 0.00 | 159.86 | 0.00 | 0.00 | 545.03 |
| | 05/31/2020 | 44883736 | Accrual-ROYALTY FEE | 770.34 | 0.00 | 319.73 | 0.00 | 0.00 | 1,090.07 |
| | 05/31/2020 | 44862750 | OPERA FULL SUPPORT | 752.00 | 45.12 | 275.01 | 334.30 | 0.00 | 737.83 |
| | | | **Total MAY-20** | **3,054.17** | **45.12** | **1,230.68** | **334.30** | **0.00** | **3,995.67** |
| JUN-20 | 06/01/2020 | 29016947 | SIGNATURE RESERVATION SERVICE | 9.43 | 0.00 | 3.33 | 0.00 | 0.00 | 12.76 |
| | 06/08/2020 | 25215692 | WR MISSING STAY ADMIN FEE | 50.00 | 0.00 | 17.54 | 0.00 | 0.00 | 67.54 |
| | 06/22/2020 | 25215810 | WYNDHAM REWARDS 5% | 48.41 | 0.00 | 16.95 | 0.00 | 0.00 | 65.36 |
| | 06/22/2020 | 25216200 | WYNREWARDS ENROLMENT FEE CR | -4.50 | 0.00 | 0.00 | 0.00 | 0.00 | -4.50 |
| | | | **Total JUN-20** | **103.34** | **0.00** | **37.82** | **0.00** | **0.00** | **141.16** |
| JUL-20 | 07/17/2020 | TD0998244 | DIGITAL PFP | 6.87 | 0.00 | 2.43 | 0.00 | 0.00 | 9.30 |
| | 07/30/2020 | 32352157 | GDS INTERNET CONNECTIVITY FEE July 2020 | 6.00 | 0.00 | 2.05 | 0.00 | 0.00 | 8.05 |
| | 07/31/2020 | 44946738 | Actual-RINA FEE | 1,486.32 | 0.00 | 519.46 | 0.00 | 0.00 | 2,005.78 |
| | 07/31/2020 | 44946737 | Actual-ROYALTY FEE | 2,972.64 | 0.00 | 1,039.00 | 0.00 | 0.00 | 4,011.64 |
| | | | **Total JUL-20** | **4,471.83** | **0.00** | **1,562.94** | **0.00** | **0.00** | **6,034.77** |
| AUG-20 | 08/05/2020 | TD1005539 | DIGITAL PFP | 42.00 | 0.00 | 14.67 | 0.00 | 0.00 | 56.67 |
| | 08/27/2020 | 32365674 | GDS INTERNET CONNECTIVITY FEE August 2020 | 10.00 | 0.00 | 3.56 | 0.00 | 0.00 | 13.56 |
| | | | **Total AUG-20** | **52.00** | **0.00** | **18.23** | **0.00** | **0.00** | **70.23** |
| NOV-20 | 11/30/2020 | 45054858 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 419.40 | 0.00 | 0.00 | 1,619.40 |
| | | | **Total NOV-20** | **1,200.00** | **0.00** | **419.40** | **0.00** | **0.00** | **1,619.40** |
| DEC-20 | 12/09/2020 | 32419330 | 2021 RMA DUES | 3,000.00 | 0.00 | 960.00 | 0.00 | 0.00 | 3,960.00 |
| | | | **Total DEC-20** | **3,000.00** | **0.00** | **960.00** | **0.00** | **0.00** | **3,960.00** |
| NOV-21 | 11/30/2021 | 45436868 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 207.00 | 0.00 | 0.00 | 1,407.00 |
| | | | **Total NOV-21** | **1,200.00** | **0.00** | **207.00** | **0.00** | **0.00** | **1,407.00** |
| DEC-21 | 12/07/2021 | 32628432 | 2022 RMA DUES | 3,000.00 | 0.00 | 412.50 | 0.00 | 0.00 | 3,412.50 |
| | | | **Total DEC-21** | **3,000.00** | **0.00** | **412.50** | **0.00** | **0.00** | **3,412.50** |
| JAN-22 | 01/31/2022 | 45500171 | OPERA FULL SUPPORT | 752.00 | 0.00 | 106.43 | 0.00 | 0.00 | 858.43 |
| | | | **Total JAN-22** | **752.00** | **0.00** | **106.43** | **0.00** | **0.00** | **858.43** |
| FEB-22 | 02/08/2022 | 32671987 | OPERA FULL SUPPORT Temporary Closure Waiver JAN 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 02/28/2022 | 45531112 | OPERA FULL SUPPORT | 752.00 | 0.00 | 95.90 | 0.00 | 0.00 | 847.90 |
| | | | **Total FEB-22** | **0.00** | **0.00** | **95.90** | **0.00** | **0.00** | **95.90** |

