<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>MANAGEMENT SOLUTION HOLDINGS, LLC, a Michigan Limited Liability Company; SHANNON STEEL, an individual; and AARON MORRIS, an individual,<br><br>          Defendants. | No. 23cv2183 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Ramada Worldwide Inc. ("RWI"), a hotel franchisor, alleges that Defendants Management Solution Holdings, LLC ("MSH"), Shannon Steel, and Aaron Morris (collectively, "Defendants") breached franchise agreements and related guaranty agreements. D.E. 10 ("Amended Complaint" or "Am. Compl."). Defendants have not answered. RWI moves for default judgement against Defendants. D.E. 19 ("Mot."). The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78(b). For the reasons below, the Court will **GRANT** RWI's motion.

**I.     BACKGROUND[1]**

On June 26, 2019, RWI entered into a Franchise Agreement (the "Agreement") with MSH for the operation of a 238-room Ramada guest lodging facility located at 28100 Franklin Road, Southfield, Michigan 48034 (the "Facility"). D.E. 19-5 at 12 (Mallet Aff. Ex. A). The Agreement

---

[1] Unless otherwise noted, these facts derive primarily from the affidavit of RWI Global Franchise Administration Vice President Kendra Mallet. *See* D.E. 19-5 ("Mallet Aff.").

required MSH to pay royalties, system assessment fees, taxes, interest, and other fees (collectively, "Recurring Fees"). Mallet Aff. at 2; *see* Agreement at 12, 26, 38. The Agreement permitted RWI to terminate the Agreement, with notice to MSH, if MSH: (a) discontinued operating the Facility as a Ramada guest lodging establishment and/or (b) lost possession or the right to possess the Facility. Mallet Aff. at 3; *see* Agreement at 16. In the event of a termination, the Agreement required MSH to pay liquidated damages to RWI in accordance with a specified formula. Mallet Aff. at 3; *see* Agreement at 18-19. Lastly, the Agreement required MSH to "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Mallet Aff. at 3-4; *see* Agreement at 24.

Steel and Morris guaranteed MSH's obligations under the Agreement. D.E. 19-5 at 60 (Mallet Aff. Ex. B, the "Guaranty"). The Guaranty required Steel and Morris upon MSH's default under the Agreement to either: immediately make each payment and perform, or cause MSH to perform each unpaid or unperformed obligation of MSH. Mallet Aff. at 4; *see* Guaranty at 1. The Guaranty also required Steel and Morris to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the Agreement. Mallet Aff. at 4; *see* Guaranty at 1; *see also* Agreement at 24.

Upon entering into the Agreement and effective as of June 26, 2019, MSH executed, and Steel and Morris co-made, a Development Incentive Note (the "Note") of $657,250.00. Mallet Aff. at 4; *see* D.E. 19-5 at 62 (Mallet Aff. Ex. C). The Note provides that if MSH, Steel, and Morris default on their obligations pursuant to the Note, they would pay 18% annual interest or the highest rate allowed by law. Mallet Aff. at 4; *see* Note at 1. The Note also provided for attorneys' fees incurred in collections. Mallet Aff. at 4; *see* Note at 2.

2

Defendants did not make all of the agreed payments. Starting on or about May 19, 2020, and continuing through June 30, 2022, MSH lost possession to the Facility due to issues relating to obtaining a Certificate of Occupancy. Mallet Aff. at 5. RWI advised Defendants of these defaults by letters dated July 8, 2022, September 19, 2022, and December 21, 2022. *Id.* at 5-6. By a letter dated June 28, 2023, RWI terminated the Agreement, and advised MSH that it was required to pay to RWI, as liquidated damages for premature termination, the sum of $476,000.00, the outstanding principal balance of the Note, and all outstanding Recurring Fees through the date of termination. *Id.* at 6. On January 29, 2024, the Clerk entered default against Defendants for their failure to plead or otherwise defend in this action. D.E. 19-1.

## II. LEGAL STANDARD

Before granting a default judgment, the Court must determine (1) whether there is sufficient proof of service, *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); (2) whether a sufficient cause of action was stated, *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008); and (3) whether default judgment is proper, *Chamberlin v. Gaimpapa*, 210 F.3d 154, 164 (3d Cir. 2000). "Where a court enters a default judgment, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DirecTV Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005).