Case 2:23-cv-02183-EP-MAH    Document 1    Filed 04/19/23    Page 87 of 91 PageID: 87

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MAR-22 | 03/03/2022 | 32685306 | OPERA FULL SUPPORT Temporary Closure Waiver FEB 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 03/31/2022 | 45560783 | OPERA FULL SUPPORT | 752.00 | 0.00 | 84.24 | 0.00 | 0.00 | 836.24 |
| | | | **Total MAR-22** | **0.00** | **0.00** | **84.24** | **0.00** | **0.00** | **84.24** |
| APR-22 | 04/08/2022 | 32702754 | OPERA FULL SUPPORT Temporary Closure Waiver MAR 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 04/28/2022 | 32720131 | GOVERNMENT RFP PROGRAM Annual Fee Omega Government RFP | 6.00 | 0.00 | 0.58 | 0.00 | 0.00 | 6.58 |
| | 04/30/2022 | 45591908 | OPERA FULL SUPPORT | 752.00 | 0.00 | 72.96 | 0.00 | 0.00 | 824.96 |
| | | | **Total APR-22** | **6.00** | **0.00** | **73.54** | **0.00** | **0.00** | **79.54** |
| MAY-22 | 05/27/2022 | 32728794 | OPERA XPRESS SUPPORT Temporary Closure Waiver April 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 05/31/2022 | 45623902 | OPERA FULL SUPPORT | 752.00 | 0.00 | 61.30 | 0.00 | 0.00 | 813.30 |
| | | | **Total MAY-22** | **0.00** | **0.00** | **61.30** | **0.00** | **0.00** | **61.30** |
| JUN-22 | 06/07/2022 | 32736475 | OPERA FULL SUPPORT Temporary Closure Waiver May 2022 | -752.00 | 0.00 | 0.00 | 0.00 | 0.00 | -752.00 |
| | 06/30/2022 | 45650488 | OPERA FULL SUPPORT | 752.00 | 0.00 | 50.02 | 0.00 | 0.00 | 802.02 |
| | | | **Total JUN-22** | **0.00** | **0.00** | **50.02** | **0.00** | **0.00** | **50.02** |
| JUL-22 | 07/31/2022 | 45704340 | Accrual-RINA FEE | 12,067.64 | 0.00 | 615.44 | 0.00 | 0.00 | 12,683.08 |
| | 07/31/2022 | 45704339 | Accrual-ROYALTY FEE | 13,576.09 | 0.00 | 692.38 | 0.00 | 0.00 | 14,268.47 |
| | 07/31/2022 | 45684048 | OPERA FULL SUPPORT | 752.00 | 0.00 | 38.36 | 0.00 | 0.00 | 790.36 |
| | | | **Total JUL-22** | **26,395.73** | **0.00** | **1,346.18** | **0.00** | **0.00** | **27,741.91** |
| AUG-22 | 08/31/2022 | 45729159 | Accrual-RINA FEE | 13,071.00 | 0.00 | 464.03 | 0.00 | 0.00 | 13,535.03 |
| | 08/31/2022 | 45729158 | Accrual-ROYALTY FEE | 14,704.88 | 0.00 | 522.02 | 0.00 | 0.00 | 15,226.90 |
| | 08/31/2022 | 45715975 | OPERA FULL SUPPORT | 752.00 | 0.00 | 26.70 | 0.00 | 0.00 | 778.70 |
| | | | **Total AUG-22** | **28,527.88** | **0.00** | **1,012.75** | **0.00** | **0.00** | **29,540.63** |