The Court must also "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Gordashevsky*, 558 F. Supp. 2d at 535. Finally, in determining that the facts state a legitimate cause of action, and that the movant has established its damages, the Court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the

party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### III. ANALYSIS

#### A. Plaintiff Has Satisfied the Procedural Prerequisites

##### 1. The Court has subject matter and personal jurisdiction

"Before entering default judgment, the Court must first address the threshold issue of whether it has both subject matter and personal jurisdiction over the parties." *Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (cleaned up). To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party ascertaining jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). "A natural person is deemed to be a citizen of the state where he [or she] is domiciled." *Id.*

The threshold requirements of subject matter jurisdiction are met in this case. The Court is properly sitting in diversity, as the amount of controversy is above $75,000, Am. Compl. ¶ 6, and the parties are domiciled in different states.[2] *See* 28 U.S.C. § 1332.

With respect to personal jurisdiction, "[forum-selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Court has

---

[2] RWI is a Delaware corporation with its principal place of business in New Jersey, D.E. 10 ¶ 1, while MSH is a Michigan corporation with its principal place of business also in Michigan, D.E. 10 ¶ 2, and Steel and Morris are both citizens of Michigan, D.E. 10 ¶¶ 3-4.

personal jurisdiction over MSH due to section 17.6.3 of the June 26, 2019, Agreement, which stipulates "to the non-exclusive personal jurisdiction of and venue . . . the United States District Court for the District of New Jersey." Agreement at 24. The Court also has personal jurisdiction over Steel and Morris due to the terms of the Guaranty, which binds Steel and Morris to the same jurisdictional stipulation. Guaranty at 1.

    2. *Service was proper*

Fed. R. Civ. P. 4(e)(1) provides that a party may effectuate service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state[.]" N.J. Ct. R. 4:4-4 (b) "prescribe[es] the modes of service by which personal jurisdiction may be obtained over a person not present in New Jersey." *U.S. Bank Nat'l Ass'n v. Curcio*, 444 N.J. Super. 94, 108 (App. Div. 2016) (quoting *Pressler & Verniero*, *N.J. Court Rules*, cmt. 3 on *R.* 4:4 (2016)). Plaintiffs must submit an affidavit stating that despite diligent inquiry and effort, the defendant cannot be personally served in New Jersey. *See* N.J. Ct. R. 4:4-5 (b).

> If it appears by affidavit . . . that despite diligent effort and inquiry personal service cannot be made . . . then, consistent with due process, in personam jurisdiction may be obtained over any defendant [by] . . . mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to . . . the individual's dwelling or usual place of abode [and] . . . a corporation . . . that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4 (b)(1)(C). Here, service comported with those rules. On October 25, 2023, attorneys for RWI forwarded the Summons and Amended Complaint to Recon Management Group ("Recon") to effectuate personal service upon Defendants. D.E. 14 ¶ 3 (the "Service Aff."). Despite diligent efforts and inquiry, Recon was unable to serve Defendants. D.E. 14 ¶¶ 4-6 (Service Aff. Exs. A-D, the "Aff. of Diligent Efforts"). By letter dated November 30, 2023, RWI properly served Defendants with a copy of the Summons and Amended Complaint via regular and

certified mail, return receipt requested.  Aff. of Diligent Service ¶ 7; s*ee* N.J. Ct. R. 4:4 (b)(1)(C).  The procedural prerequisites having been satisfied, the Court turns to the merits.

### B. Plaintiff is Entitled to Default Judgment

Plaintiff essentially alleges a straightforward breach of contract claim.  "To state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Defendants entered valid contracts with RWI.  Am. Compl. ¶¶ 10-20.  MSH breached the Agreement by ceasing to operate the Facility as a Ramada guest lodging facility.  *Id.* ¶ 31.  Steel and Morris were obligated to pay outstanding Recurring Fees, liquidated damages, and the outstanding principal balance of the Note to RWI under the Guaranty but failed to perform those obligations.  *Id.*; *see also Travelodge Hotels, Inc. v. Huber Hotels, LLC,* No. 19-20571, 2022 WL 44634, at *6 (D.N.J. Jan. 5, 2022) (noting that a guaranty is a contract) (citation omitted).  Furthermore, RWI has satisfied all its obligations under the Agreement.  Am. Compl. ¶ 32.