| SEP-22 | 09/30/2022 | 45764380 | Accrual-RINA FEE | 11,541.36 | 0.00 | 236.60 | 0.00 | 0.00 | 11,777.96 |
| | 09/30/2022 | 45764379 | Accrual-ROYALTY FEE | 12,984.03 | 0.00 | 266.17 | 0.00 | 0.00 | 13,250.20 |
| | 09/30/2022 | 45747007 | OPERA FULL SUPPORT | 752.00 | 0.00 | 15.42 | 0.00 | 0.00 | 767.42 |
| | | | **Total SEP-22** | **25,277.39** | **0.00** | **518.19** | **0.00** | **0.00** | **25,795.58** |
| OCT-22 | 10/31/2022 | 45795828 | Accrual-RINA FEE | 10,644.68 | 0.00 | 53.22 | 0.00 | 0.00 | 10,697.90 |
| | 10/31/2022 | 45795827 | Accrual-ROYALTY FEE | 11,975.27 | 0.00 | 59.88 | 0.00 | 0.00 | 12,035.15 |
| | 10/31/2022 | 45775861 | OPERA FULL SUPPORT | 752.00 | 0.00 | 3.76 | 0.00 | 0.00 | 755.76 |
| | | | **Total OCT-22** | **23,371.95** | **0.00** | **116.86** | **0.00** | **0.00** | **23,488.81** |
| NOV-22 | 11/30/2022 | 45831047 | Accrual-RINA FEE | 6,980.92 | 0.00 | 0.00 | 0.00 | 0.00 | 6,980.92 |
| | 11/30/2022 | 45830365 | Accrual-ROYALTY FEE | 7,853.54 | 0.00 | 0.00 | 0.00 | 0.00 | 7,853.54 |
| | 11/30/2022 | 45804828 | CONTINUING EDUCATION FEE | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 |
| | 11/30/2022 | 45803698 | OPERA FULL SUPPORT | 752.00 | 0.00 | 0.00 | 0.00 | 0.00 | 752.00 |
| | | | **Total NOV-22** | **16,786.46** | **0.00** | **0.00** | **0.00** | **0.00** | **16,786.46** |
| DEC-22 | 12/09/2022 | 32833917 | GLOBAL CONFERENCE Conference 2023 | 1,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 |
| | 12/16/2022 | 32840568 | 2023 RMA Dues | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,000.00 |
| | | | **Total DEC-22** | **4,500.00** | **0.00** | **0.00** | **0.00** | **0.00** | **4,500.00** |
| | | | **Total Outstanding:** | **194,833.90** | **548.65** | **31,371.66** | **1,131.42** | **0.00** | **225,622.79** |



Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany , NJ 07054

**PAYMENT OPTIONS**

**BY WIRE TRANSFER**: Please ensure all transfers costs are settled by yourselves. Please quote the invoice and account number with payment and transfer to:

| | | |
|---|---|---|
| Bank | : | Bank of America, N.A. |
| Branch Address | : | 100 West 33rd Street New York, NY 10001 |
| Account Name | : | Ramada Worldwide, Inc. |
| Bank Account Number | : | 4426450874 |
| ABA | : | 026009593 |
| Swift Code | : | BOFAUS3N |