#### 1. *There is no evidence that Defendants have a meritorious defense*

"[A] defendant has established a meritorious defense when its 'allegations, if established at trial, would constitute a complete defense.'"  *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 140 (3d. Cir. 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).  But a defendant must "allege[] specific facts beyond simply denials or conclusory statements." *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  "[A] defendant . . . [must] set forth with some specificity the grounds for [its] defense."  *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988).

Because Defendants failed to respond or answer the Amended Complaint, there is no evidence that Defendants have a meritorious defense. *See Trs. of Int'l Union v. Rocon, Inc.*, 2022 WL 225384, at *4 (D.N.J. Jan. 26, 2022).

2. *RWI is prejudiced without default judgment*

For a plaintiff to be prejudiced by a defendant's default, a plaintiff must show that "its ability to pursue the claim has been hindered since the entry of the default judgment." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). But any potential prejudice must "be viewed in the context of [the defendant's] failure over an extended period of time" to cure the default. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1882 (3d Cir. 1984).

Defendants' time to answer or otherwise respond to the Amended Complaint has expired. *See* D.E. 19-4 ("Couch Certif.")[3] at 2; Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants' failure to engage in this action has hindered RWI's ability to seek relief and, without default judgment, RWI has "no other means to vindicate its claims." *Maersk Line v. TJM Int'l L.L.C.*, 427 F. Supp. 3d 528, 536 (D.N.J. 2019). Accordingly, the prejudice factor weighs in favor of granting default judgment.

3. *Defendants' conduct is culpable*

For default judgment purposes, culpability does not require intentional and malicious actions on the part of the non-movant, but merely "[r]eckless disregard for repeated communications from plaintiffs and the court." *Hritz*, 732 F.2d at 1183. "[C]ulpable conduct means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Gayeman v. Cannon*, No. 14-1518, 2016 WL 6834109, at *2 (E.D. Pa. Nov. 21, 2016); *see also Slover v. Live Universee, Inc.*, No. 8-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009)

---

[3] RWI attorney, Bryan P. Couch.

("Defendant is [] presumed culpable where it has failed to answer, move, or otherwise respond.") (citation omitted); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F.App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

At the time of this decision, more than nine (9) months have passed without an answer. Accordingly, the culpability factor weighs in favor of default judgment.

C.  **Plaintiff is Entitled to Damages**

Here, RWI asks for the total amount of $1,558,444.79 comprising (a) $395,219.35 for outstanding Recurring Fees, (b) $549,004.14 for Liquidated Damages, and (c) $614,221.30 for the amount due and owing under the Note.

1.  *Outstanding recurring fees*

RWI seeks outstanding Recurring Fees in the amount of $395,219.35[4] inclusive of interest (1.5% monthly). Mot. 7-8; see also D.E. 19-5 at 119 (Ex. H. to Mallet Aff., the "Itemized Statement"). The Court is satisfied that the Itemized Statement demonstrates entitlement to that amount.

2.  *Liquidated damages*

Courts look with "favor upon provisions in agreements which fix specified amounts as damages in the event of a breach." *D.H.M. Indus., Inc. v. Central Port Warehouses, Inc.*, 127 N.J. Super. 499, 503 (App. Div. 1973). "When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced." *Id.* "Liquidated damages provisions in a commercial contract between sophisticated partes are

---

[4] RWI does not seek any fee set forth on the itemized statement between May 19, 2020 and June 30, 2022, as MSH was authorized by RWI to temporarily close the Facility during that time. Mallet Aff. at 6. As a result, the amount sought in RWI's motion for final judgment by default is slightly less than the total set forth on the itemized statement and in the Amended Complaint.

presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Norwest Bank Minn., N.A. v. Blair Rd. Assocs., L.P*., 252 Supp. 2d 86, 94 (D.N.J. 2003).