**REMIT CHECKS TO:**

Ramada Worldwide, Inc.
15018 Collections Center Drive
Chicago, IL 60693

**GO GREEN: PAY VIA WYNPAY**
**Access WynPay via MyPortal:**
**https://myportal.wyndham.com**

**Additional Information:**

Thank you in advance for your prompt payment and continued business
Please note accrual invoices on your account are estimates and can't be paid until actual revenues are reported
Please ensure you promptly submit your actual revenues and rooms sold in Wynpay

**Contact information:**

For supporting invoice details please visit WynPay and/or MyPortal.  For questions please call 1-855-849-3487 or email Financial.Services@wyndham.com

Ramada Worldwide, Inc.
22 Sylvan Way
Parsippany, NJ 07054
Email: Ins.admin@wyndham.com
Fax: 973-753-8343



**CHECKLIST**
**INSURANCE REQUIREMENTS**

1. **General Liability** – minimum limit of $1,000,000 combined single limit per occurrence.  The policy must be on a commercial general liability coverage form.  Claims made coverage and eroding policies are not accepted.

2. **Umbrella/Excess Liability** – minimum limit of $3,000,000 per occurrence, at least as broad as the required underlying coverage. Higher limits are strongly recommended.

3. **Liquor Liability** – minimum limit of $1,000,000 per occurrence if the exposure exists and to be included in the excess liability coverage.  Exposure exists if beer, liquor, and/or alcoholic beverages are sold or served on premises whether restaurant/lounge is owned by Franchisee or leased to a third party.

4. **Auto Liability** – minimum limit of $1,000,000 comprehensive, per occurrence coverage on all hired, owned, and non-owned vehicles.

5. **Carrier/Insurer rating** – coverage must be placed with insurance companies which maintain an A.M. Best rating of **A-** or better. Claims made policies and cut-through endorsements/re-insurance to A rated carriers are not acceptable.

6. **Named Insureds** – each insurance policy must include the individual(s) and entity(ies) (and their respective successors or assigns) that are identified as franchisees in the Franchise Agreement.

7. **Additional Insureds** – **Ramada Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and all related entities** must be named as additional insureds (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

8. **Insurance cancellation and changes notice** – all policies must contain a provision for notice of cancellation to Ramada Worldwide, Inc. of not less than 30 days at the address above.

9. **Business Interruption** minimum of $100,000 of coverage, actual loss, or 12 months sustained.

10. **Worker's Compensation** insurance must be in compliance with state laws.

11. **Employer's Liability** insurance with minimum limit of $100,000.

**LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY**
**(Street Address, City, and State)**

**Failure to demand compliance with insurance provisions is not a waiver of Franchisee's obligations.**

Sample Certificate attached.

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
| --- | --- |
| | PHONE (A/C, No, Ext): / FAX (A/C, No): |
| | E-MAIL ADDRESS: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
| --- | --- | --- |
| **INSURED** | INSURER A : | |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N / A **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
| --- | --- |
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2010/05)**

© 1988-2010 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

| | |
|---|---|
| **From:** | Violette, Kristine |
| **To:** | s.steel@wyndhamsouthfield.com; water.investments313@yahoo.com |
| **Cc:** | cvictor@kusryan.com; Fenimore, Suzanne; "Maida, Joe"; Krug, Kelly |
| **Subject:** | Notice of Continuing Multiple Defaults - Ramada Site #54721-15418-01 located in Southfield, MI |
| **Date:** | Wednesday, December 21, 2022 12:44:00 PM |
| **Attachments:** | Ramada Site #54721 Southfield MI; Continuing Multiple Defaults 12-21-22.pdf |

Dear Ms. Steel,

Attached please find Notice of Continuing Multiple Defaults dated December 21, 2022.  Please note the same will be sent via UPS to your attention at a later date.

Thank you.
Kristine Violette
Coordinator, Contracts Compliance
Wyndham Hotels & Resorts
22 Sylvan Way
Parsippany, NJ 07054
Phone: (973) 753-7204
Fax: (973) 753-7254
Email: Kristine.Violette@wyndham.com