Here, MSH agreed to pay liquidated damages to RWI in accordance with a formula in the Agreement. Am. Compl. ¶ 18. Section 12.1 of the Agreement specifically set liquidated damages for the Facility at an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term at the date of termination, whichever is less), but no less than the product of $2,000.00 multiplied by the number of guest rooms MSH was authorized to operate at the time of termination. Mallet Aff. at 7; *see* Agreement at 18-19. At the time of termination, MSH was authorized to operate 238 guest rooms at the Facility. Mallet Aff. at 7. Accordingly, RWI is seeking $476,000.00 in liquidated damages that became due because of MSH's premature termination of the Agreement. *Id.*

Additionally, RWI is requesting damages calculated at the legal rate of interest of 1.5% per month in the amount of $73,004.14 from July 28, 2023 (30 days from the date of termination) to June 3, 2024 (the motion return date), which amounts to 311 days. Mallet Aff. at 8. The $73,004.14 figure is calculated by multiplying $476,000.00 by 18% per year, which equals $85,680.00 in interest per year. *Id.* That amount is then divided by 365 days to equal $234.74 in interest per day. *Id.* When the per diem interest of $234.74 is multiplied by 311 days, the interest owed equals $73,004.14. *Id.* Thus, the Court agrees that RWI is entitled to $549,004.14 ($476,000.00 + $73,004.14) in liquidated damages.

### 3. Outstanding development incentive note

The Note provides that Defendants promise, "to pay…the principal sum of Six Hundred Fifty-Seven Thousand Two Hundred Fifty Dollars, and No Cents ($657,250.00)." Note at 1. The Note also provides, "[o]n each anniversary of the Facility's Opening Date, one-fifteenth of the original principal amount will be forgiven," and "the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen (18%) percent annum." *Id.*

RWI alleges that Defendants failed to pay $525,800.00 of the principal balance of the Note to RWI, plus prejudgment interest that has accrued since the June 28, 2023, the termination date. Mallet Aff. at 8. RWI is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month[5] in the amount of $88,421.30 from June 28, 2023 (the due date of the Note) to June 3, 2024 (the Motion date), or 341 days. *Id.* The $88,421.30 figure is calculated by multiplying $525,800.00 by 18% per year, which equals $96,640.00 in interest per year. *Id.* That amount is then divided by 365 days to equal $259.30 in interest per day. *Id.* When per diem interest of $259.30 is multiplied by 314 days, the interest owed equals $88,421.30. *Id.* Accordingly, Plaintiff is entitled to $614,221.30.[6]

The Court accepts the outstanding principal balance of the Note plus the prejudgment interest at the time of the Agreement termination. *See* Mallet Aff. at 8; *see also Wingate Inns Intern., Inc. v. Hotel Square, LLC*, No. 15-4072, 2016 WL 1366909, at *5 (D.N.J. Apr. 5, 2016) (holding that similar evidence of damages for outstanding balance on a note was sufficient for the entry of default judgment).

---

[5] The interest rate is pursuant to section 7.3 of the Franchise Agreement.
[6] Plaintiff's "Itemized Statement of Amount Due," D.E. 19-5 at 127, appears to contain an error, *i.e.*, Plaintiff replaces the interest ("Development Incentive Note Prejudgment Interest") amount of $88,421.30 with the *sum total* of the Note amount *plus* its interest ($614,221.30, or $525,800.00 plus $88,421.30). Nevertheless, the total amount sought, $1,558.444.79, reflects the correct sum.

10

*4. Attorneys' fees and costs*

The Court is satisfied that RWI is entitled to reasonable attorneys' fees and costs pursuant to section 17.4 of the Agreement. *See* Agreement at 24; *see also Jackson Hewitt, inc. v. Barnes Enters.*, No. 10-05108, 2012 WL 1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and costs per franchise agreement); *Red Roof Franchising, LLC*, 877 F. Supp. 2d at 154 (holding that plaintiff was entitled to attorneys' fees and costs because defendants did not dispute the provision in the franchise agreement or guarantee). However, RWI "does not provide any bills or invoices to show their representation of attorneys' fees and costs." *BMO Harris Bank, N.A. v. Naileen Transp. Corp.*, No. 21-14002, 2021 WL 5506911, at *4 (D.N.J. Nov. 19, 2021). Without any details, the Court cannot determine whether RWI's request for attorneys' fees and costs are reasonable and appropriate. *See id.*, *see also* L. Civ. R. 54.2 (a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work).

RWI is provided leave to submit documentation to support its attorneys' fees and costs pursuant to L. Civ. R. 54.2. Accordingly, $1,558,444.79 represents the amount owed by the Defendants to RWI, jointly and severally.

## V.    CONCLUSION

For the reasons above, the Court will **GRANT** RWI's default judgment motion. An appropriate Order accompanies this Opinion.

Dated: October 24, 2024

_____
Evelyn Padin, U.S.D.J.

11